## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | |
| | ) | |
| BYJU'S ALPHA, INC.,[1] | ) | Chapter 11 |
| | ) | |
| Debtor. | ) | Case No. 24-10140 (BLS) |
| | ) | |
| | ) | |
| BYJU'S ALPHA, INC., | ) | Adv. Pro. Case No. 25-50526 (BLS) |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **Ref. Adv. D.I. 7, 25, 34, 45, 53** |
| | ) | |
| BYJU RAVEENDRAN, DIVYA GOKULNATH, | ) | |
| and ANITA KISHORE, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

**PLAINTIFFS' REPLY IN SUPPORT OF MOTION TO HOLD BYJU RAVEENDRAN
IN CONTEMPT OF COURT FOR FAILURE TO COMPLY WITH
THE COURT'S ORDERS AND REQUEST FOR CIVIL SANCTIONS**

The Debtor-Plaintiff BYJU'S Alpha, Inc. (the "Debtor") and Intervenor-Plaintiff GLAS Trust Company LLC ("GLAS," and with the Debtor, "Plaintiffs") hereby file this reply to *Defendant Byju Raveendran's Opposition to Plaintiff's Motion to Hold Him In Contempt of Court and Request for Civil Sanctions* [Adv. D.I. 53] (the "Opposition" or "Opp.") and in further support of *Plaintiffs' Motion to Hold Byju Raveendran in Contempt of Court for Failure to Comply with the Court's Orders and Request for Civil Sanctions* [Adv. D.I. 45] (the "Motion" or "Mot.")[2] and in support hereof state as follows:

---

[1]     The Debtor in this chapter 11 case, along with the last four digits of the Debtor's federal tax identification number, is: BYJU's Alpha, Inc. (4260). The location of the Debtor's service address for purposes of this Chapter 11 Case is: 1007 N. Market Street Ste. G20 452, Wilmington, Delaware 19801.

[2]     Capitalized terms not defined herein have the meanings given to them in the Motion.

## PRELIMINARY STATEMENT

1.      The question currently before the Court is simple:  Has Byju complied with the Court's Orders?  The answer is demonstrably, "no."  Nor will he unless and until he is compelled to do so through meaningful sanctions.

2.      Given the history of Byju's and his cohorts' efforts to frustrate discovery in this bankruptcy and related matters (*see* Mot. ¶¶ 24-25), Plaintiffs anticipated exactly what has come to pass: Byju, whenever he deigned to participate in Court-ordered discovery, would not do so in good faith, once again failing to answer direct questions with direct answers.  Therefore—and although it should go without saying—both the initial Discovery Order and the Extension Order expressly required Byju to "comply with the [ordered] deadlines and participate in good faith in the requested discovery."  *See* Discovery Order ¶ 6; Extension Order ¶ 5.

3.      Byju does not (because he cannot) dispute that he failed to comply with even the extended deadlines for responding to the discovery requests.  The May 30 deadline for his written responses and June 6 deadline to produce documents came and went.  Only on June 26, when faced with the impending show-cause hearing and imminent threat of sanctions did Byju, who has been aware of the Debtor's specific questions since April 11 and more generally aware of the information sought in these proceedings for more than two years, provide some semblance of written responses to the interrogatories.  Worse still, as of the filing of this reply brief, Byju still has not produced a single document.

4.      Incredibly, Byju argues that, because he is a citizen of India, is not a native English speaker, and was not represented by qualified U.S. legal counsel, he could not possibly have been expected to understand his obligations and requirements to comply with any order issued by this Court.  *See* Opp. at 2.  These are the latest excuses in what has been a years-long campaign of delays and excuses.  And this latest round of excuses cannot be reconciled with Byju's prior

2

statements and conduct.    Here, now, Byju contends he is not a sophisticated businessman. Meanwhile, he publicly touts himself as being twice named "EY Entrepreneur of the Year,"[3] he once was listed on Forbes's World's Billionaires List,[4] and he has demonstrated an apparent ability to prepare and submit a 10-paged single-spaced declaration (in fluent English) in connection with summary judgment proceedings in the Camshaft Adversary and further sit for a two-hour long interview in English discussing his views towards this litigation, among other topics.[5]  But even to believe his lack of sophistication, *pro se* litigants are not excused from complying with court orders.  *See Miller v. First Federal Sav. & Loan Ass'n of Monessen*, 143 B.R. 815, 819 (Bankr. W.D. Pa. 1992) (noting that "[a] *pro se* litigant has no less obligation to obey court orders than does a litigant who is represented by counsel"); *see generally Delaney v. Matesanz*, 264 F.3d 7, 15 (1st Cir. 2001) ("While Judges are generally lenient with *pro se* litigants, the Constitution does not require courts to undertake heroic measures to save *pro se* litigants from the readily foreseeable consequences of their own inaction.").   In any event, Byju was fully aware of his obligation to comply with the Orders, as evinced by his request for a deadline extension and precisely-timed outreaches to Debtor's counsel on the Court-ordered deadlines.  *See* Mot. ¶¶ 17, 21.

