## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | |
| BYJU'S ALPHA, INC., | Chapter 11 |
| Debtor. | Case No. 24-10140 (BLS) |
| BYJU'S ALPHA, INC., | Adv. Pro. Case No. 25-50526 (BLS) |
| Plaintiffs, | |
| v. | |
| BYJU RAVEENDRAN, DIVYA GOKULNATH, and ANITA KISHORE, | |
| Defendants. | |

### DEFENDANTS BYJU RAVEENDRAN AND DIVYA GOKULNATH'S
### MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS

**Dated: July 25, 2025**

**O'KELLY & O'ROURKE, LLC**

*/s/ Daniel P. Hagelberg*
Daniel P. Hagelberg, Esq. (No. 6813)
824 N. Market Street, Suite 1001A
Wilmington, DE 19801
(302) 778-4000
dhagelberg@okorlaw.com

**DRAPER & DRAPER LLC**

*/s/ Matthew E. Draper*
Matthew E. Draper (*pro hac vice*)
100 Park Avenue, Suite 1600
New York, New York 10017
(347) 442-7788
matthew.draper@draperllc.com

*Counsel for Defendants*
*Byju Raveendran & Divya Gokulnath*

# TABLE OF CONTENTS

Table of Contents .................................................................................................. 2

Table of Authorities ............................................................................................. 3

Preliminary Statement .......................................................................................... 1

Relevant Background ............................................................................................ 2

    I.   The Foreign Defendants ............................................................................. 2

        A.  Byju Raveendran .................................................................... 2

        B.  Divya Golkunath ..................................................................... 3

        C.  The Defendants were Board Members of the Ultimate Indian Corporate Parent of Debtor ................................................................................ 4

    II.  Relevant Corporate Entitles ...................................................................... 4

Argument ............................................................................................................... 5

    I.   The Adversary Complaint Should Be Dismissed Against Byju Raveendran and Divya Gokulkath for Insufficient Service of Process ....................................... 5

        A.  Legal Standards ...................................................................... 5

        B.  No Service of Byju Raveendran Under the Delaware Officer Consent Statute 6

        C.  Service Was Not Made On Byju Raveendran or Divya Golkunath Pursuant to Federal Rule of Civil Procedure 4(f) .................................................... 10

    II.  Dismissal is Proper Under Federal Rule of Civil Procedure 12(b)(2) For Lack of Personal Jurisdiction .......................................................................................... 12

        A.  Byju Raveendran and Divya Golkunath Have Insufficient Jurisdictional Contacts with Delaware or the United States to Subject Them to the Jurisdiction of this Court ...................................................................... 13

        B.  Even if Delaware Law Were to Supply Jurisdiction Over Byju Raveendran and Divya Gokulnath, the U.S. Constitution Would Prohibit It ............................ 15

    III.  Alternatively, Dismissal is Proper Under Federal Rule of Civil Procedure 12(b)(6) Because Plaintiff's Complaint Does Not State a Claim Upon Which Relief Can be Granted .............................................................................................................. 18

        A.  Count I – Alleged Aiding and Abetting Riju Ravindran's Breach of Fiduciary Duty ......................................................................................... 18

        B.  Count II – Alleged Breach of Fiduciary Duty By Byju Raveendran ............ 20

        C.  Count IV – Accounting ........................................................... 21

        D.  Count V – Alleged Conversion ................................................. 22

        E.  Count Six – Alleged Conspiracy ............................................... 26

Conclusion .......................................................................................................... 26

**T**ABLE OF **A**UTHORITIES

**Cases**

*Astropower Liquidating Tr. v. Xantrex Tech., Inc. (In re Astropower Liquidating Tr.)*, Nos. 04-10322 (MFW), 05-50867, 2006 Bankr. LEXIS 2443, at *5 (Bankr. D. Del. Oct. 2, 2006) ................................................................................................................................. 12

*Bond v. Rosen (In re NSC Wholesale Holdings LLC)*, 637 B.R. 71, 85 (Bankr. D. Del. 2022) ... 20

*Byju's Alpha Inc., v. Camshaft Capital Fund, LP, et al.*, Adv. No. 24-50013 (JTD), Adv. D.I. 383, Memorandum Opinion, Feb. 27, 2025 ........................................................................ 8

*Capmark Fin. Grp. Inc. v. Lin (In re Capmark Fin. Grp. Inc.)*, 479 B.R. 330, 338 (Bankr. D. Del. 2012) ...................................................................................................................... 13

*Carteret Sav. Bank, FA v. Shushan*, 954 F.2d 141, 142 fn. 1 (3d Cir. 1992) .............................. 12

*Chow v. Canyon Bridge Cap. Partners, LLC*, 2024 U.S. Dist. LEXIS 129424, at *11-12 (D. Del. July 22, 2024)...................................................................................................................... 5

*Daimler AG v. Bauman*, 571 U.S. 117, 125 (2014) ..................................................................... 13

Federal Rule of Civil Procedure 12(b)(2) .............................................................................. 12, 13

*FSQ, Inc. v. Integrated Health Servs. (In re Integrated Health Servs.),* 303 B.R. 577, 584, 2003 Bankr. LEXIS 1758, *14, 42 Bankr. Ct. Dec. 94 ......................................................... 18

*Grand Entm't Grp. v. Star Media Sales*, 988 F.2d 476, 488 (3d Cir. 1993) .................................. 5

*Hardwire, LLC v. Zero Int'l, Inc.*, 2014 U.S. Dist. LEXIS 146364 at *46-47 (D. Del. Oct. 14, 2024) ......................................................................................................................... 5

*Hishon v. King & Spalding*, 467 U.S. 69, 73, 81 L. Ed. 2d 59, 104 S. Ct. 2229 (1984) .............. 18

*HMG/Courtland Props., Inc. v. Gray*, 729 A.2d 300, 305 (Del. Ch. 1999) ............................... 7, 8

*ICT Pharms., Inc. v. Boehringer Ingelheim Pharms., Inc.*, 147 F. Supp. 2d 268, 270-71 (D. Del. 2001) ....................................................................................................................... 12

*In re SwervePay Acquisition, LLC*, 2022 Del. Ch. LEXIS 208, at *31 (Ch. Aug. 26, 2022)....... 26

*Istituto Bancario Italiano SpA v. Hunter Eng'g Co.*, 449 A.2d 210, 228 (Del. 1982) .................. 7

*Official Comm. of Unsecured Creditors of Fedders N. Am., Inc. v. Goldman Sachs Credit Partners L.P. (In re Fedders N. Am., Inc.)*, 405 B.R. 527, 543-44 (Bankr. D. Del. 2009)19

*Rocks v. Philadelphia*, 868 F.2d 644, 645 (3d Cir. 1989)........................................................... 18

*Rogers v. Morgan*, 208 A.3d 342, 346 (Del. 2019) ......................................................... 8

*Tribune Media Servs. v. Beatty (In re Tribune Co.)*, 418 B.R. 116, 121 (Bankr. D. Del. 2009) .. 13

*W.D.C. Holdings, LLC v. IPI Partners, LLC*, No. 2020-1026-JTL, 2022 Del. Ch. LEXIS 145, at *39-40 (Del. Ch. June 22, 2022) ................................................................................... 22, 23

