# Subscription Agreement

*for*

# Camshaft Capital Fund, LP
## A Delaware Limited Partnership

**Camshaft Capital Fund, LP**
175 SW 7th Street
Miami, FL 33130

Ladies and Gentlemen:

The undersigned (the "**Purchaser**" or the "**Subscriber**" as the context requires) understands that Camshaft Capital Fund, LP, a limited partnership organized under the laws of the state of Delaware Fund Administrated by Apex Fund Services (Canada) Ltd, (the "Partnership"), is offering for purchase to the undersigned certain Limited Partnership Interests of the Partnership (the "**Securities**") in this private placement offering with a minimum amount of $500,000.00 (the "**Offering**"). ***The Partnership reserves the right to increase or decrease the total amount sought under this offering or to terminate this Offering at any time and without notice.*** The undersigned further understands that this offering is being made without registration of the Securities under the Securities Act of 1933, as amended (the "**Securities Act**"), or any securities law of any state of the United States or of any other jurisdiction and is being offered pursuant to an exemption thereof. The Partnership also reserves the right to hold one or more subsequent offerings following this Offering.

1. <u>Subscription; Investor Suitability Questionnaire</u>. Subject to the terms and conditions hereof and under this Offering the undersigned hereby irrevocably subscribes to and for the specific Securities set forth on the Signature Page hereto for the aggregate purchase price set forth on the Signature Page hereto, which is payable as described in **Section** 4 hereof (the "**Subscription**"). The undersigned acknowledges that the Securities will be subject to restrictions on transfer as set forth in this subscription agreement (the "**Subscription Agreement**"), the Partnership's Limited Partnership Agreement, as the same may be amended from time to time (the "**Partnership Agreement**") , and under applicable law. Further, the undersigned hereby agrees and acknowledges that it must complete the attached "**Investor Suitability Questionnaire**" in order for Partnership to accept the subscription hereunder.

2. <u>Acceptance of Subscription and Issuance of Securities</u>. It is understood and agreed that the Partnership shall have the sole right, at its complete discretion, to accept or reject this subscription, in whole or in part, for any reason and that the same shall be deemed to be acceptable by the Partnership *only if*: 1) it is signed by the undersigned (or a duly authorized representative of the undersigned) and delivered to the Partnership at or before the Closing (defined below); 2) the same is counter-signatured by the General Partner; and 3) the undersigned pays the subscription price

indicated. Upon satisfaction of the foregoing conditions, the undersigned shall become a Limited Partner of the Partnership and agrees to be bound by all of the terms and conditions of the Partnership Agreement.

3.  <u>The Closing</u>. Beginning as of the Effective Date herein and continuing perpetually, the Partnership may accept subscriptions hereunder. The closing of the purchase and sale of the Securities (each a "**Closing**") under this Offering shall take place remotely, coordinated by the General Partner on the date upon which a Subscription is accepted by Partnership (the "**Closing Date**") pursuant to the terms of Section 2 above, or at such other time and place as the Partnership may designate by notice to the undersigned. Subsequent Closings shall continue to occur throughout the life of the Partnership. In accordance with Section 4 below, on or before the Closing the undersigned shall deliver its requisite subscriber funds to the Partnership to be held in an account controlled by the Partnership and the General Partner.

4.  <u>Payment for Securities</u>. Payment for the Securities shall be received by the Partnership from the undersigned by wire transfer of immediately available funds or other means approved by the Partnership in the amount as set forth on the Signature Page hereto simultaneously with the delivery of this Agreement to the Partnership by the Subscriber. The Partnership may, but is not obligated to, deliver certificates representing the Securities to the undersigned at the Closing bearing an appropriate legend referring to the fact that the Securities were sold in reliance upon an exemption from registration under the Securities Act. In lieu of certificates, this completed Subscription Agreement shall be sufficient evidence of the undersigned's admission to the Partnership. Receipt of the payment for the Securities must be received by the Partnership on or before the Closing.

5.  <u>Representations and Warranties of the Partnership</u>. As of each Closing Date hereunder, the Partnership represents and warrants that:

    (a)     The Partnership is duly formed and validly existing under the laws of Delaware, with full power and authority to conduct its business as it is currently being conducted and to own its assets.

    (b)     The Securities have been duly authorized and, when issued, delivered, and paid for in the manner set forth in this Subscription Agreement, will be validly issued, fully paid, and nonassessable.

6.  <u>Representations and Warranties of the Undersigned</u>. The undersigned hereby represents and warrants to and covenants with the Partnership that:

    (a)     **General**.

        (i)     The undersigned has all requisite authority (and in the case of an individual, the capacity) to purchase the Securities, enter into this Subscription Agreement, and to perform all the obligations required to be performed by the undersigned hereunder, and such

purchase will not contravene any law, rule, or regulation binding on the undersigned or any investment guideline or restriction applicable to the undersigned.

