## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | |
| | ) | |
| BYJU'S ALPHA, INC.,[1] | ) | Chapter 11 |
| | ) | |
| Debtor. | ) | Case No. 24-10140 (BLS) |
| | ) | |
| | ) | |
| BYJU'S ALPHA, INC., | ) | Adv. Pro. Case No. 25-50526 (BLS) |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **Ref. Adv. D.I. 66, 69, 70** |
| | ) | |
| BYJU RAVEENDRAN, DIVYA GOKULNATH, | ) | |
| and ANITA KISHORE, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## PLAINTIFFS' OPPOSITION TO MOTION TO RECONSIDER
## ORDER OF CONTEMPT AGAINST BYJU RAVEENDRAN

---

[1] The Debtor in this chapter 11 case, along with the last four digits of the Debtor's federal tax identification number, is: BYJU's Alpha, Inc. (4260). The location of the Debtor's service address for purposes of this Chapter 11 Case is:  1007 N. Market Street Ste.  G20 452, Wilmington, Delaware 19801.

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ..................................................................................................1

RELEVANT FACTUAL BACKGROUND ..............................................................................3

    A.    The Underlying Discovery Orders..........................................................................3

    B.    The Contempt Motion And Byju's Opposition .....................................................4

    C.    The Show Cause Hearing........................................................................................5

LEGAL STANDARD ...............................................................................................................7

ARGUMENT ............................................................................................................................8

I.      The Motion Improperly Introduces New Evidence And Arguments.....................8

II.     The Contempt Order Was Correctly Decided On The Merits.................................9

    A.    There Is No Clear Error In The Court's Service Rulings.......................................10

    B.    There Is No Clear Error In The Court's Personal Jurisdiction Rulings. ...............16

III.    The Contempt Order Is Not "Manifestly Unjust." ...............................................19

CONCLUSION.........................................................................................................................21

# TABLE OF AUTHORITIES

**Page**

## Cases

*A.K. Stamping Co. v. Instrument Specialties Co.*,
106 F. Supp. 2d 627 (D.N.J. 2000)....................................................................15

*In re Asbestos Prods. Liability Litig. (No. IV)*,
921 F.3d 98 (3d Cir. 2019)..............................................................................18

*Blystone v. Horn*,
664 F.3d 397 (3d Cir. 2011) .............................................................................7

*Bohus v. Beloff*,
950 F.2d 919 (3d Cir. 1991) ..............................................................................8

*In re BYJU'S Alpha, Inc.*,
2025 WL 659092 (Bankr. D. Del. Feb. 27, 2025)..........................................18

*Camara v. Stevens Transp.*,
2016 WL 8698532 (D.N.J. Jan. 8, 2016) ........................................................16

*Conway v. A.I. duPont Hosp. for Child.*,
2009 WL 1492178 (E.D. Pa. May 26, 2009) ....................................................8

*Corestates Leasing, Inc. v. Wright-Way Exp., Inc.*,
190 F.R.D. 356 (E.D. Pa. 2000) ......................................................................18

*Corp. Emp't Res., Inc. v. Boone*,
2011 WL 5335467 (D. Del. Nov. 4, 2011) ......................................................17

*Dobrich v. The Indian River Sch. Dist.*,
432 F. Supp. 2d 445 (D. Del. 2006) ................................................................20

*FTI Consulting, Inc. v. Sweeney (In re Centaur, LLC)*,
2019 WL 2122952 (Bankr. D. Del. May 13, 2019) ....................................... 7, 12, 16

*Harsco Corp. v. Zlotnicki*,
779 F.2d 906 (3d Cir. 1985) ............................................................................15

*Hazout v. Tsang Mun Ting*,
134 A.3d 274 (Del. 2016) ................................................................................16

*Lazaridis v. Wehmer*,
591 F.3d 666 (3d Cir. 2010) ..............................................................................7

*Lynch v. Jacobs as Tr. of New Century Liquidating Tr.*,
   2021 WL 5984897 (D. Del. Nov. 23, 2021) ................................................................8

*In re Miller*,
   2007 WL 4322541 (E.D. Pa. Dec. 11, 2007) ..........................................................14

*My Size, Inc. v. Mizrahi*,
   193 F. Supp. 3d 327 (D. Del. 2016) .......................................................................17

*In re NewStarcom Holdings, Inc.*,
   608 B.R. 614 (D. Del. 2019)...................................................................................9

*In re NewStarcom Holdings, Inc.*,
   547 B.R. 106 (Bankr. D. Del. 2016) ......................................................................2

*OR v. Hutner*,
   576 F. App'x 106 (3d Cir. 2014) ............................................................................7

*Pliteq, Inc. v. Mostafa*,
   2024 WL 3070171 (S.D. Fla. June 20, 2024) ......................................................15

*In re Roemmele*,
   466 B.R. 706 (Bankr. E.D. Pa. 2012) ...................................................................19

*Ryan v. Gifford*,
   935 A.2d 258 (Del. Ch. 2007) ..............................................................................16

*Shahin v. Del. Transit Corp.*,
   2011 WL 2847383 (D. Del. July 14, 2011) ............................................................8

*U.S. ex rel. Sirls v. Kindred Healthcare, Inc.*,
   536 F. Supp. 3d 1 (E.D. Pa. 2021) .........................................................................8

*Stranahan Gear Co., Inc. v. NL Indus., Inc.*,
   800 F.2d 53 (3d Cir. 1986) ....................................................................................16

## Rules / Statutes

10 *Del. C.* § 3104 ......................................................................................................17

10 *Del. C.* § 3114 ......................................................................................................10

10 *Del. C.* § 3114(b) ...........................................................................................16, 17

Fed. R. Bankr. P. 7004(f)(1) ......................................................................................17

Fed. R. Bankr. P. 7012(a)(1) ......................................................................................19

Fed. R. Civ. P. 4(f)(2) ................................................................................................................14, 15

Fed. R. Civ. P. 12 ........................................................................................................................4, 19

Fed. R. Civ. P. 26(d)(1) ...................................................................................................................20

Fed. R. Civ. P. 26(f) .........................................................................................................................19

Fed. R. Civ. P. 33(b)(2) ...................................................................................................................19