5.        Separate and apart from his defiance of the Court-ordered deadlines, Byju disobeyed (and continues to disobey) the Court's order to participate in discovery in "good faith." Byju was required to produce documents by an extended deadline of June 6, yet, as noted, has failed to produce a single document to date.  Moreover, Byju's responses to the interrogatories are easily shown to be incomplete, inadequate, and, in some cases, outright false.  Unsurprisingly, his

---

[3]   Byju Raveendran, X (Apr. 7, 2025, 12:19 PM), https://x.com/ByjuofBYJUS/status/1909279774389801192.

[4]   Raveendran, Byju, FORBES, https://www.forbes.com/profile/raveendran-byju/.

[5]   ANI News, EP-298 | 'Fugitive' Tag, Loan Default, Refund, BYJU's 3.0, BCCI, SRK, Messi & Layoffs | Byju & Divya, https://www.youtube.com/watch?v=MqbiEiA9CFo.

responses were provided without any form of verification of their veracity or other indication that they have been provided under oath, as required under the Federal Rules.  *See* Fed. R. Civ. P. 33(b)(3).  Over 48 hours later, this significant deficiency still has not been corrected.  On the morning of June 26, within hours of receiving the responses, counsel for the Debtor requested Byju's sworn verification.  Counsel received no response.

6.      Byju's continued contempt for this Court's Orders warrants the Court's imposition of Plaintiffs' requested civil sanctions against him, which are designed both to coerce his full, good faith, participation in the requested discovery and also to compensate Plaintiffs for the monetary and practical implications of his failure to timely and adequately do so.  The Court should grant the Motion.

## REPLY

7.      On the key issues raised by the Motion, Byju's Opposition is silent.  Byju does not dispute, nor could he dispute, that he was directed under two Court orders, of both he had knowledge, to respond to discovery requests by dates certain, and that he failed to do so.  *See* Mot. ¶¶ 28-34 (marshalling the evidence in support of Byju's civil contempt).  These unrefuted facts establish the complete basis for a finding of civil contempt by clear and convincing evidence.  *See F.T.C. v. Lane-Labs-USA, Inc.*, 624 F.3d 575, 582 (3d Cir. 2010) (the three elements for finding a party liable for civil contempt are: "(1) that a valid order of the court existed; (2) the defendant had knowledge of the order; and (3) the defendant disobeyed the order").

8.      In this light, the question properly framed for the Court is *which* sanctions to award, given the costs that have been, and continue to be, imposed on the Debtor and its estate from Byju's prolonged discovery violations.  *See Robin Woods Inc. v. Woods*, 28 F.3d 396, 400 (3d Cir. 1994) (finding that sanctions for civil contempt serve two purposes: "to coerce the defendant into compliance with the court's order and to compensate for losses sustained by the disobedience").

4

As set forth *infra*, nothing in Byju's Opposition or eleventh-hour partial discovery responses demonstrates that anything short of significant sanctions will finally coerce Byju into compliance.

### A.    Byju Was Not Excused From Compliance With Valid Court Orders.

9.      Byju argues that his disobedience of the Orders should be excused because his behavior "evinced a clear good faith intention to acknowledge and comply with this Court's discovery order[.]" Opp. at 2.  Putting aside the veracity of this statement (as discussed below, his purported "compliance" with his discovery obligations evince quite the opposite), acknowledgement and *intent* to comply with a court order do not equate to compliance with a court order.  *See Drozd v. Padron*, 2015 WL 507167, at *9-12 (M.D. Pa. Feb. 6, 2015) (awarding sanctions despite defendant's "eleventh-hour contact . . . and a purported willingness to be deposed," as defendant's assurances "are undermined by his demonstrated lack of respect for his obligation to defend this action and comply with the schedule established for the orderly progression of this case").  And whether he was represented by counsel is irrelevant.  *See Hunt-Ruble v. Lord, Worrell, & Richter, Inc.*, 2012 WL 2340418, at *4 (D.N.J. June 19, 2012) (finding a *pro se* litigant is "directly responsible for his conduct in [] litigation," including any "failure to comply with the Court's [o]rders").[6]  Byju was not excused from compliance with the Court's clear Orders, and *still* has not complied even after first engaging counsel on June 9, 2025.