*Walden v. Fiore*, 571 U.S. 277, 283-84 (2014) ...................................................... 15, 17

*Wisneiswki v. Johns-Manville Corp.*, 759 F.2d 271, 273 (3d Cir. 1985) ...................................... 18

*Yu v. GSM Nation, LLC*, No. N17C-07-200 JRJ, 2018 Del. Super. LEXIS 382, at *15 (Super. Ct. Apr. 24, 2018) ............................................................................................... 14, 15

**Statutes**
10 Del. C. § 3114 ...................................................................................... 5, 6, 7, 8

10 Del. C. §3104(c) .......................................................................................... 14, 15

**Rules**
Federal Rule of Bankruptcy Procedure 7004 ............................................................ 5, 13

Federal Rule of Bankruptcy Procedure 7012(b) ............................................................ 5

Federal Rule of Civil Procedure 12(b) ...................................................................... 5

Federal Rule of Civil Procedure 12(b)(5) ..................................................................... 5

Federal Rule of Civil Procedure 4(f) .......................................................... 5, 11, 12, 16

Federal Rules of Civil Procedure Rule 4(h) .................................................................. 5

## PRELIMINARY STATEMENT

Plaintiff-Debtor Byju's Alpha, Inc. ("Debtor") brings a thinly-pled Complaint against two Defendants – Byju Raveendran and Divya Gokulnath – who (1) have done nothing to justify the exercise of this Court's jurisdiction over them, and (2) have little to no involvement in the underlying transactions.

Byju Raveendran and Divya Gokulnath bring this Motion to Dismiss on three grounds.

*First*, Debtor has failed to properly serve them with the summons and Complaint. Plaintiffs' service attempts are deficient for a number of reasons.  But it is hard to understand how Plaintiffs believe they can claim to have properly served Byju Raveendran and Divya Gokulnath via a text message to a cell phone number they have never owned or used, and which instead appears in advertisements online in Dubai for a used car salesman.   (§ X, below)

*Second*, even assuming proper service, this Court lacks personal jurisdiction over Byju Raveendran and Divya Gokulnath – non-U.S. residents who have never been to Delaware and conduct no business in the United States.  Plaintiffs show real chutzpah when they assert that this Court may exercise personal jurisdiction over Divya Golkunath, who's only jurisdictionally relevant act is to have been a member of the board of Debtor's Singaporean parent's Indian parent company and acted within the scope of her duties.

*Third*, the claims Plaintiffs bring are baseless.  To give just one example, Plaintiffs bring a claim against Byju Raveendran and Divya Gokulnath for conversion of property that Plaintiffs do not even own– the Camshaft LP Interest.

As set forth is more detail below, the Complaint should be dismissed as against Byju Raveendran and Divya Gokulnath for lack of personal jurisdiction or, alternatively, for failure to state claim upon which relief may be granted.

1

**RELEVANT BACKGROUND**

I.      **The Foreign Defendants**

   A.  **Byju Raveendran**

Byju Raveendran is an Indian entrepreneur and educator who founded BYJU'S, one of the world's most successful edtech companies.  Byju Raveendran is from "Azhikode, a small coastal village in Kerala," India.[1]  Byju Raveendran grew up in a family of teachers – both his parents were educators. He completed his engineering degree from Government Engineering College in Kannur, Kerala.  After graduating, Byju Raveendran initially worked as an engineer. However, on the side he started helping friends prepare for India's CAT (Common Admission Test) exam for MBA programs. His friends performed exceptionally well, attracting more students seeking his help.  What started as informal tutoring sessions grew into packed auditoriums with thousands of students. In 2011, along with his wife, co-Defendant Divya Gokulnath (who is an esteemed educator herself), Byju Raveendran founded Think and Learn Pvt Ltd in Bangalore, India. The company initially focused on offline classes before pivoting to online education in 2015 with the launch of their mobile app, "BYJU'S - The Learning App".[2] Byju Raveendran has since become "one of India's best known entrepreneurs" who created "India's only edtech unicorn," Byju's.[3]  In 2020, Ernst & Young named Byju Raveendran Entrepreneur of the Year for Business Transformation.[4]  In 2021, BYJU's was named one of the Time100 Most Influential Companies.[5]  BYJU's users doubled during the COVID-19 pandemic,

---

[1]      "*Have Always Listened to Students First*," Fortune India, October 11, 2021. Attached hereto as Exhibit 1.

[2]      *Id.* at 3.

[3]      *Meet the Mavericks, From Humble Beginnings to Billion-Dollar Dreams – Here's Byju Raveendran's Fascinating Success Story*, Your Story.com, August 14, 2019.  Attached hereto as Exhibit 2.

[4]      https://www.ey.com/en_in/entrepreneur-of-the-year/winners-2020/byju-raveendran

[5]      *2021 Time100 Most Influential Companies*, April 26, 2021, Time.com.  Attached hereto as Exhibit 3 .

2

generating a company valued at $15 billion in early 2021.[6]  By late 2021, BYJUS's received an offer for a special purpose acquisition company listing that valued BYJU's at $48 billion.[7]  At the time, BYJU's had approximately 175 million customers worldwide.  *Id.*

Byju Raveendran's model for delivering meaningful education to as broad a group of students as possible has generated significant interest also among academics, including at Harvard Business School, which has conducted a case study of BYJU's.[8]  The International Finance Corporation has likewise promoted BYJU's as an exemplary edtech company.[9]

### B.  Divya Golkunath

Co-Defendant Divya Golkunath grew up in Bangalore.  She graduated with a Bachelor's degree in Engineering from RV College of Engineering in Bangalore.  She was one of Byju Raveendran's early students when he was teaching engineering students preparing for CAT exams.  After graduation, Ms. Golkunath joined Byju Raveendran in his offline coaching classes, where she taught mathematics and helped develop teaching methodologies.  Her expertise in understanding student psychology and creating engaging content became instrumental in shaping BYJU'S teaching approach.  After co-founding  Think & Learn Private Limited ("T&L"), the shareholder of the Debtor's shareholder, Ms. Gokulnath played a key role in developing the company's pedagogical approach, leading content creation and curriculum design, and overseeing the company's expansion strategies.

Byju Raveendran and Divya Gokulnath are married with three children.  They live in Benguluru, India.

---

[6]      *Id.*
[7]      *Byju's gets offer for US SPAC listing for $48 billion valuation*, CNBC TV18.com, December 16, 2021.  Attached hereto as Exhibit 4.
[8]      Case Study from Harvard Business School. Exhibit 5.
[9]      International Finance Corporation.  Exhibit 6.

### C.  The Defendants were Board Members of the Ultimate Indian Corporate Parent of Debtor

Byju Raveendran and Divya Gokulnath served as members of the board of T&L along with, three to four other board members.  Raveendran Decl. ¶10; Gokulnath Decl. ¶ 7. Other board members included Riju Ravindran and three to four outside directors appointed by investors in T&L.  *Id.*  The board could not take action without at least one outside director being present.[10]  *Id.*  T&L observed corporate formalities and adhered to the voting structure required by its bylaws. Raveendran Decl. ¶ 11; Gokulnath Decl. ¶ 8.