(ii) The undersigned is not acquiring the Securities as a nominee or agent or otherwise for any other person.

(iii) The undersigned will comply with all applicable laws and regulations in effect in any jurisdiction in which the undersigned purchases or sells Securities and obtain any consent, approval or permission required for such purchases or sales under the laws and regulations of any jurisdiction to which the undersigned is subject or in which the undersigned makes such purchases or sales, and the Partnership shall have no responsibility therefor.

(b) **Information Concerning the Partnership**.

(i) The undersigned acknowledges and verifies that it has received an Offering Memorandum in connection with these securities and that it understands the disclosures contained therein, that it has had full opportunity to request any additional information regarding the Partnership, its business, and its projected plans that it so reasonably requests, that the undersigned is familiar with the principals of the issuer, and acknowledges that it has consulted with his or her own advisors and consultants prior to entering into this Subscription Agreement. The Offering Memorandum, together with this Agreement, constitute the "**Offering Documents**". THE UNDERSIGNED REPRESENTS THAT IT HAS SOUGHT THE ADVICE OF ITS OWN INDEPENDENT LEGAL COUNSEL IN CONNECTION WITH THIS AGREEMENT AND THE SECURITIES HEREUNDER.

(ii) The undersigned understands that the Partnership is not currently required to register and will not register as an Investment Partnership under the Investment Partnership Act of 1940 by way of exemption from definition provided under Section 3(c)1 and/or 3(c)5 of the Investment Partnership Act.

(iii) The undersigned understands and accepts that the purchase of the Securities involves various risks, including the risks that there may be no open market for the Securities, or that Subscribers entire investment may be lost. The undersigned represents that it is able to bear any loss associated with an investment in the Securities.

(iv) The undersigned confirms that it is not relying on any communication (written or oral) of the Partnership or any of its affiliates, as investment advice or as a recommendation to purchase the Securities. It is understood that information and explanations related to the terms and conditions of the Securities provided in the Offering Documents or otherwise by the Partnership or any of its affiliates shall not be considered investment advice or a recommendation to purchase the Securities, and that neither the Partnership nor any of its affiliates is acting or has acted as an advisor to the undersigned in deciding to invest in the Securities. The undersigned acknowledges that neither the Partnership nor any of its affiliates has made any representation regarding the proper characterization of the Securities for purposes of determining

the undersigned's authority to invest in the Securities. The undersigned is entering into this Agreement of its own volition, and after its own proper due diligence.

(v) The undersigned is familiar with the business and financial conditions, projections, and operations of the Partnership. The undersigned has had access to such information concerning the Partnership and the Securities as it deems necessary to enable it to make an informed investment decision concerning the purchase of the Securities.

(vi) The undersigned understands that, unless the undersigned notifies the Partnership in writing to the contrary at or before the Closing, each of the undersigned's representations and warranties contained in this Subscription Agreement will be deemed to have been reaffirmed and confirmed as of the Closing, taking into account all information received by the undersigned.

(vii) The undersigned acknowledges that the Partnership has the right in its sole and absolute discretion to abandon this private placement or to alter the terms of offering at any time prior to the completion of the offering. If the Partnership should abandon this private placement, this Subscription Agreement shall thereafter have no force or effect and the Partnership shall return the previously paid subscription price of the Securities, without interest thereon, to the undersigned.

(viii) The undersigned understands that no federal or state agency has passed upon the merits or risks of an investment in the Securities or made any finding or determination concerning the fairness or advisability of this investment.

(c) **Non-reliance**.

(i) The undersigned represents that it is **not** relying on (and will not at any time rely on) any communication (written or oral) of the Partnership, as investment advice or as a recommendation to purchase the Securities, it being understood that information and explanations related to the terms and conditions of the Securities, the Offering Documents, and the other transaction documents that may have been provided to the undersigned shall **not** be considered investment advice or a recommendation to purchase the Securities and is provided "as is" without any warranties. The undersigned is providing this investment after conducting its own due diligence.

(ii) The undersigned confirms that the Partnership has **not** (A) given any guarantee or representation as to the potential success, return, effect or benefit (either legal, regulatory, tax, financial, accounting or otherwise) of an investment in the Securities or (B) made any representation to the undersigned regarding the legality of an investment in the Securities under applicable legal investment or similar laws or regulations. In deciding to purchase the Securities, the undersigned is not relying on the advice or recommendations of the Partnership and the undersigned has made its own independent decision that the investment in the Securities is suitable and appropriate for the undersigned.

(d) **Status of Undersigned**.