Fed. R. Civ. P. 59(e) .....................................................................................................................7, 9

Plaintiffs BYJU's Alpha, Inc. (the "<u>Debtor</u>") and GLAS Trust Company LLC ("<u>GLAS</u>") file this opposition to Defendant Byju Raveendran's *Motion to Reconsider Order of Contempt Against Byju Raveendran* (Adv. D.I. 69) (the "<u>Motion</u>"), and respectfully state as follows:

## PRELIMINARY STATEMENT[2]

1. On May 7, 2025, this Court granted the Debtor's motion for expedited discovery, narrowly focused on the location of the stolen $533 million Alpha Funds at the center of this bankruptcy. The Court did not issue its ruling lightly. Its ruling was based on a clear record demonstrating the "unusual circumstances … required to warrant" pre-answer, expedited discovery, particularly considering the "extraordinary level of motion practice and activity relating to discovery much of which appears to have been largely frustrated." May 7, 2025 Hr'g Tr. 42:16–22, 43:5–7. The Court required Byju's "good faith" participation in discovery, a directive that could not have been more clear.

2. But Byju failed to comply with the Court's Discovery Order, and when given additional time, he also failed to comply with the Court's Extension Order. Byju's only "efforts" to comply with this Court's two Orders ahead of the June 30, 2025 Show Cause Hearing were "evasive and incomplete" written responses and a four-document production. June 30, 2025 Hr'g Tr. 83:13–21. There was no excuse for this paltry effort. Byju was not resisting the production of irrelevant or unduly burdensome information. Rather, the Debtor had served six targeted production requests and nine narrowly-tailored interrogatories aimed at his role with the Debtor and in the transfer of the Alpha Funds (or the proceeds thereof).

---

[2] Capitalized terms not otherwise defined herein have the meanings given to them in *Plaintiffs' Motion to Hold Byju Raveendran* in *Contempt of Court for the Failure to Comply with the Court's Orders and Request for Civil Sanctions* (Adv. D.I. 45) (the "<u>Contempt Motion</u>").

3.      As the Court would starkly comment, Byju's efforts were "not even remotely satisfactory or consistent with what the Court would expect a legitimate and good faith document production would be." *Id.* 83:22–25.  Based on the evidentiary record before it along with briefing and argument from counsel, including on the issues of service and personal jurisdiction, the Court held Byju in contempt, imposing a $10,000 daily sanction until Byju complied with the Court's Orders, among other relief.  This finding was not only justified but inevitable given Byju's failure to present any credible basis for his noncompliance.

4.      As things stand, Byju has accrued almost $300,000 in sanctions to date and counting.  Yet he continues to refuse to supplement his deficient answers and produce documents. He refuses to even commit to purging his contempt.  All counsel can noncommittally say on meet and confer calls is: "I will provide you with an update as soon as I have it."  In short, nothing has changed over the past four weeks.  Despite the Court's "hope," Byju has not "take[n] seriously his responsibilities in these proceedings and … participate[d] promptly and meaningfully in the discovery process."  *Id.* 85:16–24.  Plaintiffs are no closer to learning the truth about what happened to the Alpha Funds.

5.      In this light, the present Motion is nothing more than a continuation of the obstruction that has long plagued this bankruptcy.  A motion for reconsideration is an "extraordinary means of relief," which imposes a heavy burden on the movant.  *In re NewStarcom Holdings, Inc.*, 547 B.R. 106, 132 (Bankr. D. Del. 2016).  Byju comes nowhere close to meeting his heavy burden.  His Motion is not a legitimate effort to correct any error or prevent any injustice. Instead, Byju recycles arguments already decided by the Court, without offering any conceivable error, and improperly introduces new evidence and legal theories that could have—and should have—been raised long ago.  This is not a genuine attempt to address any legitimate legal issue; it

is a calculated attempt to further postpone Byju's long-overdue compliance with his discovery obligations and obstruct Plaintiffs' efforts to locate the missing money.

6.       The Court observed at the Show Cause Hearing that the "process in these cases … have shown a consistent effort to delay and obfuscate," with a "strategic and patterned failure to provide meaningful, substantive responses to very basic and cogent questions[.]" June 30, 2025 Hr'g Tr. 84:6-15.  The Court should see this Motion as more of the same:  a meritless, dilatory tactic that deserves a prompt and unequivocal denial.

**RELEVANT FACTUAL BACKGROUND**

7.       Plaintiffs incorporate by reference paragraphs 6 through 26 of the Contempt Motion and will not rehash the full circumstances leading up to the filing of the Contempt Motion.

### A.       The Underlying Discovery Orders

8.       The Debtor commenced this adversary proceeding on April 9, 2025.  Adv. D.I. 1–2.  The Summons was issued the same day (Adv. D.I. 3), and the Debtor effected service on Byju through the Delaware Officer Consent Statute the very next day.  Adv. D.I. 6; *see* Contempt Mot. ¶ 36.  Later, on May 14, 2025, the Debtor also served Byju in the United Arab Emirates as a precautionary measure, which should have removed any doubt about service.  Adv. D.I. 35–36.

9.       On April 18, 2025, the Debtor filed its Discovery Motion seeking expedited, narrowly-tailored discovery concerning the Alpha Funds (and the proceeds thereof)—in particular, the circumstances of the fraudulent transfers that have dominated this bankruptcy.  *See generally* Adv. D.I. 7.  Among other topics, the Debtor also sought discovery into Byju's role in the transfers and with the Debtor, including the Debtor's "books and records."  *Id.* ¶ 28.  Three days later, Byju filed an objection to the Debtor's Discovery Motion.  Adv. D.I. 9.  He challenged service and the timing of discovery *but not* personal jurisdiction.  *Id.* at 1–2.  The Debtor replied on April 28, 2025,

3

detailing the then-at least three independent bases that established valid service (in addition to "good cause" for the limited expedited discovery).  Adv. D.I. 14 ¶¶ 3–11.