---

[6]    *Cf. Marks Law Offices, LLC v. Mireskandandari*, 704 Fed. Appx. 171, 177-78 (3d Cir. 2017) (denying motion to vacate under Federal Rule 60(b) where defendants had actual notice of suit and "their reason for delay—a conclusory assertion that they had trouble finding a lawyer—[fell] woefully short of showing that their failure to appear was beyond their control"); *JPMorgan Chase Bank, N.A. v. Pandolfelli*, 2010 WL 3745123, at *5-6 (D.N.J. Sept. 14, 2010) (denying motion to vacate under Federal Rules 55(c) and 60(b) where "the Defendant's inability to retain counsel of his choice does not relieve him of his obligation to respond to the complaints").

**B.    Byju's Eleventh-Hour Partial Responses Evince His Continued Lack Of Good-Faith Compliance With The Court's Discovery Orders.**

**1.    Byju's Interrogatory "Answers" Are Evasive, Incomplete, And Not Made In Good Faith.**

10.    Byju's primary justification for why he should not be held in contempt or sanctioned is that he "is meeting his discovery obligations." Obj. at 2. Simultaneously with filing his Opposition, on June 26 (*i.e.*, almost a full month after his extended May 30, 2025 deadline to do so), Byju did purport to "answer" the Debtor's interrogatories. Under Federal Rule 37, however, an "evasive or incomplete disclosure, answer, or response must be treated as a failure to disclose, answer, or respond." Fed. R. Civ. P. 37(a)(4). Byju's interrogatory responses plainly are "evasive" and "incomplete," and furthermore—and tellingly—are made without verification or other indication that they are answered under oath, as required under Federal Rule 33(b)(3). *See also In re Asbestos Prods. Liab. Litig. (No. VI)*, 2013 WL 210246, at *2 (E.D. Pa. Jan. 17, 2013) (describing court's "categorical[]" position that "interrogatory responses that were unverified were invalid and would be struck," because the "Federal Rules with respect to verification of interrogatory responses are well established"). Even if the Court gave Byju's responses the benefit of the doubt under Federal Rule 37, they certainly evince a lack of "good faith" that defies the express terms of the Orders. *See* Discovery Order ¶ 6; Extension Order ¶ 5.

11.    One of the central goals of the requested expedited discovery was to *finally* locate the missing Alpha Funds, or the proceeds thereof—or, at an absolute minimum, uncover more of the truth. *See, e.g.*, Adv. D.I. 7 ¶ 4 (arguing in support of expedited discovery that there remains a "compelling need for immediate discovery into the whereabouts of the $533 million"). But instead of providing Plaintiffs with the long-awaited answers to questions they have been asking for over a year, and for which Byju has answers, *see* Mot. ¶¶ 25-26, he obfuscated again.

12.     For example, in response to Interrogatory No. 2, which sought the "details of each and every transfer of the Alpha Funds," Byju claimed (but, again, did not swear under oath under Federal Rule 33(b)(3)) that he "cannot provide details of any transfer of any 'Alpha Funds'" because he "had no direct involvement in any transfer of any Alpha Funds," "was not a director or manager of the Debtor," and "did not instruct the Debtor to transfer 'Alpha Funds.'" All three of those unsworn excuses are irrelevant, false, or both.

13.     The former eponymous controller of Think & Learn knows what happened to over half a billion dollars.  Byju submitted an October 2024 declaration, which he "declared, under penalty of perjury" was based upon his "personal knowledge as well as knowledge [] gained as the Managing Director and Chief Executive Officer of T&L."  *See Declaration of Byju Raveendran*, Camshaft Adversary, Oct. 9, 2024 [Adv. D.I. 371-1] (the "Byju Declaration").  In his declaration, Byju detailed the use of the Alpha Funds by OCI Limited—a sham English supply sourcing company.  *Id.* ¶¶ 34-41.  He testified that neither himself "nor any of the founders of T&L" have "personally received any portion of the Alpha Funds or any of the funds disbursed under the Credit Agreement."  *Id.* ¶ 40; *see also id.* ¶ 34 (claiming that the Alpha Funds were used "for a legitimate commercial purpose").  And, he ended his declaration by saying he "sincerely hope[s] that this Declaration clarifies that the Alpha Funds were utilised for legitimate commercial purposes[.]" *Id.* ¶ 41.  Of course, if Byju has no independent knowledge of the Alpha Funds' transfers, he could not attest to the propriety of their use or claim to know that no founder of T&L has ever received a portion of them.