## II.      Relevant Corporate Entitles

T&L is the parent company incorporated in India on November 30, 2011, headquartered in Bengaluru, Karnataka.  This is the ultimate parent company of the Byju's business.

Byju's Pte. Ltd. is a Singapore subsidiary of T&L incorporated on January 14, 2020 ("Byju's Singapore"). [11]  It is located at 11 Collyer Quay, #17-00, The Arcade, Singapore.  Byju's Singapore has two directors, Melanie Lee Jin Yen and Riju Ravindran.[12]  Byju's Pte. Ltd is audited as a group of companies to include its subsidiaries, including Debtor.[13]  Byju Raveendran and Divya Gokulnath have never been directors, officers or employees of Byju's Singapore. Raveendran Decl. ¶16; Gokulnath Decl. ¶ 9.  On November 21, 2021, Glas Trust Company LLC secured a charge against all of Byju Singapore's monies. [14]  Glas obtained this charge pursuant to the Credit Agreement.[15]  Byju's Singapore was placed into receivership after the Loan acceleration in March 2023 and before the commencement of the voluntary bankruptcy in Delaware in February 2024. Raveendran Decl. ¶15.

---

[10]      Exhibit 13.
[11]      Exhibit 7, Exhibit 8, Exhibit 9, Exhibit 10 (see Notes to Financial Results 11), Exhibit 16.
[12]      Exhibit 7,  Exhibit 8.
[13]      Exhibit 12.
[14]      Exhibit 8.
[15]      Exhibit 11, Exhibits 24-33.

Byju's Alpha, Inc., the US subsidiary of Byju's Pte. Ltd., was established in 2021.

<u>**ARGUMENT**</u>

I.      **The Adversary Complaint Should Be Dismissed Against Byju Raveendran and Divya Gokulkath for Insufficient Service of Process**

    **A. Legal Standards**

This Motion is based on Federal Rule of Civil Procedure 12(b), made applicable to this proceeding by Federal Rule of Bankruptcy Procedure 7012(b).

Defendants may move to dismiss pursuant to Rule 12(b)(5) when a plaintiff fails to properly serve him with the summons and complaint.  Federal Rule of Civil Procedure 12(b)(5) "requires the Court to dismiss any case in which service of process was insufficient." *Hardwire, LLC v. Zero Int'l, Inc.*, 2014 U.S. Dist. LEXIS 146364 at \*46-47 (D. Del. Oct. 14, 2024). "In resolving a motion under Rule 12(b)(5), the party making service has the burden of demonstrating its validity when an objection to service is made." *Chow v. Canyon Bridge Cap. Partners, LLC*, 2024 U.S. Dist. LEXIS 129424, at \*11-12 (D. Del. July 22, 2024); *see also Grand Entm't Grp. v. Star Media Sales*, 988 F.2d 476, 488 (3d Cir. 1993). Service in an adversary proceeding is governed by Federal Rules of Civil Procedure Rule 4(h), made applicable by Federal Rule of Bankruptcy Procedure 7004.

Plaintiffs have offered two alternative theories to argue that Byju Raveendran and Divya Golkunath have been properly served.  Under their first theory, Byju Raveendran was the CEO of Debtor, a Delaware company, and thus may be served under the Delaware Officer Consent Statute, 10 Del. C. § 3114.  Under the second theory, Byju Raveendran and Divya Golkunath may be properly served in accordance with Federal Rule of Civil Procedure 4(f).  Plaintiffs fail to establish service was perfected under either theory.

**B.  No Service of Byju Raveendran Under the Delaware Officer Consent Statute**

The Delaware Officer Consent Statute, 10 Del. C. § 3114, provides that officers of Delaware companies are deemed to have submitted to the jurisdiction of the Delaware courts if sued for events that occurred while they were an officer. The Delaware Officer Consent Statute applies to "an officer of the corporation" who is identified as such in only three ways.  An "officer":

> (1) Is or was the president, chief executive officer, chief operating officer, chief financial officer, chief legal officer, controller, treasurer or chief accounting officer of the corporation at any time during the course of conduct alleged in the action or proceeding to be wrongful;

> (2) Is or was identified in the corporation's public filings with the United States Securities and Exchange Commission because such person is or was 1 of the most highly compensated executive officers of the corporation at any time during the course of conduct alleged in the action or proceeding to be wrongful; or

> (3) Has, by written agreement with the corporation, consented to be identified as an officer for purposes of this section.

Delaware Officer Consent Statute, 10 Del. C. § 3114(b).

Here, there is no dispute between the parties that neither subsection (2) nor (3) apply because Byju Raveendran was not named in a filing of Debtor's to the United States Securities and Exchange Commission, nor does he have a contract with Debtor in which he consented to be identified as an officer of Debtor "for the purposes of this section."

Plaintiffs allege, however, that pursuant to 10 Del. C. § 3114(b)(1), their service of the Summons and Complaint were proper because Defendant "held himself out as Debtor's CEO." Complaint ¶¶ 53, 66, 68, 149.  Plaintiffs are mistaken for at least two reasons.

First, for the Delaware Officer Consent Statute to apply, Byju Raveendran must have actually been appointed CEO of Debtor.  The evidence shows he never was.[16]

---

[16]    Exhibit 14, Exhibit 15, Exhibit 17,

The Delaware Officer Consent Statute is not ambiguous on this point. It clearly states in relevant part that an "officer" means a person who "*[i]s or was* the … chief executive officer." 10 Del. C. § 3114(b)(1) (emphasis added). Anyone other than a current or former officer does not fall within the meaning of the statute. Indeed, Courts reject attempts by creative plaintiffs to use the Delaware Officer Consent Statute as a way to gain jurisdiction over agents or "alter egos" of directors of Delaware corporations. *HMG/Courtland Props., Inc. v. Gray*, 729 A.2d 300, 305 (Del. Ch. 1999). Similarly, courts strictly construe the language in 10 Del. C. § 3114(b)(1) to require that the person must have been an "officer" "at any time during the course of conduct alleged in the action or proceeding to be wrongful." *See e.g.*, *Istituto Bancario Italiano SpA v. Hunter Eng'g Co.*, 449 A.2d 210, 228 (Del. 1982) (no jurisdiction over co-conspirator who was officer after but not during the alleged conspiracy).

Here, the uncontroverted evidence is that Byju Raveendran was never CEO of Debtor.[17] No board resolution exists stating that he was CEO, and Byju Raveendran has submitted a sworn statement that he was never CEO of Debtor. *See,* Interrogatory Response of Defendant Number 1 ("Defendant states that he has never held a director, officer, or manager position for or with BYJU's Alpha Inc."); Request for Production Response of Defendant Number 5 ("Defendant objects as Defendant is not an officer or director of the Debtor nor has Defendant represented himself to be an officer or director of Debtor.") Raveendran Decl. 11.

Indeed, Plaintiffs concede that Byju Raveendran's brother – Riju Ravindran – was "the **sole director and officer** of the Debtor." Complaint ¶ 93 (emphasis added). Plaintiffs have argued this repeatedly to this Court. In reliance on this argument, a Judge Dorsey in a related proceeding concluded that Byju Raveendran "was not employed by the Debtor in any capacity." *Byju's Alpha Inc., v. Camshaft Capital Fund, LP, et al*., Adv. No. 24-50013 (JTD), Adv. D.I. 383,

---

[17]    Exhibit 14, Exhibit 15.