(i) The undersigned has such knowledge, skill and experience in business, financial and investment matters that the undersigned is capable of evaluating the merits and risks of an investment in the Securities. With the assistance of the undersigned's own professional advisors, to the extent that the undersigned has deemed appropriate, the undersigned has made its own legal, tax, accounting, and financial evaluation of the merits and risks of an investment in the Securities and the consequences of this Subscription Agreement. The undersigned has considered the suitability of the Securities as an investment in light of its own circumstances and financial condition and the undersigned is able to bear the risks associated with an investment in the Securities and its authority to invest in the Securities.

(ii) The undersigned is an "**accredited investor**" as that term is defined under the Securities Act. The undersigned agrees to furnish any additional information requested by the Partnership or any of its affiliates to assure compliance with applicable U.S. federal and state securities laws in connection with the purchase and sale of the Securities. Any information that has been furnished or that will be furnished by the undersigned to evidence its status as an accredited investor is accurate and complete, and does not contain any misrepresentation or material omission.

(e) **Restrictions on Transfer or Sale of Securities**. As applies to the undersigned Subscriber:

(i) The undersigned is acquiring the Securities solely for the undersigned's own beneficial account, for investment purposes, and not with a view to, or for resale in connection with, any distribution of the Securities. The undersigned understands that the Securities have not been registered under the Securities Act or any State Securities Laws by reason of specific exemptions under the provisions thereof which depend in part upon the investment intent of the undersigned and of the other representations made by the undersigned in this Subscription Agreement. The undersigned understands that the Partnership is relying upon the representations and agreements contained in this Subscription Agreement (and any supplemental information) for the purpose of determining whether this transaction meets the requirements for such exemptions.

(ii) The undersigned understands that the Securities are "restricted securities" under applicable federal securities laws and that the Securities Act and the rules of the U.S. Securities and Exchange Commission (the "**Commission**") provide in substance that the undersigned may dispose of the Securities *only* pursuant to an effective registration statement under the Securities Act or an exemption therefrom (and in any case not before one (1) year from the date of subscription hereof), and the undersigned understands that the Partnership, at this time, has no obligation or intention to register any of the Securities, or to take action so as to permit sales pursuant to the Securities Act (including Rule 144 thereunder). Accordingly, the undersigned understands that under the Commission's rules, the undersigned may dispose of the Securities principally only in "private placements" which are exempt from registration under the Securities Act, in which event the transferee will acquire "restricted securities" subject to the same limitations

as in the hands of the undersigned. Consequently, the undersigned understands that the undersigned must bear the economic risks of the investment in the Securities for an indefinite period of time.

        (iii)    The undersigned agrees: (A) that the undersigned will not sell, assign, pledge, give, transfer, or otherwise dispose of the Securities or any interest therein, or make any offer or attempt to do any of the foregoing, except pursuant to a registration of the Securities under the Securities Act and all applicable State Securities Laws, or in a transaction which is exempt from the registration provisions of the Securities Act and all applicable State Securities Laws; (B) that the certificates representing the Securities will bear a legend making reference to the foregoing restrictions; and (C) that the Partnership and its affiliates shall not be required to give effect to any purported transfer of such Securities except upon compliance with the foregoing restrictions.

        (f)    **Further Rights of Redemption and Repurchase of Securities.** The undersigned understands and agrees that the Securities sold hereunder may also be subject to certain rights or redemption or repurchase as maybe provided for in the Partnership Agreement of the Partnership, and the undersigned understands that it must agree to such terms in subscribing to the Partnership hereunder.

7.    <u>Conditions to Obligations of the Undersigned and the Partnership</u>. The obligations of the undersigned to purchase and pay for the Securities as specified on the Signature Page hereto and of the Partnership to sell the Securities are subject to the satisfaction at or prior to the Closing of the following conditions precedent: the representations and warranties of the Partnership contained in **Section** 5 hereof and of the undersigned contained in **Section** 6 hereof shall be true and correct as of the Closing in all respects with the same effect as though such representations and warranties had been made as of the Closing.

8.    <u>Electronic Delivery of Disclosures and Schedule K-1</u>.

        (a)    The undersigned understands that the Fund and the General Partner expect to deliver tax return information, including Schedule K-1s (each, a "**K-1**") to the undersigned by either electronic mail, or some other form of electronic delivery. Pursuant to IRS Rev. Proc. 2012-17 (Feb. 13, 2012), the Undersigned hereby expressly understands, consents to, and acknowledges such electronic delivery of tax returns and related information. Federal law prohibits the Fund, the General Partner, or their affiliates and designees from disclosing, without consent, undersigned's tax return information to third parties or use of that information for purposes other than the preparation of the Subscriber's tax return. As part of subscription to this offering, the Fund, the General Partner, or their designees may disclose undersigned's income tax return information to certain other affiliated entities or third-party service providers including, but not limited to the Accountant for tax return preparation and data aggregation purposes. The Fund, the General Partner, and their designees covenant they will keep and maintain undersigned's information in strict confidence, using such degree of care as is appropriate to avoid unauthorized access, use or disclosure, and will not use such information in violation of law. In executing this Agreement, the undersigned authorizes the Fund, the General Partner, and/or the Accountant to disclose tax return information to certain Accountant entities, their respective successors, affiliates and, or such other

third-party service providers as the undersigned may request or as may be required by the Fund or the General Partner for purposes of completing tax return preparation and K-1 delivery pursuant to this agreement.