10.     Byju failed to appear at the May 7, 2025 hearing on the Discovery Motion, despite being provided login information by counsel for the Debtor.  The Court granted the Discovery Motion, finding service proper while preserving Byju's later right to raise the issue on a Federal Rule 12 motion to dismiss.  May 7, 2025 Hr'g Tr. 42:2–14.  Two days later, the Court entered its Discovery Order, setting May 23 as the written response deadline and May 30 as the document production deadline, and further scheduling a discovery status conference for May 27, 2025. Discovery Order [Adv. D.I. 25] ¶¶ 3–4, 7.

11.     Rather than comply with his first deadline, on May 23, Byju sought a 30-day reprieve on the basis that he "has been unable to find counsel."  Adv. D.I. 29.  Byju then elected not to appear at the May 27 conference to argue his extension request.  The Court denied the full requested extension, but, with the Debtor's consent, extended Byju's deadlines by one week— until May 30, 2025 (written response deadline) and June 6, 2025 (production deadline).  Extension Order [Adv. D.I. 34]; May 27, 2025 Hr'g Tr. 18:13–19:3.

**B.     The Contempt Motion And Byju's Opposition**

12.     Byju missed the extended deadlines too.  *See* Contempt Mot. ¶ 21.  Therefore, on June 17, 2025, Plaintiffs filed their Contempt Motion, and, on June 20, the Court entered an Order to Show Cause (Adv. D.I. 47) ("OSC") scheduling an evidentiary hearing for June 30, 2025 (the "Show Cause Hearing").  The Court ordered Byju's appearance in person or virtually upon a showing of good cause.  OSC ¶¶ 1–2.

13.     On or before June 23, 2025, Byju retained Delaware counsel (after prior counsel had withdrawn).  Adv. D.I. 48.  On June 26, Byju filed an opposition to the Contempt Motion (Adv. D.I. 53) (the "Contempt Opposition"), in which he primarily argued that the Court should

not find him in contempt because he "is complying [] with this Court's discovery order."  *Id.* at 2; *see also id.* 5–10 (focusing on Byju's purported compliance and the inequities of holding him in contempt).  This purported compliance was based on Byju's service of "evasive and incomplete [written discovery] responses" and a paltry production consisting of three online articles downloaded the day before and one set of outdated T&L financial statements from March 2022.  *See* June 30, 2025 Hr'g Tr. 83:13–84:5.

14.    While the Contempt Opposition also stated that Byju "contests the Court's jurisdiction over him" because he "neither was nor is an officer of the Debtor," he expressly took the position that these issues did not have to be decided at the Show Cause Hearing—"this [Contempt] Motion is not the vehicle for the Court to decide that question."  Contempt Opp. at 7.  Then, in his sur-reply filed the morning of the Show Cause Hearing (Adv. D.I. 62-1) ("Contempt Sur-Reply"), Byju changed course, challenging both service and personal jurisdiction.  Byju for the first time (incorrectly) argued that "the Delaware Officer Consent Statute is only viable" if he was "actually" the CEO of the Debtor, which he claimed not to be.  Contempt Sur-Reply at 4.

15.    Although the OSC required Byju to appear in-person or, if good cause was shown, remotely at the Show Cause Hearing (OSC ¶¶ 1–2), Byju chose not to attend, testify, or otherwise show cause why he should not be held in civil contempt for failing to comply with the Court's Orders.

C.    **The Show Cause Hearing**

16.    While Byju did not participate in the hearing, his counsel presented oral argument on the issues of the Court's personal jurisdiction over Byju and service.  *See, e.g.*, June 30, 2025 Hr'g Tr. 52:21–56:4.  Notably, at no point in his presentation did Byju's counsel argue—as Byju now argues in the Motion—that "Raveendran has insufficient jurisdictional contacts," or that the "U.S. constitution would prohibit jurisdiction over him."  *See* Mot. at 13–17.

17.     At the conclusion of argument and admission of exhibits, the Court noted, "as a threshold matter" that Byju's failure to appear at the hearing did not comply with the OSC and put him "on notice that the Court will consider monetary and nonmonetary sanctions[.]"  June 30, 2025 Hr'g Tr. 81:4–8.  Citing the "lengthy body of case law within the Third Circuit," the Court found that (i) a valid Court order existed, (ii) Byju "certainly" had knowledge of the order, and (iii) Byju "has disobeyed that order." *Id.* 81:15–23.  Byju's last-minute, superficial efforts to provide discovery did not constitute compliance with the Court's orders, but instead were a "fig leaf" intended to create the appearance of compliance in the two days leading up to the Show Cause Hearing. *Id.* 83:22–84:2. Thus, the Court held Byju in contempt for his failure to adequately respond to the Court's Discovery Order and Extension Order.  *Id.* 81:9–12.

18.     As to the issue of service, the Court concluded that "the record reflects a sufficient basis for finding that service has indeed properly occurred here."  *Id.* 83:8–9.  As to personal jurisdiction, the Court noted that "the issue has been raised and teed up by the parties" and based on the evidence before the Court, it had "personal jurisdiction in order to enter the relief that's being requested today." *Id.* 82:17–21; 83:5–6; *see also id.* 83:6–9 ("the record reflects a sufficient basis for finding that service has indeed properly occurred here").  As additional grounds for reaching the same conclusion, the Court found that Byju had "subjected himself to the jurisdiction of this Court[,]" citing his "variety of pleadings, some with a disclaimer or a retention of rights, some without[.]"  *Id.* 82:22–83:4.  Finally, the Court found that Byju's "conduct that gives rise to the litigation here relates to his activities involving activities in the United States fundraising and serving as a director, officer, or manager of a United States corporation."  *Id.*

6

19.     On July 7, 2025, the Court entered an order holding Byju in contempt, directing him to comply with his discovery obligations and, *inter alia*, remit to the Clerk of Court $10,000 per day until his contempt has been purged.  Adv. D.I. 66 (the "Contempt Order").

20.     As noted, Byju still has not complied with his discovery obligations as ordered, nor has he provided any meaningful indication of his intent or willingness to do so.  As the monetary sanctions began to accrue on July 1, 2025, Byju currently owes close to $300,000 and counting to the Clerk of the Court.  And rather than comply with the discovery orders and purge his contempt, Byju instead filed a baseless motion to reconsider on July 14, 2025.