14.     Moreover, his own brother Riju Ravindran implicated Byju.  Riju testified under oath that "[i]t was Think and Learn that decided to make that transfer" of the Alpha Funds to Camshaft, with Riju simply taking "instructions" from T&L.  Hr'g Tr. 20:1-6, 42:7-13, 49:3-12,

Camshaft Adversary, Mar. 14, 2024. Riju "didn't even one time make a decision for [himself] over BYJU's Alpha"—"[i]t was always with the parent company." *Id.* 32:19-23; *see also id.* 43:19-44:4. It naturally follows from this testimony that Byju, as founder, managing director, and CEO of Think & Learn, was involved the giving these instructions.

15.     As another similar example, in response to Interrogatory No. 3, which sought the "details of each and every transfer of the Camshaft LP Interest," Byju similarly claimed to have "no information concerning the 'transferor and 'transferee,'" because "at no time has [he] acted as a director, manager, or employee of the Debtor or Camshaft LP." That statement too is both irrelevant and false. Byju signed the March 31, 2023 Transfer Agreement on behalf of the Debtor, transferring the Camshaft LP Interest out of the Debtor and to Inspilearn (a non-guarantor BYJU's subsidiary). Plaintiffs will also be prepared to present evidence that Byju received emails about additional fraudulent transfers of the Camshaft LP Interest, including the one made on the February 1, 2024 Petition Date. Lastly, Byju's unsworn response is again contradicted by Riju's sworn testimony. According to Riju, the transfer of the Camshaft LP Interest from the Debtor to Inspilearn was the brainchild of T&L, of which Byju was the founder, CEO, and one of three board members, along with his wife. *See, e.g.*, Hr'g Tr. 32:19-23, 59:18-21, Camshaft Adversary, Mar. 14, 2024 (repeatedly testifying that he "just took direction from the parent company," T&L).

16.     The remainder of Byju's responses largely follow the same script. Incredibly, in response to Interrogatory Nos. 6, 7, and 8, Byju claims to be unaware of, or not to recall, three official BYJU's statements and emails describing the movement of the Alpha Funds between September 13, 2023 and March 15, 2024. Indeed, Byju was the first listed recipient of a September 13, 2023 investor relations email, which was sent to Think & Learn's shareholders a week after GLAS sued Camshaft prepetition in Florida, publicly revealing that the $533 million

was sent to an IHOP-based sham hedge fund.  *See* Nakdimon Decl., Ex. 10.  In that email to shareholders, BYJU's said that "an offshore subsidiary remains the beneficiary of the money" (the Alpha Funds).  *Id.*  Yet, Byju claims he "does not know what entities it is referring to." Interrogatory Response No. 6.  Like the rest of his answers, this response is "evasive and incomplete." Fed. R. Civ. P. 37(a)(4).

17.    The fact that Byju produced incomplete, evasive, and implausibly ignorant responses to the Plaintiffs' interrogatories—inquiries they have been making for *more than two years*—does not permit Byju to escape liability for his contempt.  In fact, in Byju's own cited case (Opp. 7-9), the bankruptcy court held the defendant in civil contempt and awarded monetary sanctions, finding that the defendant had not complied with the court's order requiring him to "fully" respond to discovery because, as here, he missed deadlines, failed to provide substantive responses, and failed to verify his interrogatory answers.  *In re Vaso Active Pharms., Inc.*, 514 B.R. 416, 423-24 (Bankr. D. Del. 2014) (Sontchi, J.) (also emphasizing that interrogatories "must be answered 'separately and fully in writing under oath'"); *see also Andrews v. Holloway*, 256 F.R.D. 136, 151 (D.N.J. 2009) (defendant held in contempt because "he intentionally gave evasive and incomplete testimony" regarding the "existence and whereabouts" of relevant documents and "his knowledge of his wife's finances," among other things); *Xtreme Caged Combat v. ECC Fitness*, 2023 WL 4291657, at *1 n.1 (E.D. Pa. Apr. 26, 2023) (providing "evasive or incomplete disclosures, answers, or responses" may be "deemed civil contempt").  Here, Byju's responses only *confirm* his unwillingness to engage in good faith (as ordered) in the discovery process. Despite what the Opposition suggests, Opp. § IV, Byju is not "complying with the Court's Order," and should be held in contempt.