Memorandum Opinion, Feb. 27, 2025, p. 40; *see also*, *e.g.*, pp. 16 and 19 (referring to Riju Ravindran as the "sole officer" of Debtor).  Relying specifically on this evidence, Judge Dorsey rendered judgment against entities and persons other than Byju Raveendran.  *See also* June 30 Tr. 54:12- 56:3.

Thus, in reliance on Debtor's evidence, this Court found that Defendant here was not an employee or officer of Debtor.  Not only is this finding compelling as a factual matter, it means Plaintiffs are collaterally estopped from arguing now that Byju Raveendran was an officer of Debtor.  *Rogers v. Morgan*, 208 A.3d 342, 346 (Del. 2019) (A claim is collaterally estopped "if the same factual issue was presented in both cases, the issue was litigated and decided in the first suit, and the determination was essential to the prior judgment") (quotes omitted).  For all of these reasons, Defendant was not an officer of Debtor and cannot be served in this action pursuant to the Delaware Officer Consent Statute.

Second, Plaintiffs allegation that Byju Raveendran "held himself out as CEO" is insufficient to establish jurisdiction for two reasons.  First, the simply law does not extend jurisdiction over a non-officer who says he is one.  10 Del. C. § 3114(b)(1) ("officer" means a person who "*[i]s or was* the … chief executive officer.") (emphasis added); *See*, also *HMG/Courtland Props., Inc.*, 729 A.2d at 305.

In any case, Byju Raveendran denies that he has ever held himself out as CEO of Debtor, and Plaintiffs' suggestion he has no evidentiary support.

Plaintiffs allege he did so in two documents he signed. But Plaintiffs are wrong.

Neither the Transfer Agreement between Debtor & Inspilearn, dated March 31, 2023 referred to in para. 8 of the Complaint, nor the March 31, 2023 contract executed between Lions Business Group, Debtor and others, which Plaintiffs identified more recently, support the conclusion that Byju Raveendran held himself out as CEO of Debtor.  We address each in turn.

***Transfer Agreement between Debtor & Inspilearn dated March 31, 2023***

Plaintiffs suggest that this document, entered into evidence as Debtor's Exhibit 12 at the June 30, 2025, contempt hearing, requires the Court to understand that Byju Raveendran represented himself in the signature block that he was "CEO" of the Debtor.

Plaintiffs' submission is incorrect for a number of reasons, including at least:

a. This document was prepared by William Morton of Camshaft and sent to Mssrs. Byju Raveendran and Riju Ravindran for signature. The only action required and performed by Byju Raveendran and Riju Ravindran was to apply an e-signature.

b. Byju Raveendran did not himself type the entries for his "Name" and "Title". Rather, these entries were added by Camshaft. This fact is evident from a close examination of the signature of Byju Raveendran where it is evident that the signature itself is <u>below</u> his first name with the Docusign signature reference being obscured by the text written on top of the signature.

c. It is evident that when Byju Raveendran executed this document he did not state his title for either of the Debtor or Inspilearn.

d. At the time of execution of this document that Byju Raveendran was the CEO of Think & Learn Private Limited (India). Consequently, Camshaft's error in entering the term "CEO" as title for Byju Raveendran is a clerical mistake for which Camshaft is responsible, not Byju Raveendran.

e. Byju Raveendran confirmed his understanding of the matters above in his Interrogatory No. 3 reply as indicated above.

***Lion Business Funding Merchant Agreement***

The second of the two documents provided to the Court is a Merchant Agreement governed by the laws of Connecticut between Lion Business Funding, Byju's Alpha Inc. and "the entitles listed on annexed "Exhibit A." *See,* Debtor's Exhibit 13 to the June 30, 2025 contempt hearing, p. 1. Those entities include Think & Learn Private Limited (India) and a number of other subsidiaries of Think & Learn Private Limited (India). *Id.* at 6. This contract is not subject to Delaware law nor does it contain a choice of forum clause selecting Delaware courts.

This document does not establish that Byju Raveendran represented himself to be CEO Byju's Alpha Inc. because nowhere does it identify Byju Raveendran as CEO of <u>any</u> entity, much less Byju's Alpha Inc.  Nor does it anywhere identify Byju Raveendran as an officer of that – or any other – entity.  Byju Raveendran's signature on the contract simply demonstrates that he was authorized to execute the contract.  (Byju Raveendran did not even sign all portions of the contract; After page 12, it was signed by Mr. Cherian Thomas, a former manager with Think & Learn Private Limited (India)).

In short, Byju Raveendran did not represent himself to be an officer or director of Byju's Alpha Inc.  Nor did he represent that he was signing on behalf of Byju's Alpha Inc.  The signature of Byju Raveendran plainly is on behalf of Think & Learn Private Limited (India) as a contracting party as referenced in the Annex.  Rather, Riju Ravindran, the director of Byju's Alpha Inc. himself executed the document, which was all that required to bind Byju's Alpha Inc..

It is important to note that, as declared by Byju Raveendran in his statements before the Court, Riju Ravindran relied on legal advice and understood that he could mandate a person for a limited purpose of executing the above agreements.

Plaintiffs bore the burden of establishing that Byju Raveendran is subject to the Delaware Officer Service Statute.  Given the absence of evidence that Byju Raveendran was ever an officer of Byju's Alpha Inc., reconsideration of the finding of jurisdiction over Byju Raveendran is warranted.

### C. Service Was Not Made On Byju Raveendran or Divya Golkunath Pursuant to Federal Rule of Civil Procedure 4(f)

Not surprisingly, Plaintiffs have also sought to establish jurisdiction over Byju Raveendran without reliance on the Delaware Officer Service Statute.

Plaintiffs invoke Federal Rule of Civil Procedure 4(f), which provides the methods by which a non-resident defendant may be properly served a summons and complaint.  As relevant here, an individual may be served in a foreign country:

> (1) by any internationally agreed means of service that is reasonably calculated to give notice, such as those authorized by the Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents;
>
> (2) if there is no internationally agreed means, or if an international agreement allows but does not specify other means, by a method that is reasonably calculated to give notice:
>
> (A) as prescribed by the foreign country's law for service in that country in an action in its courts of general jurisdiction;

Federal Rule of Civil Procedure 4(f) (1), (2)(A).

Plaintiffs allege service of the summons and Complaint were served in accordance with the laws of the UAE pursuant to FRCP 4(f) (2)(A).  To succeed, Plaintiffs must establish that it served each Byju Raveendran and Divya Golkunath in accordance with the laws of service of the United Arab Emirates.  Plaintiffs have failed to do so.  Second Declaration of Mohammed Al Muhtaseb dated July 25, 2025 ("2d Al Muhtaseb Decl.").[18]  Specifically, UAE law requires that judicial documents be served in, at least, the Arabic language.  2d Al Muhtaseb Decl. ¶¶ 4-5.  Plaintiffs failed to do this.  *Id.* at ¶ 5.  UAE law further requires that a summons must be served by a court-appointed bailiff.  *Id.* at ¶ 6.  It was not.  *Id.*  Finally, Plaintiffs claimed that service by text message to a particular mobile number they, apparently, believed was associated with Byju Raveendran and Divya Golkunath was adequate under UAE law.  In this case, however, the phone number to which Plaintiffs sent their texts was not a number of Byju Raveendran's or Divya Gokulnath's, but rather that of a Dubai car and license plate dealer.  *Id.* at ¶ 7(c);

---

[18]    Exhibit 22, Exhibit 23.