(b) The Subscriber's consent to electronic delivery will apply to all future K–1s unless such consent is withdrawn by the Subscriber.

**(c)** If for any reason the Subscriber would like a paper copy of the K-1 after the Subscriber has consented to electronic delivery, the Subscriber may submit a request via email to the Accountant and the General Partner or send a written request to the same.  Requesting a paper copy of the Subscriber's K-1 will not be treated as a withdrawal of consent

(d) If the Subscriber in the future determines that it no longer consents to electronic delivery, the Subscriber will need to notify the Fund and the Accountant so that it can arrange for a paper K-1 to be delivered to the address that the Fund then currently has on file. The Subscriber may submit notice via email to the Accountant or send a written request to the same. The Subscriber's consent is considered withdrawn on the date the Fund receives the written request to withdraw consent. The Fund will confirm the withdrawal and its effective date in writing. A withdrawal of consent does not apply to a K-1 that was emailed to the Subscriber before the effective date of the withdrawal of consent.

(e) The Fund (or the General Partner) will cease providing statements to the Subscriber electronically if the Subscriber provides notice to withdraw consent, if the Subscriber ceases to be a Member of the Fund, or if regulations change to prohibit the form of delivery.

(f) If the Subscriber needs to update the Subscriber's contact information that is on file, please email the update to the General Partner. The Subscriber will be notified if there are any changes to the contact information of the Fund.

(g) The Subscriber's K-1 may be required to be printed and attached to a federal, state, or local income tax return.

9. <u>Obligations Irrevocable</u>. The obligations of the undersigned shall be irrevocable.

10. <u>Legend</u>. The certificates representing the Securities sold pursuant to this Subscription Agreement will be imprinted with a legend in substantially the following form:

"THE SECURITIES EVIDENCED BY THIS CERTIFICATE HAVE NOT BEEN REGISTERED UNDER THE SECURITIES ACT OF 1933, AS AMENDED (THE "SECURITIES ACT"), OR THE SECURITIES LAWS OF ANY STATE OR OTHER JURISDICTION. THE SECURITIES MAY NOT BE OFFERED, SOLD, PLEDGED OR OTHERWISE TRANSFERRED EXCEPT (1) PURSUANT TO AN EXEMPTION FROM REGISTRATION UNDER THE SECURITIES ACT OR (2) PURSUANT TO AN EFFECTIVE REGISTRATION STATEMENT UNDER THE SECURITIES ACT, IN EACH CASE IN ACCORDANCE WITH ALL APPLICABLE STATE SECURITIES LAWS AND THE SECURITIES LAWS OF OTHER

JURISDICTIONS, AND IN THE CASE OF A TRANSACTION EXEMPT FROM REGISTRATION, UNLESS THE COMPANY HAS RECEIVED AN OPINION OF COUNSEL REASONABLY SATISFACTORY TO IT THAT SUCH TRANSACTION DOES NOT REQUIRE REGISTRATION UNDER THE SECURITIES ACT AND SUCH OTHER APPLICABLE LAWS."

11.	Waiver, Amendment. Neither this Subscription Agreement nor any provisions hereof shall be modified, changed, discharged or terminated except by an instrument in writing, signed by the party against whom any waiver, change, discharge or termination is sought.

12.	Assignability. Neither this Subscription Agreement nor any right, remedy, obligation or liability arising hereunder or by reason hereof shall be assignable by either the Partnership or the undersigned without the prior written consent of the other party.

13.	Waiver of Jury Trial; Dispute Resolution.

(a)	THE UNDERSIGNED IRREVOCABLY WAIVES ANY AND ALL RIGHT TO TRIAL BY JURY WITH RESPECT TO ANY LEGAL PROCEEDING ARISING OUT OF THE TRANSACTIONS CONTEMPLATED BY THIS SUBSCRIPTION AGREEMENT.

(b)	Any dispute, claim, or controversy arising out of or relating to this Agreement, including the negotiation, breach, validity or performance of the Agreement, the rights and obligations contemplated by the Agreement, any claims of fraud or fraud in the inducement, and any claims related to the scope or applicability of this agreement to arbitrate, shall be resolved at the request of any party to this Agreement through a two-step dispute resolution process administered by JAMS, first as mediation, then followed if necessary, by final and binding arbitration administered by a single arbitrator (the "**Arbitrator**")

14.	Submission to Jurisdiction. With respect to any suit, action or proceeding relating to any offers, purchases or sales of the Securities by the undersigned ("**Proceedings**"), the undersigned irrevocably submits to the jurisdiction of the federal or state courts located in Miami County, Florida, which submission shall be exclusive unless none of such courts has lawful jurisdiction over such Proceedings.