## LEGAL STANDARD

21.     Federal Rule of Bankruptcy Procedure ("Bankruptcy Rule") 9023 incorporates Federal Rule of Civil Procedure ("Federal Rule") 59, which allows parties to file a motion to alter or amend a judgment.  *See* Fed. R. Civ. P. 59(e).  "The scope of a motion for reconsideration … is extremely limited."  *OR v. Hutner*, 576 F. App'x 106, 110 (3d Cir. 2014) (quoting *Blystone v. Horn*, 664 F.3d 397, 415-16 (3d Cir. 2011)).

22.     As Byju recognizes, a proper Federal Rule 59(e) motion "must rely on one of three grounds: (1) an intervening change in controlling law; (2) the availability of new evidence; or (3) the need to correct clear error of law or prevent manifest injustice."  *Lazaridis v. Wehmer*, 591 F.3d 666, 669 (3d Cir. 2010).  Byju relies on the third ground for reconsideration, claiming there are "clear errors of law and fact in the July 7 [Contempt] Order and an amendment would prevent manifest injustice."  Mot. at 6.  But to qualify under the third prong, the Defendant must identify an error of law or fact that is "plain and indisputable amounting to a complete disregard of the controlling law or the credible evidence in the record" or a "manifest injustice" that is "so patently unfair and tainted that the error is manifestly clear to all who view it."  *FTI Consulting, Inc. v. Sweeney (In re Centaur, LLC)*, 2019 WL 2122952, at *3 (Bankr. D. Del. May 13, 2019) (citations

omitted).  Furthermore, reconsideration cannot be sought to "relitigate issues the court has already decided or … advance arguments that could have [been] made" but were not.  *Id.* at *2; *see also Shahin v. Del. Transit Corp.*, 2011 WL 2847383, at *1 (D. Del. July 14, 2011) ("reconsideration is not properly grounded on a request that a court rethink a decision already made").

23.     All of this imposes a "heavy burden" on the movant, which Byju comes nowhere close to satisfying here.  *Lynch v. Jacobs as Tr. of New Century Liquidating Tr.*, 2021 WL 5984897, at *1 (D. Del. Nov. 23, 2021), *aff'd sub nom. In re New Century TRS Holdings, Inc.*, 2023 WL 155449 (3d Cir. Jan. 11, 2023) (citing *Bohus v. Beloff*, 950 F.2d 919, 930 (3d Cir. 1991)).

## ARGUMENT

### I.     The Motion Improperly Introduces New Evidence And Arguments.

24.     Byju's request for reconsideration is expressly and exclusively premised on the need to correct purported "clear errors of law and fact in the July 7 Order."  Mot. at 6.  As noted, this is a narrow and demanding standard that strictly limits Byju's Motion to the factual and legal record originally before the Court.  Indeed, courts in this Circuit have consistently held that a motion for reconsideration is not a vehicle for a disappointed party to get a "second bite at the apple" or "another roll of the dice" or to "argue new facts or issues that inexcusably were not presented to the court in the matter previously decided."  *Conway v. A.I. duPont Hosp. for Child.*, 2009 WL 1492178, at *4-*5 (E.D. Pa. May 26, 2009) (internal quotations omitted); *see also U.S. ex rel. Sirls v. Kindred Healthcare, Inc.*, 536 F. Supp. 3d 1, 4 (E.D. Pa. 2021) (no "second bite at the apple") (quotation omitted).

25.     Despite this clear standard, Byju's Motion is replete with attempts to introduce new facts and legal arguments, including a declaration from his Emirati counsel challenging service abroad and unsworn and uncorroborated factual statements regarding the circumstances under which Byju signed the March 31, 2023 Transfer Agreement that moved the Debtor's Camshaft LP

Interest (the replacement asset received on account of the Alpha Funds) to Inspilearn.  *See* Mot. at

10–11.   Byju's introduction of this new evidence is wholly improper on a motion for

reconsideration and, as a result, the evidence must be disregarded.

26.     Nor can Byju reframe his Motion to invoke "the availability of new evidence" as a

basis for reconsideration under the second prong of Federal Rule 59(e). The standard for

introducing new evidence on reconsideration also is exacting: "new evidence, for reconsideration

purposes, does not refer to evidence that a party obtains or submits to the court after an adverse

ruling.  Rather, new evidence in this context means evidence that a party could not earlier submit

to the court because that evidence was not previously available."  *In re NewStarcom Holdings,*

*Inc.*, 608 B.R. 614, 624 (D. Del. 2019), *aff'd sub nom. In re NewStarcom Holdings Inc.*, 816 F.

App'x 675 (3d Cir. 2020).  Byju makes no showing (nor could he) that any of his new factual

allegations or declarations were previously unavailable.  Unsurprisingly, the Motion does not even

suggest it is moving for reconsideration on the grounds of the availability of new evidence.

27.     For both reasons, and as discussed in further in Argument § II, *infra*, every one of

Byju's newly-presented factual assertions and legal arguments should be categorically

disregarded.  Once the record for reconsideration is properly curtailed, it becomes clear that there

is no clear error warranting reconsideration.

## II.     <u>The Contempt Order Was Correctly Decided On The Merits.</u>

28.     The Court held Byju in contempt for his willful disregard for, and failure to comply

with, its Discovery Order and Extension Order.  Contempt Order ¶ 2.  In his Motion, Byju fails to

identify any legal or factual errors that require the Court to amend, overturn, or in any way disturb

this conclusion.  Unable to demonstrate actual compliance, Byju instead raises (yet again) two

procedural challenges—service and personal jurisdiction—both of which were raised and decided

at the Show Cause Hearing.  Neither ruling warrants reconsideration.