### 2.    Byju Still Has Not Produced Any Documents.

18.    Byju remains in violations of this Court's Orders for a second independent reason. As the Court ordered, Byju first had until May 30, and then until June 6, to "produce responsive documents," *see* Discovery Order ¶ 6, Extension Order ¶ 5, including all documents and communications "concerning the Alpha Funds or the Camshaft LP Interest, including [] any transfers thereof and the reasons therefore," along with "agreements[] concerning OCI setting off 'its outstanding dues against the Alpha Funds,' as referenced in Paragraph 39 of Your Declaration." RFP Nos. 2-3. Byju first learned of these requests on April 11, and they were served on May 9 pursuant to the Discovery Order. Mot. ¶ 10, 16. As of the date hereof—78 days after first receiving notice, 50 days after being served, and 22 days after the Court's extended deadline— Byju still has not produced a single document. He remains in flagrant violation of this Court's Orders, refusing not only to provide complete answers to straightforward questions but also the documentation central to the legal claims and factual questions in this case.

### C.    Byju Is Not Raising Service And Personal Jurisdiction As Defenses To His Contempt Of Court.

19.    During the hearing on June 9, 2025, Byju (through his non-attorney advisor) claimed that he had not been properly served and that this Court lacked jurisdiction over him. *See, e.g.*, June 9, 2025 Hr'g Tr. 13:2-3, 14:16-19. As extensively laid out in the Motion, the Debtor properly served Byju, and he is subject to personal jurisdiction in the United States, including under the Delaware Consent Statute and because Byju purposefully directed his activities here. Mot. ¶¶ 35-44; *see also* Adv. D.I. 14 ¶¶ 3-11 (also rebutting Byju's service challenge). Rather than actually grapple with the extensive facts and law marshalled in the Motion, Byju makes a 180 degree pivot, claiming that "this Motion is not the vehicle for the Court to decide that question" of

jurisdiction.  Opp. at 7.  Therefore, Byju has waived and forfeited his (meritless) challenges to service and personal jurisdiction for purposes of the contempt hearing.[7]

20.    For the avoidance of doubt, in response to Plaintiffs' invocation of the Delaware Consent Statute, Byju does deny that he was "an officer or director of Debtor."  Opp. at 7.  He makes this argument notwithstanding his clear execution of the March 31, 2023 Transfer Agreement, purporting to transfer the Camshaft LP Interest away from the Debtor to Inspilearn, as the Debtor's CEO, as illustrated below.  *See* Nakdimon Decl., Ex. 11.  Indeed, the Court previously found that Byju served as the "self-appointed" CEO of the Debtor.  MSJ Op. at 6.



21.    This was not a "clerical error," as Byju Claims, *see* Interrogatory Response No. 3, and Plaintiffs have uncovered other agreements establishing that Byju made a habit of signing documents on behalf of the Debtor.  *See, e.g.,* Nakdimon Decl., Ex. 12.  Regardless, at this procedural stage—and even on a Rule 12 motion to dismiss—the Debtor's well-pled allegations

---

[7] Plaintiffs additionally reserve the right to argue that Byju has waived and forfeited any future attacks to service and personal jurisdiction.  *See* Mot. ¶¶ 42-44.

that Byju served as its CEO are all that is required to resolve the issue.  Mot. ¶ 39 n.26 (compiling cases); *see also Del. Pro. Ins. Co. v. Hajjar*, 55 F. Supp. 3d 537, 542 (D. Del. 2014) (allegations that fiduciary duty claims arise out of defendant's role as a nonresident director of a Delaware corporation are "sufficient to demonstrate a statutory basis for personal jurisdiction").  Ultimately, Byju cannot deny that he purported to sign the Transfer Agreement on the Debtor's behalf, that he claimed to be someone with authority to bind the Debtor, and that this litigation arises out of that Delaware-centric conduct and more.  Byju is properly in this case, and any claimed issues of service and personal jurisdiction are no impediment to proceeding with the contempt hearing even by Byju's own admission.