Raveendran Decl. ¶ 19; Golkunath Decl. ¶ 15.  For each of these reasons, Plaintiff's service

attempts did not comply with applicable UAE law.  2d Al Muhtaseb Decl. at 8.

In short, Plaintiffs' service attempts were neither in accordance with the law for service of

the UAE "in an action in its courts of general jurisdiction", nor were they "reasonably calculated

to give notice" to Byju Raveendran or Divya Golkunath.  Fed. R. Civ. P. 4(f) (1), (2) and 4(f) (1),

(2).

## II.      Dismissal is Proper Under Federal Rule of Civil Procedure 12(b)(2) For Lack of Personal Jurisdiction

Federal Rule of Civil Procedure 12(b)(2) provides that a defendant may move to dismiss

an action for lack of personal jurisdiction. Fed. R. Civ. Proc. 12.  The Plaintiffs' claims against

Byju Raveendran and Divya Gokulkath should be dismissed under Civil Rule 12(b)(2) because it

has failed to adequately allege a basis for personal jurisdiction over Byju Raveendran and Divya

Gokulkath in this Court.

Plaintiffs "bears the burden of alleging facts sufficient to make a *prima facie* showing of

personal jurisdiction over the movant." *ICT Pharms., Inc. v. Boehringer Ingelheim Pharms.,

Inc.*, 147 F. Supp. 2d 268, 270-71 (D. Del. 2001).  "The overwhelming authority in the Third

Circuit establishes that the Plaintiff has a burden of proving, by concrete evidence and not

merely the allegations in its complaint, that the **…** Defendants have the minimum contacts

necessary to establish personal jurisdiction." *Astropower Liquidating Tr. v. Xantrex Tech., Inc.

(In re Astropower Liquidating Tr.)*, Nos. 04-10322 (MFW), 05-50867, 2006 Bankr. LEXIS 2443,

at *5 (Bankr. D. Del. Oct. 2, 2006).

In considering a Rule 12(b)(2) motion, the Court is not limited to the pleadings, but may

consider affidavits submitted by the defendant.  *Id.; see also Carteret Sav. Bank, FA v. Shushan*,

954 F.2d 141, 142 fn. 1 (3d Cir. 1992); *Capmark Fin. Grp. Inc. v. Lin (In re Capmark Fin. Grp.*

*Inc.)*, 479 B.R. 330, 338 (Bankr. D. Del. 2012). "Once a defendant challenges personal

jurisdiction under Rule 12(b)(2), the plaintiff bears the burden of establishing personal

jurisdiction by a preponderance of the evidence." *Id.*

Under Bankruptcy Rule 7004, a court has personal jurisdiction over a defendant if three

requirements are met:

> (1) service of process has been made in accordance with Bankruptcy
> Rule 7004; (2) the court has subject matter jurisdiction under section
> 1334 of the [Judicial] Code [28 U.S.C. § 1334]; and (3) exercise of
> jurisdiction is consistent with the Constitution and the laws of the
> United States.

*Tribune Media Servs. v. Beatty (In re Tribune Co.)*, 418 B.R. 116, 121 (Bankr. D. Del.

2009) (internal citations omitted).

### A.  Byju Raveendran and Divya Golkunath Have Insufficient Jurisdictional Contacts with Delaware or the United States to Subject Them to the Jurisdiction of this Court

"Federal courts ordinarily follow state law in determining the bounds of their jurisdiction

over persons." *Daimler AG v. Bauman*, 571 U.S. 117, 125 (2014).  Here, where a "suit "arises

out of or relates to the defendant's contacts with the forum," a U.S. court may only exercise

jurisdiction over the defendant if it meets the requirements of "specific jurisdiction."  Id. at 127.

"[A] State may authorize its courts to exercise personal jurisdiction over an out-of-state

defendant if the defendant has certain minimum contacts with the State such that the

maintenance of the suit does not offend traditional notions of fair play and substantial justice."

*Id. at* 126.

The Delaware Long Arm Statute provides six ways that a non-resident may be subject to

the jurisdiction of its courts, only one of which is applicable here:

> As to a cause of action brought by any person arising from any of
> the acts enumerated in this section, a court may exercise personal
> jurisdiction over any nonresident, or a personal representative, who
> in person or through an agent:

13

(1) Transacts any business or performs any character of work or service in the State;

(2) Contracts to supply services or things in this State;

(3) Causes tortious injury in the State by an act or omission in this State;

(4) Causes tortious injury in the State or outside of the State by an act or omission outside the State if the person regularly does or solicits business, engages in any other persistent course of conduct in the State or derives substantial revenue from services, or things used or consumed in the State;

(5) Has an interest in, uses or possesses real property in the State; or

(6) Contracts to insure or act as surety for, or on, any person, property, risk, contract, obligation or agreement located, executed or to be performed within the State at the time the contract is made, unless the parties otherwise provide in writing.

10 Del. C. §3104(c) (Personal Jurisdiction by Acts of Nonresidents).

The first three provisions require that the non-resident defendant perform an act _**in**_ Delaware.  Here, there is no allegation that Byju Raveendran or Divya Golkunath have ever stepped foot in Delaware or transacts or performs any business in Delaware as required by 10 Del. C. § 3104(c)(1).  Raveendran Decl. ¶¶ 3, 4, 6; Golkunath Decl. ¶¶ 3, 4. *Yu v. GSM Nation, LLC*, No. N17C-07-200 JRJ, 2018 Del. Super. LEXIS 382, at *15 (Super. Ct. Apr. 24, 2018) ("In order for this Court to exercise jurisdiction under 10 Del. C. § 3104(c)(1), some act must actually occur in Delaware").  Likewise, 10 Del. C. § 3104(c)(2) and (3) also require acts in Delaware.  None of have been alleged.  Byju Raveendran and Divya Golkunath also indisputably have no real property in Delaware (10 Del. C. § 3104(c)(5)), nor have they insured anyone in Delaware. 10 Del. C. § 3104(c)(6).  Raveendran Decl. ¶¶ 4, 6, 8; Golkunath Decl. ¶¶ 4, 5.

The only remaining provision of the statute is 10 Del. C. § 3104(c)(4), which requires a defendant to engage in a "persistent course of conduct in the State" or that he "derives substantial

revenue from services, or things used or consumed in the State." 10 Del. C. § 3104(c)(4).  Here, Plaintiffs have made no allegation that either Byju Raveendran or Divya Golkunath engaged in a "consistent course of conduct" in Delaware, that he has received any revenue from his alleged services or from things used or consumed in Delaware.  Indeed, both deny having ever done any business or engaged in any activities in Delaware.  Raveendran Decl. ¶¶ 4,6 and 8; Golkunath Decl. ¶¶ 4-5.  Based on the total absence of even allegations that would meet the requirements of the long arm statute, there is no basis for extending jurisdiction over Byju Raveendran under Delaware law.  *Yu*, 2018 Del. Super. LEXIS 382, at *16-17.  Providing evidence to a Federal court in Delaware does not constitute conduct that may be considered in this analysis.