15.	Governing Law. This Subscription Agreement shall be governed by and construed in accordance with the laws of the State of Delaware.

16.	Section and Other Headings. The section and other headings contained in this Subscription Agreement are for reference purposes only and shall not affect the meaning or interpretation of this Subscription Agreement.

17.	Counterparts; Electronic Signature. This Subscription Agreement may be executed in any number of counterparts, each of which when so executed and delivered shall be deemed to be an original and all of which together shall be deemed to be one and the same agreement. A signed copy of this Agreement delivered by facsimile, email, or other means of Electronic Transmission

shall be deemed to have the same legal effect as delivery of an original signed copy of this Agreement. This Agreement, and all other matters before the Limited Partners, the General Partner, or the Partnership, may be executed by electronic signature methods, including DocuSign and related methods and each Limited Partner hereby accepts such method of execution as legally binding.

18. <u>Notices</u>. All notices and other communications provided for herein shall be in writing and shall be deemed to have been duly given if delivered personally or sent by registered or certified mail, return receipt requested, postage prepaid to the following addresses (or such other address as either party shall have specified by notice in writing to the other):

| | |
|---|---|
| **If to the Partnership:** | **Camshaft Capital Fund, LP**<br>175 SW 7th St.<br>Miami, FL 33130<br>Attention: Camshaft Capital |
| **With a copy to:** | **Apex Fund Services**<br>535 Anton Blvd. Suite 830<br>Costa Mesa, CA 92626<br>Attention: Gregory Bartz |
| **If to the Purchaser:** | **Subscriber's Address set forth on Signature Page hereto** |

19. <u>Binding Effect</u>. The provisions of this Subscription Agreement shall be binding upon and accrue to the benefit of the parties hereto and their respective heirs, legal representatives, successors and assigns.

20. <u>Survival</u>. All representations, warranties and covenants contained in this Subscription Agreement shall survive (i) the acceptance of the subscription by the Partnership and the Closing, (ii) changes in the transactions, documents and instruments described in the Offering Documents which are not material or which are to the benefit of the undersigned and (iii) the death or disability of the undersigned.

21. <u>Notification of Changes</u>. The undersigned hereby covenants and agrees to notify the Partnership upon the occurrence of any event prior to the closing of the purchase of the Securities pursuant to this Subscription Agreement which would cause any representation, warranty, or covenant of the undersigned contained in this Subscription Agreement to be false or incorrect.

22. <u>Severability</u>. If any term or provision of this Agreement is invalid, illegal or unenforceable in any jurisdiction, such invalidity, illegality or unenforceability shall not affect any other term or provision of this Agreement or invalidate or render unenforceable such term or provision in any other jurisdiction.

*This space intentionally left blank. Signature page and ISQ follow.*

**IN WITNESS WHEREOF**, the undersigned has executed this Subscription Agreement as of the Date written below:

  Byjus Alpha, Inc.　　　　　　　　　　　　　**Type of Investor:** __Individual  __IRA
**(Legal Name of Limited Partner)**　　　　　　　　　　__Trust  X Entity  __ Other

By: _[DocuSigned signature: C54896B5666C4E2...]_　　　　**Total Capital Contribution:** 318,000,000


  Riju Ravindran　　　Director
_____
**Printed Name and Authority (if entity)
of Signatory**

4/28/2022
_____
**Date Signed**

**Spousal Signature (*if required*)**


**By**: _____


_____
**Printed Name of Spouse**


_____
**Date Signed**


The offer to purchase Securities as set forth above is **confirmed and accepted by the Partnership:**

**By: Camshaft Capital Management, LLC,**
　　General Partner of Camshaft Capital Fund, LP

**By**: _[DocuSigned signature: William Morton, 100E0A38ED8D4CB...]_
　　William Morton
　　_____, its Authorized Representative


　　　　　　　　　　　　　　4/28/2022
**DATE ACCEPTED:** _____

---

**Subscription Agreement; Camshaft Capital Fund, LP**　　　　　　　　　　Pg. 11 of 9

# INVESTOR SUITABILITY QUESTIONNAIRE
## IN CONNECTION WITH THE
## SUBSCRIPTION AGREEMENT OF
## CAMSHAFT CAPITAL FUND, LP

This Questionnaire is being distributed to certain individuals and entities, by way of direct distribution, which may be offered the opportunity to subscribe to Limited Partnership Interests or the equivalent thereof (the "*Securities*") of **CAMSHAFT CAPITAL FUND, LP.**, a Delaware limited partnership (the "*Partnership*"). The purpose of this Questionnaire is to assure the Partnership that all such individuals and entities being offered the Securities will meet the standards required by the Securities Act of 1933, as amended (the *"Act"*), and applicable U.S. state securities laws.