A.      <u>**There Is No Clear Error In The Court's Service Rulings.**</u>

29.     The Court already has *twice* found service on Byju sufficient under the Delaware Officer Consent Statute, 10 *Del. C.* § 3114, for purposes of the Discovery Order and Extension Order.  Byju first challenged service *pro se* in opposing expedited discovery and, based on the record, the Court was "satisfied" that "service of the complaint and service of [the Expedited Discovery Motion] are proper." May 7, 2025 Hr'g Tr. 42:2–5.  Then, Byju fully briefed and argued the point a second time in connection with the Contempt Motion while represented by counsel. *See* Byju Contempt Sur-Reply at 4–6; June 30, 2025 Hr'g Tr. 52:17–58:3.  On June 30, 2025, after considering the parties' written submissions, oral argument, and a further developed record— including the March 2023 Transfer Agreement signed by Byju as the Debtor's CEO (excerpted below), which was admitted into evidence (*see* Plaintiffs' Ex. 11, Adv. D.I. 58 at 6–12)—the Court reaffirmed its earlier service ruling.  June 30, 2025 Hr'g Tr. 83:6–12.  In other words, the Court weighed the evidence and reaffirmed its conclusion that Byju had been properly served under the Delaware Officer Consent Statute.

*Byju Raveendran's Signature on the Transfer Agreement*



30.    The Court's finding of fact was supported by the record.  As the Debtor's counsel highlighted during oral argument, the Transfer Agreement was not a mundane or ordinary-course document.  It was among the most important documents in this proceeding and in the Debtor's relatively brief existence.  As the Debtor's former director, Riju Ravindran, testified, following this fraudulent transfer, the Debtor "didn't have anything left."  Mar. 14, 2024 Hr'g Tr. 54:23–25.  That is "not the kind of document that gets put on a pile of papers on a CEO's desk and signed as the CEO is sipping coffee in the morning."  June 30, 2025 Hr'g Tr. 13:6–8.

31.    Byju disagrees and insists that he was not actually the Debtor's CEO.  Mot. at 7–12.  To be sure, Byju does not argue that the Debtor failed to comply with the process for service under the Delaware Officer Consent Statute, only that it does not apply because he was not CEO.  But Byju identifies no clear error in the Court's finding of fact, let alone the kind of "complete

disregard" for the factual record necessary to disturb a prior ruling. *In re Centaur*, 2019 WL 2122952, at *3. Regardless, the counterfactual narrative Byju now presents lacks any basis in the evidentiary record at the Show Cause Hearing so there is no clear error that merits reconsideration.

32.     *First*, Byju argues that the "CEO" title on the Transfer Agreement is irrelevant, because his name and title were "prepared by William Morton" and Byju only had to "apply an e-signature." Mot. at 10. Therefore, he argues, it was merely a "clerical mistake for which Camshaft is responsible[.]" *Id.* at 11. These entirely-new factual assertions are wholly improper on a motion for reconsideration. *See* Legal Standard, *supra*; Argument § I, *supra*. The Show Cause Hearing was an evidentiary hearing. Had Byju wanted to make this argument for the Court to consider, then he needed to produce relevant documents in response to the Debtor's requests, personally appear at the Show Cause Hearing as ordered, OSC ¶¶ 1–2, and present admissible testimony under oath as to the circumstances of his signing the Transfer Agreement, subject to Plaintiffs' right to cross examination. What Byju cannot do is get a "second bite at the apple" by asking the Court to reconsider its factual findings based on *post hoc*, unsworn, one-sided, and self-serving factual assertions made through counsel.[3]

33.     *Second*, in response to the Court's even earlier finding that Byju was "the Debtor's founder, *and self-appointed CEO*," MSJ Op. at 6 (emphasis added), Byju cherry picks other quotes from the Court's MSJ Opinion and the Debtor's Complaint and then contends that they create an estoppel problem for Plaintiffs. Mot. at 9. But Byju has distorted the actual statements at issue, and his misleading snippets cannot conjure an estoppel problem where none exists:

---

[3]     Additionally, Plaintiffs exhibited an August 3, 2023 Merchant Agreement that Byju signed on behalf of the Debtor, among others. Adv. D.I. 58 at 14; June 30 Hr'g Tr. 70:16–23. The Motion suggests that the document does not "identify Byju Raveendran as CEO of <u>any</u> entity," Mot. at 11 (emphasis in original), but this agreement supports the proposition that Byju "made a habit of signing documents on behalf of the Debtor." Adv. D.I. 57 ¶ 21.

| *What Byju Claims:* | *What Actually Was Said:* |
|---|---|
| Byju quotes the Debtor's Complaint to suggest it concedes that Riju Ravindran "was 'the ***sole director and officer*** of the Debtor.'" Mot. at 9 (quoting Compl. ¶ 93) (emphasis in original). | The full quote was about Riju Ravindran's role in 2022: "As the sole director and officer of the Debtor ***at the time***, and without being exhaustive, Riju caused the Debtor to transfer the Alpha Funds to Camshaft Fund without conducting any known due diligence or investigation." Compl. ¶ 93 (emphasis added). The emphasized phrase is key, as the Complaint specifically refers to Riju's role during the mid-2022 transfers to Camshaft and does not address Byju's later service as the Debtor's CEO in March 2023, when he signed the Transfer Agreement. *Id.* |
| Byju mischaracterizes the MSJ Opinion and the statement that Byju "was not employed by the Debtor in any capacity" to imply that the Court determined that Byju was not the Debtor's CEO. Mot. at 9. | In reality, the quoted statement is not a judicial finding but simply a recitation of the evidence regarding Byju's status in March 2023, *after* GLAS had exercised their remedies and Tim Pohl had removed all legacy directors and officers. MSJ Op. 40. |

34.     Byju unsuccessfully raised these same arguments in his Contempt Sur-Reply. Contempt Sur-Reply at 5.

35.     *Third*, as a final argument, Byju again argues that "Byju Raveendran must have actually been ***appointed*** CEO of Debtor." Mot. at 8 (emphasis added); *see* Contempt Sur-Reply at 4 (arguing that "Defendant must have actually been the CEO of Debtor"). That is not Delaware law. As Debtor's counsel explained, for purposes of the applicability of the Delaware Officer Consent Statute, courts will consider "substance over form." June 30, 2025 Hr'g Tr. 65:10–15 (discussing *Harris v. Harris*).