        **D.**    **The Sanctions Sought By Plaintiffs Are Appropriate.**

      22.    Byju's deficient Interrogatory Responses and ongoing failure to produce documents only highlight the necessity of imposing the sanctions requested by Plaintiffs.  The requested sanctions are designed to both coerce Byju to fully comply with his Court-ordered discovery obligations, and to compensate Plaintiffs for the losses they have and continue to sustain as a result of Byju's non-compliance. *See Robin Woods Inc.*, 28 F.3d at 400 (finding that sanctions for civil contempt can be to "compensate for losses sustained by the disobedience") (quotation omitted).  They are also benchmarked against the numerous other sanctions orders that the Court has been forced to impose in these and related bankruptcy proceedings.  But even if the Court were to give Byju some credit for his eleventh-hour responses, Plaintiffs submit that the Court should nevertheless (i) order Byju to reimburse Plaintiffs' reasonable documented expenses, including legal fees, incurred in connection with prosecuting a contempt motion that should never have been needed to begin with; and (ii) impose a significant daily sanction until Byju completely complies with his long-outstanding discovery obligations in good faith.  Nothing short of the prospect of

meaningful sanctions has proven to be effective at coercing Mr. Raveendran's compliance with his discovery obligations.

## **<u>CONCLUSION</u>**

23.     WHEREFORE, for the forgoing reasons and the reasons set forth in the Motion, Plaintiffs respectfully request that this Court enter an order substantially in the form of the Proposed Order (i) holding Byju in contempt of the Court's Orders, (ii) imposing civil sanctions, and (iii) granting such other or further relief as the Court deems just and proper.

Dated: Wilmington, Delaware
      June 28, 2025

**YOUNG CONAWAY STARGATT & TAYLOR, LLP**

*/s/ Kenneth Enos*
Robert S. Brady (Del. No. 2847)
Kenneth J. Enos (Del. No. 4544)
Jared W. Kochenash (Del. No. 6557)
Timothy R. Powell (Del. No. 6894)
1000 North King Street
Wilmington, Delaware 19801
Telephone: (302) 571-6600
Facsimile: (302) 571-1253
rbrady@ycst.com
kenos@ycst.com
jkochenash@ycst.com
tpowell@ycst.com

**QUINN EMANUEL URQUHART & SULLIVAN, LLP**
Benjamin Finestone (admitted pro hac vice)
Kate Finestone (admitted pro hac vice)
Jianjian Ye (admitted pro hac vice)
Jordan Nakdimon (admitted pro hac vice)
295 Fifth Ave.
New York, New York 10016
Tel.: (212) 849 7000
benjaminfinestone@quinnemanuel.com
kateFinestone@quinnemanuel.com
jianjianye@quinnemanuel.com
jordannakdimon@quinnemanuel.com

*Counsel for Debtor, BYJU's Alpha, Inc.*

Dated: June 28, 2025
Wilmington, Delaware

/s/ Laura Davis Jones
**PACHULSKI STANG ZIEHL & JONES LLP**

Laura Davis Jones (DE Bar No. 2436)
Peter J. Keane (DE Bar No. 5503)
919 North Market Street, 17th Floor
P.O. Box 8705
Wilmington, Delaware 19801
Telephone:    (302) 652-4100
Email:          ljones@pszjlaw.com
                     pkeane@pszjlaw.com

**KIRKLAND & ELLIS LLP**

**KIRKLAND & ELLIS INTERNATIONAL LLP**
Patrick J. Nash Jr., P.C. (admitted *pro hac vice*)
Richard U.S. Howell, P.C. (admitted *pro hac vice*)
Ravi Subramanian Shankar (admitted *pro hac vice*)
Sarah M. Kimmer (admitted *pro hac vice*)
Colin B. Rathe (admitted *pro hac vice*)
333 West Wolf Point Plaza
Chicago, Illinois 60654
Telephone:    (312) 862-2000
Facsimile:     (312) 862-2200
Email:          patrick.nash@kirkland.com
                     rhowell@kirkland.com
                     ravi.shankar@kirkland.com
                     sarah.kimmer@kirkland.com
                     colin.rathe@kirkland.com

-and-

Brian Schartz, P.C. (admitted *pro hac vice*)
601 Lexington Avenue
New York, New York 10022
Telephone:    (212) 446-4800
Facsimile:     (212) 446-4900
Email:          brian.schartz@kirkland.com

*Counsel to GLAS Trust Company LLC*