### B.  Even if Delaware Law Were to Supply Jurisdiction Over Byju Raveendran and Divya Gokulnath, the U.S. Constitution Would Prohibit It

The exercise of personal jurisdiction over Byju Raveendran by the Court must also comport with the U.S. Constitution.  "The inquiry whether a forum State may assert specific jurisdiction over a nonresident defendant focuses on the relationship among the defendant, the forum, and the litigation.  For a State to exercise jurisdiction consistent with due process, the defendant's suit-related conduct must create a substantial connection with the forum State." *Walden v. Fiore*, 571 U.S. 277, 283-84 (2014).

As set forth in *Walden*, there are three factors that courts consider when determining if an exercise of jurisdiction pursuant to Delaware law is consistent with the U.S. Constitution:

   a) "First, the relationship must arise out of contacts that the "defendant *himself*" creates with the forum State. … We have consistently rejected attempts to satisfy the defendant-focused "minimum contacts" inquiry by demonstrating contacts between the plaintiff (or third parties) and forum State." Id. at 284 (emphasis in original).
   b) "Second, our 'minimum contacts' analysis looks to the defendant's contacts with the forum State itself, not the defendant's contacts with persons who reside there. … Accordingly, we have upheld the assertion of jurisdiction over defendants who have purposefully "reach[ed] out beyond" their State and into

15

another." Id. at 285.

**c)** Finally, "[t]he plaintiff cannot be the only link between the defendant and the forum. Rather, it is the defendant's conduct that must form the necessary connection with the forum State that is the basis for its jurisdiction over him. … Due process requires that a defendant be haled into court in a forum State based on his own affiliation with the State, not based on the "random, fortuitous, or attenuated" contacts he makes by interacting with other persons affiliated with the State." Id. at 285-86.

As explained above, Byju Raveendran has not been properly served pursuant to the laws of Delaware, and neither Byju Raveendran nor Divya Golkunath  have been properly served pursuant to the laws of the United Arab Emirates.  2d Al Muhtaseb Decl.[19]  Service of Byju Raveendran must have complied with UAE law to be effective pursuant to  Fed. R. Civ. P. 4(f). Since service was not effective under either Delaware law or UAE law, there was no service and the Court lacks jurisdiction over Byju Raveendran and Divya Golkunath.

There can be no serious suggestion by Plaintiffs that Divya Golkunath possesses an iota of the minimum contacts that would permit this Court to exercise personal jurisdiction over her under a *Walden* analysis: Ms. Golkunath has no relevant jurisdictional "contacts" with Delaware or the United States (*Walden* at 284); in particular, none with the State itself (*Id.* at 285); and Ms. Golkunath engaged in no conduct directed at the State (*Id*. at 285-86).  Plaintiffs gamely allege: "Specifically, Goklunath directed her tortious ***conduct*** towards the Debtor, a Delaware corporation, and Riju, in his capacity as a Delaware director, by aiding and abetting his breach [of] his fiduciary duties by transferring the Alpha Funds" to Delaware entities.  Compl. ¶ 17 (emphasis added).   But Plaintiffs never say what Ms. Gokulnath's "conduct" was.  Certainly they never allege that she had any communications or took any action in Delaware or directed at Delaware.  At most, Plaintiffs allege that she was a member of the Board of Directors of T&L.  This is woefully insufficient.  For

---

[19]    Exhibit 22.

her part, Ms. Golkunath states she had not involvement in any of the transactions cited in the Complaint.  Gokulnath Decl. ¶ 14.

Likewise, the U.S. Constitution does not permit the exercise of jurisdiction over Byju Raveendran because he lacks "a substantial connection with the forum State," or even the United States.  Walden, 571 U.S. at 283-84.  He was not CEO of Debtor, and has never had any role in any Delaware (or U.S.) company, has never had any assets in Delaware (or the U.S.), and has never stepped foot in Delaware.  Raveendran Decl. ¶¶ 2-6, 16.  The Indian company of which he was a director, Think & Learn Private Limited (India), operated subsidiaries in various jurisdictions outside of India.  But the actions of Think & Learn Private Limited (India) cannot be imputed to Byju Raveendran (or Divya Golkunath).  Nor can the actions of its subsidiaries. Plaintiffs do not allege any facts that would permit a piercing of the corporate veils of any of (1) Byju's Alpha Inc., (2) the shareholder of Byju's Alpha Inc., Byju's Pte Ltd (a Singaporean-entity), or (3) Byju's Pte Ltd's shareholder, Think & Learn Private Limited (India), to reach Byju Raveendran personally.

Think & Learn Private Limited (India) maintained a Board of Directors consisting of six (6) members at all relevant times.[20]  As such, a finding of jurisdiction based solely on the fact that  Byju Raveendran or Divya Golkunath served as one of six members of the Board of Directors of an Indian company directing a Singaporean-subsidiary to direct Byju's Alpha Inc., is not possible without a finding that multiple corporate veils may be pierced pursuant to Singaporean and Indian law, and that, as a matter of Indian law, directors of Indian companies may be held personally responsible for acts done within the scope of their authority.  Plaintiffs have not alleged anything of the sort, much less offered evidence that might permit a finder of fact to conclude that such veil piercing is justified.

---

[20]     Exhibit 18, Exhibit 19, and Exhibit 26.

While Plaintiffs' make conclusory allegations regarding Byju Raveendran's role in the transactions at issue here, Byju Raveendran was a not a director or employee of any of the Delaware entities identified in the Complaint, including Byju's Alpha Inc.  He had (and has) no role in the parent of Debtor, Byju's Pte. Ltd., a limited private company in Singapore ("Byju's Singapore").  Raveendran Decl. ¶ 14, 15.  His appearance as a witness in a separate proceeding is not even considered in an analysis as to whether he has a "substantial connection" with Delaware.

**III.     Alternatively, Dismissal is Proper Under Federal Rule of Civil Procedure 12(b)(6) Because Plaintiff's Complaint Does Not State a Claim Upon Which Relief Can be Granted**

To grant a motion to dismiss under Rule 12(b)(6), the movant must establish that no facts exist which would support a claim against it.  *See, e.g., Wisneiswki v. Johns-Manville Corp.*, 759 F.2d 271, 273 (3d Cir. 1985). The court is required to accept all factual assertions in the light most favorable to the non-moving party. *See, e.g., Rocks v. Philadelphia*, 868 F.2d 644, 645 (3d Cir. 1989). The court need not determine whether the plaintiff will prevail, but whether the plaintiff can prove any set of facts entitling him to the relief sought. *Hishon v. King & Spalding*, 467 U.S. 69, 73, 81 L. Ed. 2d 59, 104 S. Ct. 2229 (1984). *FSQ, Inc. v. Integrated Health Servs. (In re Integrated Health Servs.),* 303 B.R. 577, 584, 2003 Bankr. LEXIS 1758, *14, 42 Bankr. Ct. Dec. 94.