All answers will be kept confidential. However, by signing this Questionnaire, the undersigned agrees that this information may be provided by the Partnership to its legal and financial advisors, and the Partnership and such advisors may rely on the information set forth in this Questionnaire for purposes of complying with all applicable securities laws and may present this Questionnaire to such parties as it reasonably deems appropriate if called upon to establish its compliance with such securities laws. **The undersigned represents that the information contained herein is complete and accurate to the best knowledge of the undersigned and will notify the Partnership of any material change in any of such information prior to the undersigned's investment in the Partnership. VERIFICATION DOCUMENTATION MUST BE SUBMITTED SIMULTANEOUSLY WITH THIS DOCUMENT.**

**Instructions:** Please complete this questionnaire as thoroughly as possible. **All questions must be answered.**

- If the appropriate answer is "none" or "not applicable," so state.
- If you have any questions, please contact the Administrator (Apex) of the Fund directly.
- ALL SUBSCRIBERS MUST PROVIDE A COMPLETED W9 (W8 if INT) AND A COPY OF A VALID GOVERNMENTAL PHOTO ID/PASSPORT.

| | |
|---|---|
| Jurisdiction of Entity or homestead domicile of individual (U.S. State if U.S.): | Byjus Alpha, Inc. |
| Email for notice purposes: | anita@byjus.com |
| Address for notice purposes: | 3160 DE LA CRUZ BLVD STE 204, SANTA CLARA CA 95054 |
| SSN or EIN/US Taxpayer No. | 4819131 |
| Do you consent to electronic notice for all disclosures, tax returns, reports, and all other communications from the Partnership? | Yes ☒    No ☐ |
| Citizenship of the principals of the investor: | |

*Financial Status Questionnaire begins on the following page.*

| FOR INDIVIDUAL INVESTORS* |
|---|

*Investors must qualify as Accredited*

**Accredited Investor Certification.** The undersigned makes one of the following representations regarding its income or net worth and certain related matters *and has checked the applicable representation*:

[__]    The undersigned's income[1] during each of the last two years exceeded $200,000 or, if the undersigned is married, the joint income of the undersigned and the undersigned's spouse during each of the last two years exceed $300,000, and the undersigned reasonably expects the undersigned's income, from all sources during this year, will exceed $200,000 or, if the undersigned is married, the joint income of undersigned and the undersigned's spouse from all sources during this year will exceed $300,000.

*OR*

[__]    The undersigned's net worth,[2] including the net worth of the undersigned's spouse (or spousal equivalent), is in excess of $1,000,000 (excluding the value of the undersigned's primary residence).

*OR*

[__]    The undersigned is an individual who holds, in good standing, a FINRA Series 7, 65, or 82 License

*OR*

[__]    The undersigned is a "knowledgeable employee" of the Partnership as that term is defined in Rule 3c-5(a)(4) of the Investment Partnership Act.

*OR*

[__]    The undersigned cannot make any of the representations set forth above.

| FOR ENTITY INVESTORS* |
|---|

*Investors must qualify as Accredited*

**Accredited Investor Certification.** The undersigned makes one of the following representations regarding its entity and certain related matters ***and has checked the applicable representation***:

[X] The undersigned is an entity, including an LLC, in which **all** of the equity owners (in the case of a revocable living trust, its grantor(s)) qualify as accredited investors.

[__] The undersigned is a "family office" as defined by the "family office rule" set forth in Rule 202(a)(11)(g)-1 of the Investment Advisors Act *and* a) has at least $5 million in assets under management; b) is not formed for the specific purpose of acquiring the securities offered; and c) its prospective investment is directed by a person capable of evaluating the risks and merits of the investment.

[__] The undersigned is a trust with total assets in excess of $5,000,000 whose purchase is directed by a person with such knowledge and experience in financial and business matters that such person is capable of evaluating the merits and risks of the prospective investment.

[__] The undersigned is a bank, insurance company, investment company registered under the United States Investment Partnership Act of 1940, as amended (the "Companies Act"), a broker or dealer registered pursuant to Section 15 of the United States Securities Exchange Act of 1934, as amended, a business development company, a Small Business Investment Partnership licensed by the United States Small Business Administration, a plan with total assets in excess of $5,000,000 established and maintained by a state for the benefit of its employees, or a private business development company as defined in Section 202(a)(22) of the United States Investment Advisers Act of 1940, as amended.

[__] The undersigned is an employee benefit plan and *either* all investment decisions are made by a bank, savings and loan association, insurance company, or registered investment advisor, *or* the undersigned has total assets in excess of $5,000,000 *or*, if such plan is a self-directed plan, investment decisions are made solely by persons who are accredited investors.