36.     *Harris v. Harris* is on all fours. There, the Delaware Chancery Court considered whether the Delaware Officer Consent Statute can be used to serve an individual who "never served in a formal officer position." 289 A.3d 310, 316 (Del. Ch. 2023). The court examined the text, structure, and purpose of the law, and held that "the Consent Statute can be used to serve

process on a person who *serves* in the role of president, *chief executive officer*, chief operating officer, chief financial officer, chief legal officer, controller, treasurer, or chief accounting officer of the corporation, *even if* the person does not hold the formal officer position." *Id.* (emphasis added). The court in *Harris* even warned of the dangers of limiting the scope of "officers" under the Delaware Officer Consent Statute to only those formally appointed in the role; that would encourage "evasion of design," with top executives avoiding accountability by downplaying their title. *Id.* at 333–34. That danger is playing out here, and Byju still has no response to the recent *Harris* decision. His cited cases (*see* Mot. at 8) are inapplicable, as they do not address the issue of an individual serving in an officer role even without formal appointment as such.

37. Even setting aside the Delaware Officer Consent Statute, the issue of service is not grounds for vacating the Contempt Order for three more reasons. As previously briefed and argued, an alleged defect in service is not a "defect that justifies noncompliance" with a court order. Contempt Mot. ¶ 35 (quoting *In re Miller*, 2007 WL 4322541, at *3 (E.D. Pa. Dec. 11, 2007)); June 30, 2025 Hr'g Tr. 68:19–70:8. Nor, in deciding issues of contempt, was the Court required to revisit issues that it already has decided—here, the issue of service had been decided as part of the Expedited Discovery Motion. Contempt Mot. ¶ 35. For both reasons, Byju remained bound to comply with the Court's Orders, of which he had notice, and his deliberate noncompliance fully supports the contempt finding regardless of any service argument. The Court can thus deny reconsideration without revisiting service at all. The proper vehicle for Byju to continue to pursue his challenge to service, however futile that effort may be, is his recently filed motion to dismiss.

38. Finally, Plaintiffs argued that service has also been effected on Byju abroad under Federal Rule 4(f)(2). June 30, 2025 Hr'g Tr. 69:15–23. Specifically, as belt and suspenders, on

May 14, 2025, the Debtor effected service on Byju in Dubai. *See* Adv. D.I. 35–36. And, on June 2, 2025, the Debtor filed a detailed declaration from its Emirati counsel, explaining that the manner of service was consistent with methods of service recognized under the UAE legal regime and concluding that "service was properly effectuated on … Byju Raveendran if this [action] was linked to a local action in Dubai." AlSabah Decl. ¶ 25 (Adv D.I. 35, Ex. A). U.S. courts have found service proper over defendants in the UAE using near-identical methods. *See, e.g.*, *Pliteq, Inc. v. Mostafa*, 2024 WL 3070171, at *14 (S.D. Fla. June 20, 2024), *report & recommendation adopted sub nom. Pliteq, Inc v. Mostafa*, 2024 WL 3617473 (S.D. Fla. Aug. 1, 2024) (finding that text message by a court-appointed bailiff, as here, "substantially complied with" UAE law).

39.     In the Motion, Byju's Rule 4(f) argument relies entirely on a declaration from his Emirati attorney, Mohammad Al Muhtaseb. Mot. at 12–13. Byju retained Al Muhtaseb's firm by no later than late May 2025, when the firm appeared for him in foreign proceedings. A month later, Byju filed his contempt papers without any declaration on the issue of service abroad. *See* Adv. D.I. 53, 62. Accordingly, Byju cannot now rely on Al Muhtaseb's declaration. Indeed, the Third Circuit expressly forbids the introduction of declarations on a motion to reconsider, where the evidence was available during the earlier proceedings, as here. *Harsco Corp. v. Zlotnicki*, 779 F.2d 906, 909 (3d Cir. 1985) (affirming trial court's refusal to consider affidavit containing material available earlier); *A.K. Stamping Co. v. Instrument Specialties Co.*, 106 F. Supp. 2d 627, 665 (D.N.J. 2000) (rejecting evidence that could have been introduced earlier). In any event, attached hereto as <u>Exhibit A</u> is a second declaration from the Debtor's Emirati counsel, which responds to every argument raised in Al Muhtaseb's declaration, confirming that service on Byju was proper.

*          *          *

40.     Ultimately, the entire issue of service is a red herring.  When a defendant is put on actual notice, "every technical violation of [Rule 4] or failure of strict compliance may not invalidate the service of process."  *Camara v. Stevens Transp.*, 2016 WL 8698532, at *6 (D.N.J. Jan. 8, 2016) (citing *Stranahan Gear Co., Inc. v. NL Indus., Inc.*, 800 F.2d 53, 56 (3d Cir. 1986)). Likewise, as the Court previously noted, it took "a measure of comfort, frankly, that the record does indicate that, indeed, Mr. Raveendran does have both the complaint and this motion since he has interposed his response."  May 7, 2025 Hr'g Tr. 42:18–21.  That is all the more true today.

**B.      There Is No Clear Error In The Court's Personal Jurisdiction Rulings.**

41.     Nor can Byju establish that the Court's personal jurisdiction rulings are in "complete disregard of the controlling law or the credible evidence in the record[.]" *In re Centaur*, 2019 WL 2122952, at *3.  The Court correctly exercised personal jurisdiction over Byju to enter the Contempt Order, and in fact was "obliged to exercise that jurisdiction and authority to enter relief here."  June 30, 2025 Hr'g Tr. 83:9–12.  That is because Byju had engaged in "fundraising and serv[ed] as a director, officer, or manager of a United States corporation."  *Id.* 82:17–83:4.

42.     Based upon that these factual findings—*i.e.*, that Byju served as a "director, officer, or manager of a United States corporation"—personal jurisdiction undoubtedly exists.  There is no dispute that the Delaware Officer Consent Statute deems non-resident officers of a Delaware corporation to have consented to personal jurisdiction in any action arising from acts taken in that role.  10 *Del. C.* § 3114(b); *Hazout v. Tsang Mun Ting*, 134 A.3d 274, 293 (Del. 2016) (upholding the exercise of personal jurisdiction over a Canadian defendant on claims related to his actions as the Delaware corporation's President and Chief Executive Officer); *Ryan v. Gifford*, 935 A.2d 258, 272 (Del. Ch. 2007) (where former nonresident officer of Delaware corporation was alleged to have engaged in conduct in violation of his fiduciary duties to the Delaware corporation,

concluding "that section 3114(b) provides a statutory basis for the exercise of this Court's jurisdiction over him"); *see* Contempt Mot. ¶ 39 (compiling these authorities and more).