**A.  Count I – Alleged Aiding and Abetting Riju Ravindran's Breach of Fiduciary Duty**

"Under Delaware law, a valid claim for aiding and abetting a breach of fiduciary duty requires: (1) the existence of a fiduciary relationship; (2) proof that the fiduciary breached its duty; (3) proof that a defendant, who is not a fiduciary, knowingly participated in a breach; and

(4) a showing that damages to the plaintiff resulted from the concerted action of the fiduciary and the nonfiduciary." *Official Comm. of Unsecured Creditors of Fedders N. Am., Inc. v. Goldman Sachs Credit Partners L.P. (In re Fedders N. Am., Inc.)*, 405 B.R. 527, 543-44 (Bankr. D. Del. 2009).

Here, Plaintiffs vaguely allege that Byju Raveendran and Divya Golkunath, as directors of T&L, "knowingly participated in, and substantially assisted" Riju Ravindran in breaching his fiduciary duties to the Debtor. Complaint ¶¶ 98-100.

Plaintiffs fail to state a claim for aiding and abetting because Byju Raveendran and Ms. Gokulnath did not direct Debtor, or Riju Ravindran, as Alpha's sole director and officer, to do anything. Raveendran Decl. ¶¶ 16-18. They were not acting in their individual capacity when, as part of the T&L board, they authorized T&L to enter into the loan agreements. *Id.* ¶ 12, 13. Thus, any question as to whether those actions were properly depends upon Indian law, which Plaintiffs have not pled. Even if one could conflate the acts of two of the directors of T&L with the acts of T&L itself, there is no allegation in the Complaint that T&L's board directed Debtor (or its sole director, Riju Ravindran) to do anything. To the contrary, the only evidence points in the opposite direction. Raveendran Decl. ¶ 13 (T&L board "did not direct Debtor to take any actions"); Gokulnath Decl. ¶ 12.

Moreover, the T&L board did not even have authority to direct Alpha, an indirect subsidiary of T&L. Rather, T&L's board only had authority to direct Byju's Singapore, Debtor's parent. Byju's Singapore, Debtor's parent had itself multiple directors and their fiduciary duties under Singaporean law to direct Debtor's sole director. Regardless, T&L's board never did so, and Plaintiff's offer no particularized allegation that it did.

Finally, Byju Raveendran and Divya Gokulnath did not control the T&L board.  There were at least six members of the board, of which Byju Raveendran and Divya Gokulnath were only two.  Raveendran Decl. ¶ 10. [21] So even if the T&L board had directed Riju Ravindran to transfer the Alpha Funds (it did not), such an act cannot be ascribed to just Byju Raveendran and Divya Gokulnath.  It would require a majority of the board and the vote of at least one outside director.  *Id.*

The aiding and abetting claim should be dismissed.

## B.  Count II – Alleged Breach of Fiduciary Duty By Byju Raveendran

"A claim for breach of fiduciary duty requires proof of two elements: (1) that a fiduciary duty existed and (2) that the defendant breached that duty."  *Bond v. Rosen (In re NSC Wholesale Holdings LLC)*, 637 B.R. 71, 85 (Bankr. D. Del. 2022).  Here, no fiduciary duty existed.

The sole director and officer of Debtor was Riju Ravindran.[22]  Only Riju Ravindran, therefore, owed a fiduciary duty to Debtor.  Byju Raveendran was never an officer or employee of Debtor.  Raveendran Decl. ¶¶16-18.  Indeed,  even Plaintiffs only refer to Byju Raveendran as a "putative officer" and say that at most he held "himself out as the Debtor's CEO."  Complaint ¶¶ 107, 104.  These allegations are untrue.  But even if he did hold himself out as an officer, that is not enough for Byju Raveendran to create a fiduciary relationship with Debtor.  Byju Raveendran simply owed no fiduciary duty to Debtor, and therefore there can have been no breach of that duty.

Finally, the Credit Agreement provides for Permitted Intercompany Activities including any transfer "*among the Parent Guarantor, its Restricted Subsidiaries and any Unrestricted*

---

[21]     Exhibit 13, Exhibit 26.
[22]     Exhibits 14-17.

*Subsidiary, to the extent pursuant to such transactions, a member of the Group is the recipient of any transferred funds or other assets*". [23]  Thus, any transfer from a T&L subsidiary is permitted provided that a member of the T&L Group is the recipient of the funds or other assets.  In short, there can be no claim that Byju Raveendran aided Riju Ravindran in violating his fiduciary duty when the Credit Agreement provided not only discretion for the use of monies borrowed by the Debtor, but also discretion to transfer assets of Alpha to other members of the T&L Group.

### C.  Count IV – Accounting

Plaintiffs assert "The Debtor failed to maintain complete and accurate books and records of the Debtor's assets and liabilities. To the extent books and records were maintained, they were maintained by or in the custody of T&L." Complaint ¶118.

Delaware law requires that Delaware companies maintain their own books and records. See, e.g., DGCL §§ 219(a), 224.  To the extent Debtor did not maintain those records, the remedy is against the sole director and officer of Debtor, Riju Ravindran.

In any case, the books and records of Debtor appear to have been maintained by its parent, Byju's Singapore, which issued financial statements that consolidated Debtor' financials. *See*, *e.g.* Byju's Singapore 2021 Audited Financial Statements (Exhibit.10 and 12).  Plaintiff Intervenor GLAS already knows this because GLAS caused Byju's Singapore to go into receivership in Singapore, and GLAS appointed the receiver, which has taken control of the company.  Raveendran Decl. ¶ 15 [24]

It is notable that Plaintiffs' extended discussion in the Complaint of their attempts to learn financial information about Debtor involved inquiries everywhere but at Debtor's parent company – Byju's Singapore – which GLAS controls.

---

[23]    Exhibit 24.
[24]    Exhibit 34.

### D. Count V – Alleged Conversion

Plaintiffs fail to state claim for conversion for two independent reasons.  First, Plaintiff's claims are based on contractual rights, so they are limited to bringing contractual claims – not a tort claim like conversion:

> A claim for conversion is a tort claim. "[I]n order to assert a tort claim along with a contract claim, the plaintiff must generally allege that the defendant violated an independent legal duty, apart from the duty imposed by contract." *Kuroda v. SPJS Hldgs., L.L.C.*, 971 A.2d 872, 889 (Del. Ch. 2009). That is [*40] because "[w]here . . . the plaintiff's claim arises solely from a breach of contract, the plaintiff generally must sue in contract, and not in tort." *Id.* (cleaned up).

*W.D.C. Holdings, LLC v. IPI Partners, LLC*, No. 2020-1026-JTL, 2022 Del. Ch. LEXIS 145, at *39-40 (Del. Ch. June 22, 2022).

Here, Debtor has no independent basis for its conversion claim.  It's alleged "right" derives entirely from the Credit Agreement.[25]

Second, and equally devastating to Count V, Debtor must show that it has a property interest in the Camshaft LP Interest before it can make a claim for conversion.