[__] The undersigned is a corporation, limited liability company, partnership, business trust, not formed for the purpose of acquiring the Securities, or an organization described in Section 501(c)(3) of the Internal Revenue Code of 1986, as amended (the "Code"), in each case with total assets in excess of $5,000,000.

***OR***

[__] The undersigned cannot make any of the representations set forth above.

**Investor Suitability Q.; Camshaft Capital Fund, LP**    Pg. 3 of 7

4887-4556-3930, v. 6

## **ERISA REPRESENTATIONS**

1.  Subscriber is not acting on behalf of an entity which is deemed to hold the assets of an "Employee Benefit Plan"[1] (which is subject to the fiduciary rules of ERISA) or a "Plan"[2] (e.g., an entity of which 25% or more of any class of equity securities is held by Employee Benefit Plans or Plans, or an insurance company separate account holding "plan assets," etc.) (each, a "Benefit Plan Investor").

2.  Subscriber is not a life insurance company using the assets of its general account.

---

[1] Any plan, fund or program established or maintained by an employer or employee organization for the purpose of providing pension, welfare or similar benefits (*i.e.*, deferred compensation arrangements) to employees, which is subject to the fiduciary rules of the U.S. Employee Retirement Income Security Act of 1974, as amended ("***ERISA***").

[2] An individual retirement account ("***IRA***"), a Keogh plan or any other plan subject to Section 4975 of the Internal Revenue Code of 1986, as amended (the "***Code***").

**Investor Suitability Q.; Camshaft Capital Fund, LP**                                        **Pg. 4 of 7**

4887-4556-3930, v. 6

## USA PATRIOT ACT COMPLIANCE

1. Bank from which the Subscriber's payment to the Partnership is being wired (the "***Wiring Bank***"):

JPMorgan Chase Bank N.A.
_____
Name of Bank

270 Park Avenue, 43rd floor New York, NY 10017
_____
Address of Bank

021000021
_____
ABA Number

_____
(Swift Number for INT)

778593837
_____
Account Number

Byju's Alpha, Inc.
_____
Name Under Which Account Is Held

2. Is the Wiring Bank located in the United States or another "FATF Country"[3]?

    ☒    Yes
    ☐    No

3. If the Subscriber answered "Yes," is the Subscriber a customer of the Wiring Bank?

    ☒    Yes
    ☐    No

If the Subscriber answered "No" to questions 2 or 3 above, the Subscriber may be required, if the Subscriber is an individual, to produce a copy of a passport or identification card, together with any evidence of the Subscriber's address, such as a utility bill or bank statement, and date of birth. If the Subscriber is an entity, the Subscriber may be required to produce a certified copy of the Subscriber's certificate of incorporation, articles of association (or the equivalent) or certificate of formation or limited partnership (or the equivalent), and the names, occupations, dates of birth and residential and business addresses of all directors.

---

[3] The current list of countries that are members of the Financial Action Task Force on Money Laundering (each an "***FATF Country***") are: Argentina, Australia, Austria, Belgium, Brazil, Canada, China, Denmark, Finland, France, Germany, Greece, Hong Kong, Iceland, India, Ireland, Italy, Japan, Korea, Luxembourg, Malaysia, Mexico, Kingdom of the Netherlands, New Zealand, Norway, Portugal, Russian Federation, Singapore, South Africa, Spain, Sweden, Switzerland, Turkey, United Kingdom, and the United States. The list of FATF Countries may be expanded to include future FATF members and FATF compliant countries, as appropriate.

**Investor Suitability Q.; Camshaft Capital Fund, LP**                                  **Pg. 5 of 7**

4887-4556-3930, v. 6

# PRIVACY NOTICE

The General Partner is committed to protecting your privacy and maintaining the confidentiality and security of your personal information, and in connection therewith, this Privacy Policy is observed by the General Partner. This Privacy Policy explains the manner in which the General Partner collects, utilizes and maintains nonpublic personal information about its investors ("***Investors***"), as required under Federal Law. In addition to the General Partner, the information collected may also be shared with, and utilized by, the Accountant, who is Sterling Mayfair. More information about the Administrator is available upon request to the General Partner.

**Collection of Investor Information**

The General Partner and the Administrator may collect personal information about its Investors from the following sources:

1. Subscription forms, investor questionnaires, account forms, and other information provided by the Investor in writing, in person, by telephone, electronically or by any other means. This information includes name, address, employment information, and financial and investment qualifications;

2. Transactions within the Fund, including account balances, investments, distributions and fees;

3. Other interactions with the General Partner's affiliates (for example, discussions with our staff and affiliated broker-dealer); and

4. Verification services and consumer reporting agencies, including an Investor's creditworthiness or credit history.

**Disclosure of Nonpublic Personal Information**

The General Partner and the Administrator may share nonpublic personal information about investors or potential investors in the Fund with affiliates, as permitted by law. The General Partner does not disclose nonpublic personal information about investors or potential investors in the Fund to nonaffiliated third parties, except as permitted by law (for example, to service providers who provide services to the Investor or the Investor's account).