43.    Byju's principal attack—that he lacked contacts with Delaware by re-arguing that he supposedly never served as the Debtor's CEO, *see* Mot. at 13–17—collapses under the weight of the evidence presented at the Show Cause Hearing.  *See* Argument § II.A, *supra*.  Byju cannot meet his heavy burden for reconsideration.  Moreover, Byju fundamentally misunderstands the applicable standard at this procedural stage, which independently defeats his jurisdiction challenge.  Byju's purported evidence does not deprive this Court of jurisdiction.  As previously briefed, *see* Contempt Mot. ¶ 39 n.26, under precedent from the District of Delaware, the Debtor's well-pled allegations about Byju's service as CEO (*see, e.g.*, Compl. ¶¶ 1, 8, 14, 23, 24, 61, 104, 121) are sufficient to establish personal jurisdiction for pleading purposes, *even if* the allegations may be disproven following discovery (they will not be).[4]  Therefore, by making factual findings, the Court actually went farther than it strictly needed to in order to exercise jurisdiction over Byju.

44.    Byju's remaining arguments are either legally incorrect or irrelevant.  Byju argues that the Delaware Long Arm Statute, 10 *Del. C.* § 3104, has not been satisfied, *see* Mot. at 13–15, but that is obviously the incorrect legal standard.  In bankruptcy proceedings, courts look to contacts with the United States as a whole, not merely the forum state.  Fed. R. Bankr. P. 7004(f)(1).  Accordingly, as this Court already explained in related proceedings, "the Court need not look to the Delaware long arm-statute, or the case law interpreting it, to determine whether it

---

[4]    *See Corp. Emp't Res., Inc. v. Boone*, 2011 WL 5335467, at *4 (D. Del. Nov. 4, 2011) ("Although defendants argue [] that the conduct complained of was not undertaken in Boone's capacity as an officer or director, thus precluding the application of § 3114, I find that plaintiffs have sufficiently pled to the contrary …. I understand that, through discovery, these allegations may be disproven; nonetheless, I find them sufficient to confer upon this court personal jurisdiction over Boone as an officer or director of the Delaware plaintiffs."); *My Size, Inc. v. Mizrahi*, 193 F. Supp. 3d 327, 332 (D. Del. 2016) ("Accepting plaintiff's allegations as true, this court has personal jurisdiction under Delaware law over Mizrahi due to his obligations as a director of a company incorporated in Delaware, even though he is a non-Delaware resident.").

has personal jurisdiction." *In re BYJU'S Alpha, Inc.*, 2025 WL 659092, at *7 n.37 (Bankr. D. Del. Feb. 27, 2025) (internal quotations omitted).  Furthermore, Byju's arguments that he has never "had any assets in Delaware (or the U.S.)" and has "never stepped foot in Delaware" (*e.g.*, Mot. at 16) are irrelevant given his actions on behalf of a Delaware corporation.

45.    Alternatively, the Court found a basis in the record to conclude that Byju had waived any personal jurisdiction defense through his own litigation conduct.  *See* June 30, 2025 Hr'g Tr. 82:23–83:4 (noting that Byju had filed "a variety of pleadings, some with a disclaimer or a reservation of rights, some without").[5]  Despite having been served on April 10, 2025, it took until May 30, 2025 before Byju said he "contest[s] jurisdiction" (Adv. D.I. 41) and, even then, he did not "continually" maintain that position, as he now claims (Mot. at 1).  Far from it, Byju— while both *pro se* and when represented—continued to promise compliance with discovery notwithstanding any jurisdiction defenses.  *See, e.g.*, Contempt Mot. ¶ 44 ("Even as recently as June 12, 16, 17, 2025, Byju (through his advisor) emailed the Court, expressly stating … his intention to 'provide responses to the limited discovery prior to the [Contempt] Hearing.'").  Byju's delayed challenge to personal jurisdiction effected a waiver.  *See In re Asbestos Prods. Liability Litig. (No. IV)*, 921 F.3d 98, 107 (3d Cir. 2019) ("[B]ehavior which indicates an intent to litigate the case on the merits, is sufficient to constitute waiver, regardless of whether the parties also express an intent to preserve the defense."); *Corestates Leasing, Inc. v. Wright-Way Exp., Inc.*, 190 F.R.D. 356, 358 (E.D. Pa. 2000) (because the defendant was served with the summons and complaint and had actual notice of the lawsuit, defendant had waived a lack of personal

---

[5]    *See, e.g.*, Adv. D.I. 9 (Byju's *pro se* objection to the Debtor's Expedited Discovery Motion) (no personal jurisdiction challenge); Adv. D.I. 29 (Byju's *pro se* reqest for an extension of discovery deadlines) (no personal jurisdiction challenge); Adv. D.I. 53 at 18–20 (Byju's counsel's opposition to the Contempt Motion) (concedes that the Contempt Motion is "not the vehicle" for the Court to decide personal jurisdiction).

jurisdiction defense that was raised for the first time in its reply in support of motion to set aside default judgment).

46.     Byju argues that the Court should not have found a waiver *sua sponte* and without having the issued briefed, Mot. at 17–18, but that is not what actually happened.  Plaintiffs *did* brief the issue, dedicating an entire section of their Contempt Motion to why Byju had waived his personal jurisdiction defense.  Contempt Mot. ¶¶ 42–44.  But Byju chose not to fully respond.

47.     There are even more grounds for asserting personal jurisdiction over Byju, *see, e.g.*, Contempt Mot. ¶ 40, but more is not needed.  Long and short, Byju, while acting as an officer of a Delaware corporation, transferred away its largest asset—an interest in a Delaware limited partnership—to a formerly-affiliated Delaware LLC, gravely damaging both the Delaware corporation and its U.S.-based creditors.  Personal jurisdiction undoubtedly is proper.