> "Conversion is an act of dominion wrongfully exerted over the property of another, in denial of his right, or inconsistent with it." *Arnold v. Soc'y for Sav. Bancorp, Inc.*, 678 A.2d 533, 536 (Del. 1996) (cleaned up). "Generally, the necessary elements for a **conversion** under Delaware law are that a plaintiff had a property interest in the converted goods; that the plaintiff had a right to possession of the goods; and that the plaintiff sustained

---

[25]    Exhibits 24-33, 35-42.

damages." *Goodrich v. E.F. Hutton Gp., Inc.*, 542 A.2d 1200, 1203
(Del. Ch. 1988).

*W.D.C. Holdings, LLC v. IPI Partners, LLC*, No. 2020-1026-JTL, 2022 Del. Ch. LEXIS 145, at

*39-40 (Del. Ch. June 22, 2022).

The Borrower (Debtor) of the monies lent pursuant to the Credit Agreement obtains title

to the borrowed funds upon receipt and the Lenders relinquish their title to those monies when

transferring those funds to the Borrower as with any loan.  The provisions of the Credit

Agreement do not provide for the Lenders to retain any property interest over the monies by the

Borrower until the Borrower uses those borrowed funds.  The Credit Agreement does not provide

for borrowed funds not yet utilized for investments or otherwise held by the Borrower to be

considered collateral for the loan.[26]  Consequently, the Lenders have no property interest in the

monies lent to Debtor after those funds are provided to the Debtor.  In addition, as the Credit

Agreement provides for the Debtor to have discretion to use those borrowed monies at its sole

discretion and without further permission, notification or consent from the Lenders to do so,[27] the

Lenders have no property interest in the investments made by the Debtor.

In the instant case, the Lenders have presented no legal or fact basis to claim that they

have a property interest in the monies of the Debtor from the date the Lender provided monies

pursuant to the Credit Agreement (or from the date that a purchaser acquired in the secondary

market a Lender's interest in the Credit Agreement) until the date of the commencement of the

voluntary bankruptcy procedure initiated by the sole director of the Debtor appointed by the

Agent purporting to represent the Lenders (the Intervening party in these proceedings which is

contested).

---

[26]    Exhibit 24.
[27]    *Id*.

The Lenders also have provided no legal or fact basis to claim that the Lenders have a property interest in the LP Interests acquired in the Camshaft Fund.  Consequently, the transfer of that LP Interest from the Debtor to another Affiliate of T&L, a Guarantor of the Credit Agreement, did not transfer a property interest.

The Plaintiff also has failed to present any basis to claim that Plaintiff (the Borrower) has been damaged by the decision of the Sole Director to execute the Subscription Agreements for the investment in the Camshaft Fund (and related Side letters). The investments made by the Debtor in the Camshaft Fund by execution of the Subscription Agreements on 28 April 2022 and 12 July 2022 preceded the First Amendment to the Credit Agreement dated 4 October 2022 and any alleged breach of the Credit Agreement.[28]

The Debtor had a property interest in the borrowed funds from the Lenders and the Lender had a property interest in the LP Interest in the Camshaft Fund.  The Debtor also executed the Credit Agreement based upon the terms of that contract which included the T&L guarantee (and other guarantees) effectively resulting in the Debtor borrowing the funds with the expectation that it would use those borrowed funds for investments and the repayment of those funds was to occur with the proceeds from the sale of shares in a public offering by T&L expressly referenced in the Credit Agreement, by T&L or some other guarantor or otherwise.[29] The Debtor cannot claim damage for its own decision to enter into the Subscription Agreements and fulfill its obligation to pay for those LP Interests in the Camshaft Fund.

The Debtor also can claim no damage the transfer of the LP Interest from Debtor to another Affiliate of T&L as the Debtor consideration for that transfer is by virtue of the

---

[28]    Exhibits 43, 44.
[29]    Exhibit 24.

guarantees being provided to the Debtor as an Affiliate of T&L and pursuant to the payment terms of the Credit Agreement and the related Onshore Guarantee and Security Agreement.

Finally, the Credit Agreement itself provided for Permitted Intercompany Activities including any transfer "*among the Parent Guarantor, its Restricted Subsidiaries and any Unrestricted Subsidiary, to the extent pursuant to such transactions, a member of the Group is the recipient of any transferred funds or other assets*". [30]

Consequently, any transfer from a T&L subsidiary (Restricted or Unrestricted) is permitted provided that a member of the T&L Group is the recipient of the funds.  That is expressly permitted in the Credit Agreement, and therefore cannot constituted breach or an award of damages.  The transfer from the Debtor to another member of the T&L Group, Inspilearn, as an intercompany transfer and for the asset to have remained in the T&L Group is not disputed by Plaintiff.

Here, Debtor has no property interest in the Camshaft LP Interest.  Rather, Debtor is entitled only to demand the repayment of the loan to the Lenders pursuant to the Credit Agreement to be made by the Guarantors and in particular by T&L, the Parent Guarantor, pursuant to the Credit Agreement and is effectively indemnified by its shareholder, Byju's Singapore and its owner, T&L, the Parent Guarantor. [31]  For this reason alone, this count should be dismissed as to all Defendants.

Separately, even if Plaintiffs could overcome the two hurdles above – they cannot -- Plaintiffs do not even allege that Divya Golkunath exercised any control over the Camshaft LP Interest.

---

[30]     *Id*.
[31]     Exhibits 24-33, 35-42.

For all of these reasons, Count V must be dismissed.

### E. Count Six – Alleged Conspiracy

Plaintiff's conspiracy claim is derivative of the other claims in the Complaint. Because those other claims fail, so does the conspiracy claim. Further, Plaintiffs must establish "'knowing participation' among the conspiring partners, which can be accomplished by showing a meeting of the minds on the object or course of action." *In re SwervePay Acquisition, LLC*, 2022 Del. Ch. LEXIS 208, at *31 (Ch. Aug. 26, 2022). Here, Plaintiffs do not even allege "knowing participation". To the contrary, Plaintiffs do not offer a single allegation of any specific act by Divya Gokulnath in furtherance of the supposed conspiracy. As for Byju Raveendran, he is accused of only a single act (signing a document), but there are no communications or meetings or any other indication that there is a meeting of any minds. Plaintiffs' vague and conclusory allegations of conspiracy fail to provide any pleading notice as to what acts constitute the conspiracy, and the claim fails to establish a meeting of the minds. Count Six should be dismissed with prejudice.

<u>**CONCLUSION**</u>

For the foregoing reasons, Defendants Byju Raveendran and Divya Golkunath respectfully request that the Court dismiss the Complaint as against them for lack of personal jurisdiction, and dismiss Counts One, Two, Four, Five and Six as against them with prejudice.

Dated: July 25, 2025

**O'KELLY & O'ROURKE, LLC**

*/s/ Daniel P. Hagelberg*
Daniel P. Hagelberg, Esq. (No. 6813)
824 N. Market Street, Suite 1001A
Wilmington, DE 19801
(302) 778-4000
dhagelberg@okorlaw.com

**DRAPER & DRAPER LLC**

26

*/s/ Matthew E. Draper*
Matthew E. Draper (*pro hac vice*)
100 Park Avenue, Suite 1600
New York, New York 10017
(347) 442-7788
matthew.draper@draperllc.com

*Counsel for Defendants*
*Byju Raveendran & Divya Gokulnath*