The General Partner and the Administrator may share nonpublic personal information, without an Investor's consent, with affiliated and nonaffiliated parties in the following situations, among others:

1. To respond to a subpoena or court order, judicial process or regulatory inquiry;

2. In connection with a proposed or actual sale, merger, or transfer of all or a portion of its business;

3. To protect or defend against fraud, unauthorized transactions (such as money laundering), lawsuits, claims or other liabilities;

4. To service providers of the General Partner in connection with the administration and operations of the General Partner, the Fund and other General Partner products and services, which may include brokers, attorneys, accountants, auditors, administrators or other professionals;

      5.      To assist the General Partner in offering General Partner-affiliated products and services to its Investors;

      6.      To process or complete transactions requested by an Investor; and

      7.      For any proper purpose as contemplated by or permitted under the applicable Fund offering, governing or organizing documents.

**Former Customers and Investors**

The same Privacy Policy applies to former Investors.

**Protection of Investor Information**

The General Partner, and to the extent provided by its own internal policies, the Administrator, maintains physical, electronic and procedural safeguards that comply with federal standards to protect customer information. The General Partner restricts access to the personal and account information of Investors to those employees who need to know that information in the course of their job responsibilities.

**Further Information**

The General Partner and the Administrator reserves the right to change this Privacy Policy at any time. The examples contained within this Privacy Policy are illustrations and are not intended to be exclusive. This Privacy Policy complies with Federal Law regarding privacy. You may have additional rights under other foreign or domestic laws that may apply to you. All questions should be directed to the General Partner Email.

**Banking Disclosure**

The General Partner and/or the Administrator shall cause the Partnership to open and maintain a bank account(s) at an FDIC insured banking institution in the United States. However, all Members acknowledge, understand, and agree that the General Partner cannot and will not guarantee the safe deposit and keeping of all funds outside of reasonable due care, which generally entails ensuring correct receipts and deposits into the account(s) of the Partnership. The General Partner, the Sponsor, and the Partnership are not responsible for the actions (or omissions) or events that occur with the banking institutions in which the Partnership's funds are deposited.

*Signature Page Follows.*

The undersigned, in executing this Investor Suitability Questionnaire, hereby affirms and certifies each of the representations and warranties provided for above, as well as understands and agrees to all notices and disclaimers provided herein. Investors may be required to make certain representations and to satisfy that they are an accredited investor as described herein and may be required to make certain additional representations at the request of Partnership. The suitability standards referred to above are minimum requirements; the satisfaction of such standards does not mean that an investment in the company is a suitable investment for an investor. The Partnership, in its sole and absolute discretion, has the authority to accept or reject an investor hereunder. In addition, we may revoke the offer made and refuse to sell any securities to a prospective investor for any other reason whatsoever.

The undersigned has executed this **Investor Suitability Questionnaire** in connection with the Subscription Agreement of Camshaft Capital Fund, LP, as of the date written below.

|  |
|---|
| Byjus Alpha , Inc |
| Name of Investor |
| *[DocuSigned signature: C54806B5666C4E2...]* |
| (Signature) |
| Riju Ravindran |
| Name of Signing Party (Please Print) |
| Director |
| Title of Signing Party (Please Print) |
| 4/28/2022 |
| Date Signed |

---

[1] For purposes of this Questionnaire, "*income*" means adjusted gross income, as reported for federal income tax purposes, increased by the following amounts: (a) the amount of any tax exempt interest income received, (b) the amount of losses claimed as a limited partner in a limited partnership, (c) any deduction claimed for depletion, (d) amounts contributed to an IRA or Keogh

DocuSign Envelope ID: 16208E18-1E84-413B-B88D-A037147B439E
Case 25-50526-BLS    Doc 78-43    Filed 07/26/25    Page 20 of 20

retirement plan, (e) alimony paid, and (f) any amounts by which income from long-term capital gains has been reduced in arriving at adjusted gross income pursuant to the provisions of Section 1202 of the Internal Revenue Code.

[2] For purposes of this Questionnaire, "**net worth**" means the excess of total assets, excluding your primary residence, at fair market value over total liabilities, including your mortgage or any other liability secured by your primary residence only if and to the extent that it exceeds the value of your primary residence. Net worth should include the value of any other shares of stock or options held by you and your spouse and any personal property owned by you or your spouse (*e.g.* furniture, jewelry, other valuables, etc.).

**Investor Suitability Q.; Camshaft Capital Fund, LP**                                                                                                     Pg. 9 of 7

4887-4556-3930, v. 6