## III.    The Contempt Order Is Not "Manifestly Unjust."

48.     Lastly, the Contempt Order is not manifestly unjust.  Manifest injustice requires an error "that is direct, obvious, and observable" and "apparent to the point of being indisputable," such as "a defendant's guilty plea that is involuntary."  *In re Roemmele,* 466 B.R. 706, 712 (Bankr. E.D. Pa. 2012) (collecting cases).  Byju comes nowhere close to even approaching that high bar.

49.     Byju argues that he should have had the opportunity to move to dismiss before the Court entered its Contempt Order on July 7, 2025.  Mot. at 1–2, 18.  To begin with, Byju, who was served domestically, could—and should—have filed his Rule 12 motion well before July 7, as his response deadline to the Complaint pursuant to Bankruptcy Rule 7012(a)(1) was May 9, 2025.  But Byju chose to wait approximately 3.5 months, until July 25, 2025, before filing his motion.  *See* Adv. D.I. 77–80.  Also, the Federal Rules do not require that dispositive motions be staged first.  Instead, they expressly permit expedited discovery when "ordered by the court," as occurred here.  *See* Fed. R. Civ. P. 33(b)(2) (interrogatories), 34(b)(2)(A) (documents); *see also* Fed. R. Civ.

P. 26(d)(1) (empowering the Court to authorize discovery before the Federal Rule 26(f) conference).  And, Byju always was free to argue his procedural defenses in the context of the Debtor's Expedited Discovery Motion and Plaintiffs' Contempt Motion, as he in fact did.

50.      Byju next claims the Contempt Order is manifestly unjust because the Court supposedly ruled "largely without hearing" from him and failed to consider his service and jurisdictional arguments.  Mot. at 18.  That is simply false.  As the Court correctly noted, the issues here were "raised and teed up by the parties."  June 30, 2025 Hr'g Tr. 82:20–21.  Specifically, Byju contested jurisdiction and service in his Contempt Sur-Reply filed the morning of the Show Cause Hearing.  Contempt Sur-Reply at 3–6.  The Court confirmed it had reviewed those arguments.  June 30, 2025 Hr'g Tr. 11:1–2.  Additionally, the Court heard extensive argument from Byju's counsel on those points.[6]  Only after hearing such argument did the Court rule from the bench, carefully explained its reasoning for concluding the requirements for jurisdiction and service had been satisfied.  *Id*. 82:17–83:12.

51.      Regardless, even if Byju somehow was not afforded an opportunity previously, he has "now briefed the relevant legal issues in the instant Motion for Reconsideration, and therefore, [his] contention that [he has] been denied the opportunity to fully present th[ese] issue[s] to the Court is moot."  *Dobrich v. The Indian River Sch. Dist.*, 432 F. Supp. 2d 445, 448 (D. Del. 2006).

---

[6]      *See, e.g.*, June 30, 2025 Hr'g Tr. 40:19–20 (Mr. Draper: "I'm going to talk about [Byju's] objection to jurisdiction and service."); 52:14–15 (Mr. Draper: "I'd now like to address our service and jurisdictional objections."); 53:4–6 ("We would like to set out, *fully*, the service and personal jurisdictional objections we have") (emphasis added); 76:10–79:11 (counsel contesting Plaintiffs' evidence of service and personal jurisdiction).

## <u>CONCLUSION</u>

52.     For all of the reasons, the only true injustice here would be to allow Byju to continue evading his discovery obligations and to withhold information about the whereabouts of the $533 million Alpha Funds.  The ongoing harm from that injustice falls squarely—and exclusively—on Plaintiffs.  Byju's Motion fails to satisfy the high bar on a motion for reconsideration and as such it should be swiftly dismissed with an admonition that discovery is to continue.

WHEREFORE, Plaintiffs respectfully request that the Court promptly deny the Motion and leave the Contempt Order undisturbed.

Dated: Wilmington, Delaware
   July 28, 2025

**YOUNG CONAWAY STARGATT & TAYLOR, LLP**

/s/ *Kenneth J. Enos*
Robert S. Brady (Del. No. 2847)
Kenneth J. Enos (Del. No. 4544)
Jared W. Kochenash (Del. No. 6557)
Timothy R. Powell (Del. No. 6894)
1000 North King Street
Wilmington, Delaware 19801
Telephone: (302) 571-6600
Facsimile: (302) 571-1253
rbrady@ycst.com
kenos@ycst.com
jkochenash@ycst.com
tpowell@ycst.com

**QUINN EMANUEL URQUHART & SULLIVAN, LLP**
Benjamin Finestone (admitted pro hac vice)
Kate Finestone (admitted pro hac vice)
Jianjian Ye (admitted pro hac vice)
Jordan Nakdimon (admitted pro hac vice)
295 Fifth Ave.
New York, New York 10016
Tel.: (212) 849 7000
benjaminfinestone@quinnemanuel.com
kateFinestone@quinnemanuel.com
jianjianye@quinnemanuel.com
jordannakdimon@quinnemanuel.com

*Counsel for Debtor, BYJU's Alpha, Inc.*

Dated: July 28, 2025
Wilmington, Delaware

/s/ *Laura Davis Jones*
**PACHULSKI STANG ZIEHL & JONES
LLP**

Laura Davis Jones (DE Bar No. 2436)
Peter J. Keane (DE Bar No. 5503)
919 North Market Street, 17th Floor
P.O. Box 8705
Wilmington, Delaware 19801
Telephone:    (302) 652-4100
Email:    ljones@pszjlaw.com
        pkeane@pszjlaw.com

**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
Patrick J. Nash Jr., P.C. (admitted *pro hac vice*)
Richard U.S. Howell, P.C. (admitted *pro hac vice*)
Ravi Subramanian Shankar (admitted *pro hac vice*)
333 West Wolf Point Plaza
Chicago, Illinois 60654
Telephone:    (312) 862-2000
Facsimile:    (312) 862-2200
Email:    patrick.nash@kirkland.com
        rhowell@kirkland.com
        ravi.shankar@kirkland.com

-and-

Brian Schartz, P.C. (admitted *pro hac vice*)
601 Lexington Avenue
New York, New York 10022
Telephone:    (212) 446-4800
Facsimile:    (212) 446-4900
Email:    brian.schartz@kirkland.com

*Counsel to GLAS Trust Company LLC*