REDACTED PUBLIC VERSION
OF DOCKET NO. 97

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | |
| | ) | |
| BYJU'S ALPHA, INC.,[1] | ) | Chapter 11 |
| | ) | |
| Debtor. | ) | Case No. 24-10140 (BLS) |
| | ) | |
| | ) | |
| BYJU'S ALPHA, INC., | ) | Adv. Pro. Case No. 25-50526 (BLS) |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| BYJU RAVEENDRAN, DIVYA GOKULNATH, | ) | |
| and ANITA KISHORE, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

**PLAINTIFFS' MOTION PURSUANT TO
FEDERAL RULE OF BANKRUPTCY PROCEDURE 7037 AND
FEDERAL RULE OF CIVIL PROCEDURE 37(b)(2)(A)(vi)
<u>FOR DEFAULT AGAINST DEFENDANT BYJU RAVEENDRAN</u>**

---

[1]    The Debtor in this chapter 11 case, along with the last four digits of the Debtor's federal tax identification number, is:  BYJU's Alpha, Inc. (4260).  The location of the Debtor's service address for purposes of this Chapter 11 Case is:  1007 N. Market Street Ste. G20 452, Wilmington, Delaware 19801.

<u>**TABLE OF CONTENTS**</u>

**Page**

PRELIMINARY STATEMENT ................................................................1

RELEVANT FACTUAL BACKGROUND................................................4

    A.    The Underlying Discovery Orders................................4

    B.    The Contempt Motion And Byju's Opposition ...................5

    C.    The Show Cause Hearing...........................................6

    D.    Raveendran's Ongoing Discovery Non-Compliance.............7

JURISDICTION AND VENUE ...............................................................9

RELIEF REQUESTED...........................................................................9

ARGUMENT .......................................................................................9

I.    The Federal Rules And Third Circuit Precedent Contemplate Default As A Sanction For Discovery Violations...........................................9

II.    Raveendran's Blatant Contempt Of This Court's Discovery Orders Satisfies All Six *Poulis* Factors. ....................................................11

    A.    Factor #1:  Raveendran's Responsibility For His Discovery Violations...............11

    B.    Factor #2:  Prejudice To Plaintiffs From Raveendran's Discovery Violations ...................12

    C.    Factor #3:  Raveendran's History Of Dilatory Conduct .......................13

    D.    Factor #4:  Raveendran's Willful And Bad Faith Conduct....................14

    E.    Factor #5:  Failure Of Existing Sanctions To Spur Compliance ..........15

    F.    Factor #6:  Merits Of Plaintiffs' Claims Against Raveendran..............16

III.    Raveendran's Discovery Violations Are Specifically Related To Plaintiffs' Claims Against Him...........................................18

IV.    This Court Should Enter An Award Of Damages. .........................19

CONCLUSION....................................................................................22

**TABLE OF AUTHORITIES**

**Cases**

*Adams v. Trs. of N.J. Brewery Employees' Pension Tr. Fund*,
    29 F.3d 863 (3d Cir. 1994) ........................................................................12, 13, 17

*Amresco Financial I LP v. Storti*,
    2000 WL 284203 (E.D. Pa. Mar. 13, 2000) ..........................................................19

*In re Asbestos Prods. Liab. Litig. (No. VI)*,
    718 F.3d 236 (3d Cir. 2013) ..................................................................................18

*Baldinger v. Ferri*,
    541 F. App'x 219 (3d Cir. 2013) ...........................................................................10

*Boards of Trs. of Operating Eng'rs Loc. 825 Welfare Fund v. Robert Silagy
Landscaping Inc.*,
    2006 WL 3308578 (D.N.J. Nov. 13, 2006) ...........................................................19

*Bortex Indus. Co. v. Fiber Optic Designs, Inc.*,
    296 F.R.D. 373 (E.D. Pa. 2013) ...........................................................................11

*Clientron Corp. v. Devon IT, Inc.*,
    894 F.3d 568 (3d Cir. 2018) .........................................................................9, 18, 19

*Comdyne I, Inc. v. Corbin*,
    908 F.2d 1142 (3d Cir. 1990) ................................................................................10

*Curtis T. Bedwell & Sons, Inc. v. Int'l Fid. Ins. Co.*,
    843 F.2d 683 (3d Cir. 1988) ..................................................................................13

*Dobin v. Taiwan Machinery Trade Center Corp. (In re Victor Intern., Inc.)*,
    97 F. Appx. 365 (3d Cir. 2004) .............................................................................17

*Empire Fin. Servs., Inc. v. Bank of N.Y. (Del.)*,
    900 A.2d 92 (Del. 2006) ........................................................................................20

*In re Feldman*,
    608 B.R. 438 (Bankr. E.D. Pa. Sept. 25, 2019) ....................................................10

*FKS Akkad Cap. GP, LLC v. JohnFK Med. Co.*,
    2022 WL 2666002 (D. Del. July 11, 2022) ..........................................................10

*Garcia v. S&F Logistics*,
    2022 WL 14228982 (E.D. Pa. Oct. 24, 2022) .......................................................16

*Gulf Aviation Services Group WLL v. Wilmington Trust Co.*,
2023 WL 9118772 (Del. Super. 2023) .................................................................. 20

*Harris v. City of Phila.*,
47 F.3d 1311 (3d Cir. 1995) ................................................................................. 9

*Hildebrand v. Allegheny Cnty.*,
923 F.3d 128 (3d Cir. 2019) ................................................................................ 15

*Hoffman v. Palace Ent.*,
621 F. App'x 112 (3d Cir. 2015) ......................................................................... 13

*Hogan v. Raymond Corp.*,
536 F. App'x 207 (3d Cir. 2013) ......................................................................... 15

*Hoxworth v. Blinder, Robinson & Co., Inc.*,
980 F.2d 912 (3d Cir. 1992) ................................................................................. 9

*Hrobuchak v. Nationwide Prop. & Cas. Ins. Co.*,
2004 WL 3335235 (M.D. Pa. July 20, 2004) ...................................................... 10

*Huertas v. City of Phila.*,
2005 WL 226149 .......................................................................................... 10, 12

*Ins. Corp. of Ir., Ltd. v. Compagnie des Bauxites de Guinee*,
456 U.S. 694 (1982) ............................................................................................ 19

*Jackson Hewitt, Inc. v. Barns Enterps., Inc.*,
535 F. App'x 108 (3d Cir. 2013) ......................................................................... 10

*Jordan v. Murin*,
2020 WL 357824 (W.D. Pa. June 1, 2020) .......................................................... 10

*Kuhn Const. Co. v. Ocean & Coastal Consultants, Inc.*,
723 F. Supp. 2d 676 (D. Del. 2010) ..................................................................... 20

*Mindek v. Rigatti*,
964 F.2d 1369 (3d Cir. 1992) .............................................................................. 16

*Montana v. Cnty. of Cape May Bd. of Freeholders*,
2013 WL 11233748 (D.N.J. Sept. 20, 2013) ......................................................... 9

*Nagy v. Bistricer*,
770 A.2d 43 (Del. Ch. 2000) ............................................................................... 20

*Northstar Fin. Cos. v. Nocerino*,
2013 WL 6061349 (E.D. Pa. Nov. 18, 2013) ........................... 12, 13, 14, 16, 17

*Poulis v. State Farm Fire & Cas. Co.*,
    747 F.2d 863 (3d Cir. 1984).........................................................3, 10, 11, 13, 15, 16, 18

*SEC v. Schrichte*,
    2024 WL 5494393 (E.D. Pa. Feb. 6, 2024) ...........................................................10

*In re Signature Apparel Grp. LLC*,
    577 B.R. 54 (Bankr. S.D.N.Y. 2017)....................................................................20

*Strassburger v. Earley*,
    752 A.2d 557 (Del. Ch. 2000)..............................................................................19

*Thorpe v. Wilmington Hous. Auth.*,
    262 F.R.D. 421 (D. Del. 2009) .............................................................................22

*Transportes Aereos De Angola v. Jet Traders Inv. Corp.*,
    624 F. Supp. 264 (D. Del. 1985)...........................................................................19

*U.S. v. Moser*,
    168 F.R.D. 171 (M.D. Pa. 1996), *aff'd*, 111 F.3d 128 (3d Cir. 1997) ...................15

*U.S. ex rel. Constr. Hardware, Inc. v. Patterson*,
    2014 WL 2611178 (E.D. Pa. June 10, 2014) ..................................................12, 13

*U.S. v. Brace*,
    1 F.4th 137 (3d Cir. 2021) ....................................................................................14

*In re Victor Int'l, Inc.*,
    278 B.R. 67 (Bankr. D.N.J. 2002) ........................................................................10

*In re Victor Intern.*
    97 F. App'x 365 (3d Cir. 2004) .......................................................................17, 21

## Rules / Statutes

11 U.S.C. § 105(a) .........................................................................................................9

28 U.S.C. § 157 ..............................................................................................................9

28 U.S.C. § 157(b) .........................................................................................................9

28 U.S.C. § 1334 ............................................................................................................9

28 U.S.C. § 1408 ............................................................................................................9

28 U.S.C. § 1409 ............................................................................................................9

Fed. R. Bankr. P. 7012(a)(1)..........................................................................................8

Fed. R. Bankr. P. 7037 .................................................................................................1, 9

Fed. R. Civ. P. 12(b)(2) ...................................................................................................8

Fed. R. Civ. P. 12(b)(5) ...................................................................................................8

Fed. R. Civ. P. 12(b)(6) ...................................................................................................8

Fed. R. Civ. P. 37(b) ........................................................................................................9

Fed. R. Civ. P. 37(b)(2)(A)(vi) .....................................................................................1, 9

Fed. R. Civ. P. 55(b)(2) ..................................................................................................19

Plaintiffs BYJU's Alpha, Inc. (the "Debtor") and GLAS Trust Company LLC ("GLAS") file this motion (the "Motion"), pursuant to Federal Rule of Civil Procedure ("Rule") 37(b)(2)(A)(vi), made applicable herein by Federal Rule of Bankruptcy Procedure 7037, for an order of default judgment and entry of an award of damages, substantially in the form attached hereto as Exhibit A, against defendant Byju Raveendran ("Raveendran") for his ongoing failure to comply with this Court's discovery orders, and respectfully state as follows:

## PRELIMINARY STATEMENT[2]

At the conclusion of the Show Cause Hearing on June 30, 2025, the Court held Raveendran in contempt, but expressed "hope that [he] will take seriously his responsibilities in these proceedings and that he will participate promptly and meaningfully in the discovery process." June 30, 2025 Hr'g Tr. 85:21–24.  The Court entered a $10,000 daily sanction beginning July 1, 2025 and awarded Plaintiffs' fees and expenses for prosecuting the Contempt Motion, but stopped short of imposing a "trigger for default judgment." *Id.* at 86:11.  The Court heard Plaintiffs' concerns "loud and clear," but concluded the request was "premature," a "step that is beyond where the Court needs to go today." *Id.*

Six weeks later, Plaintiffs' request is ripe.  Over the last 42 days, Raveendran has not purged his contempt in the slightest.  He continues to refuse to answer the "very basic and cogent questions" (*id.* 84:12–15) that the Debtor served on May 9, 2025.  Nor has Raveendran produced a single additional document to ameliorate his "not even remotely satisfactory" production (*id.* 83:22–25)—not one; his current document production total remains four.  When asked directly by Debtor's counsel no fewer than four times over the last six weeks, Raveendran's counsel has refused to commit that Raveendran will *ever* purge his contempt.  *See* pp. 7–8, *infra*.

---

[2] Capitalized terms not otherwise defined herein have the meanings given to them in the *Complaint* [Adv. D.I. 1 (redacted) Adv. D.I. 2 (sealed)].

Case 25-50526-BLS    Doc 102    Filed 08/14/25    Page 8 of 42

Meanwhile, the danger animating the Debtor's original expedited discovery motion remains. The whereabouts of the Alpha Funds continue to be an alarming mystery. And to avoid disclosing that information, Raveendran has made a mockery of the U.S. legal system, selectively participating in this litigation. When it suits him, he files one declaration after another to advance his public narrative. When it does not, he refuses to provide truthful testimony and documents, continuing to conceal what happened to $533 million.

Worse still, Raveendran has weaponized his asymmetrical provision of information. Raveendran has signed and filed three declarations in this Chapter 11 Case.[3] In his most recent declaration, made as of July 25, 2025, Raveendran makes significant factual assertions that he strategically deploys to argue for dismissal of the Debtor's Complaint.[4] Yet he simultaneously refuses to allow anyone to test those assertions. For instance, Raveendran disclaims any fiduciary relationship with the Debtor, the very first element of the Debtor's breach of fiduciary duties claim (Count II). July 2025 Raveendran Decl. ¶ 16 ("I am not, and have never been, an officer or employee of Debtor Byju's Alpha, Inc."). He feigns a lack of knowledge about why he signed the Transfer Agreement as "CEO," then challenges service and jurisdiction under the Delaware Consent Statute. *Id.* ¶ 18 ("I do not know why the word 'CEO' appears there."). And, Raveendran contradicts his brother Riju's sworn testimony (*see* Compl. ¶¶ 41, 63, 99) by disputing that he ever personally directed Riju's actions as the Debtor's director—all so Raveendran can deny liability for aiding and abetting Riju's fiduciary breaches (Count I). July 2025 Raveendran Decl. ¶¶ 10–13.

Given all that has transpired, any sanction short of default judgment for his discovery

---

[3]  *BYJU's Alpha, Inc. v. Raveendran*, Adv. Pro. No. 25-50526 (Bankr. D. Del.) (Adv. D.I. 55, 79); *BYJU's Alpha, Inc. v. Camshaft Cap. Fund, LP*, Adv. Pro. No. 24-50013 (Bankr. D. Del.) (the "Camshaft Adversary") (D.I. 371).

[4]  *Declaration of Defendant Byju Raveendran in Support of Motion to Dismiss*, *BYJU's Alpha, Inc. v. Raveendran*, Adv. Pro. No. 25-50526 (Bankr. D. Del.) (Adv. D.I. 79) (the "July 2025 Raveendran Decl.").

2

violations will only reward Raveendran and prejudice Plaintiffs. *First*, Raveendran already defeated the purpose of the Debtor's *expedited* Discovery Motion. *Second*, monetary sanctions have proven inadequate to coerce compliance. The accumulated daily sanctions ($420,000 and counting) plus Plaintiffs' pending application for over half a million dollars in fees have proven inadequate. They have not even been enough to prompt a commitment from Raveendran to purge his contempt. *Third*, Raveendran's conduct deprived Plaintiffs of the right to fairly prosecute their claims. Every procedural and substantive objection Raveendran has made raises questions of fact that are the subject of existing—deficiently-answered, if not unanswered—discovery. As a result, Raveendran is putting forward unsubstantiated statements free from the scrutiny of discovery to obtain a judgment in his favor. *Lastly*, Raveendran's refusal to comply with discovery has pervaded the entirety of this action. Ultimately, because he is unable to lawfully justify his transfer of the Debtor's most valuable asset for no consideration whatsoever, all Raveendran can do is stall for time. That is the sum total of his defense strategy—delay.

In the seminal *Poulis* decision, the Third Circuit empowered lower courts to enter judgment against a party based on discovery non-compliance that pales in comparison to the "strategic and patterned failure to provide meaningful, substantive responses" that the Court has seen for far too long. June 30, 2025 Hr'g Tr. 84:12–15. And almost a full year ago, the Court stated in a related context that it "will not hesitate to default a party that doesn't participate" in discovery. Aug. 21, 2024 Hr'g Tr. 43:1–5, *In re Epic! Creations, Inc.*, Case No. 24-11161 (Bankr. D. Del.). Raveendran has had every opportunity and warning to participate promptly and meaningfully in the discovery process, but has decided not to. Today, a default judgment against Raveendran is not only well warranted but needed, and this Motion should be granted.

3

## RELEVANT FACTUAL BACKGROUND

Plaintiffs incorporate by reference paragraphs 6 through 26 of the *Motion to Hold Byju Raveendran in Contempt of Court for Failure to Comply With the Court's Orders and Request for Civil Sanctions* [Adv. D.I. 45] (the "Contempt Motion") and will not rehash the full circumstances leading up to the filing of the Contempt Motion.

### A.    The Underlying Discovery Orders

The Debtor commenced this adversary proceeding on April 9, 2025.  Adv. D.I. 1–2.  The Summons was issued the same day [Adv. D.I. 3] and the Debtor effected service on Raveendran through the Delaware Officer Consent Statute the very next day [Adv. D.I. 6], *see* Contempt Mot. ¶ 36.  Later, on May 14, 2025, the Debtor also served Raveendran in the United Arab Emirates as a precautionary measure, removing any doubt about service.  Adv. D.I. 35–36.

On April 11, 2025, the Debtor shared its draft discovery requests with Raveendran, offering to discuss any "reasonable comments" he had.  Adv. D.I. 7-4.  Among other narrowly-tailored topics, the Debtor sought discovery into the fraudulent transfers that have dominated this bankruptcy along with Raveendran's role in those transfers and with the Debtor, including the Debtor's "books and records."  Adv. D.I. 7 ¶ 28.

Having received no response, on April 18, 2025, the Debtor moved for expedited discovery (the "Discovery Motion").  *Id.*  Three days later, Raveendran objected.  Adv. D.I. 9.  He challenged service and the timing of discovery *but not* personal jurisdiction.  *Id.* at 1–2.

Raveendran failed to appear at the May 7, 2025 hearing on the Discovery Motion.  The Court granted the Discovery Motion, finding service proper for purposes of the motion while preserving Raveendran's later right to raise the issue on a Rule 12 motion to dismiss.  May 7, 2025 Hr'g Tr. 42:2–14.  Two days later, the Court entered its Discovery Order, setting May 23 as the written response deadline and May 30 as the document production deadline, and further scheduling a

discovery status conference for May 27, 2025.  Adv. D.I. 25 (the "<u>Discovery Order</u>") ¶¶ 3–4, 7.

Rather than comply with his first deadline, on May 23, Raveendran sought a 30-day reprieve on

the basis that he "has been unable to find counsel."  Adv. D.I. 29.  That "additional time" was

required, according to Raveendran, so he could "provide information in response to discovery the

Court ordered."  *Id.*  As Raveendran was promising compliance, he did not challenge service and,

for a second time, also did not challenge personal jurisdiction.

Raveendran elected not to appear at the May 27 conference to argue his extension request.

The Court denied the full extension, but, with the Debtor's consent, extended Raveendran's

deadlines by one week.  Adv. D.I. 34 (the "<u>Extension Order</u>"); May 27, 2025 Hr'g Tr. 18:13–19:3.

Raveendran missed the extended deadlines too.  *See* Contempt Mot. ¶ 21.

## B.      <u>The Contempt Motion And Byju's Opposition</u>

The Court held yet another discovery conference on June 9, 2025.  This time, Raveendran

appeared through counsel and a non-attorney advisor.  *See generally* June 9, 2025 Hr'g Tr.  Though

challenging service and jurisdiction, *id.* 13:2–3, 14:16–19, Raveendran's advisor promised the

Court that "[Raveendran] intends to comply with the discovery."  *Id.* 14:13–14.  But that

compliance had not materialized, and the Court granted Plaintiffs' request and scheduled an

evidentiary hearing on an Order to Show Cause, later set for June 30, 2025 (the "<u>Show Cause</u>

<u>Hearing</u>").  *Id.* 24:11–16; Adv. D.I. 47 ("<u>OSC</u>").  The Court ordered Raveendran's appearance in

person or virtually upon a showing of "good cause."  OSC ¶¶ 1–2.

Over the next week, on each of June 12, 16, and 17, Raveendran's advisor repeatedly

emailed the Court, promising discovery compliance.  *See* Finestone Decl. Exs. 1–3.  According to

the advisor, Raveendran was "working diligently to provide responses" (*Id.* Ex 1) and "resolve all

disclosure issues," consistent with his "intent to respect the Court['s] wishes and Orders"  *Id.* Ex.

2.

Also on June 17, Plaintiffs filed their Contempt Motion.  Adv. D.I. 45.

On June 24, the Court held yet another discovery conference.  Raveendran, through counsel, represented—for the sixth time—that he was "planning on submitting [his] discovery answers [.]"  June 24, 2025 Hr'g Tr. 11:8–10.

Two days later, on June 26, Raveendran filed an opposition to the Contempt Motion [Adv. D.I. 53] (the "Contempt Opposition"), in which he primarily argued that the Court should not find him in contempt because he "is complying [] with this Court's discovery order."  *Id.* at 2.  While the Contempt Opposition also stated that Raveendran "contests the Court's jurisdiction over him," he expressly took the position that these issues did not have to be decided—"this [Contempt] Motion is not the vehicle for the Court to decide that question."  *Id.* at 7.  Raveendran would later change course, challenging both service and jurisdiction.  *See* Adv. D.I. 62-1.

By the time of the Show Cause Hearing on June 30, 2025, Raveendran had produced a grand total of four documents, all of which were public—three newspaper articles and stale financials of the Debtor's former ultimate corporate parent.  Raveendran's written answers were no better; they were evasive, incomplete, and implausibly ignorant, disclosing no meaningful information about the Alpha Funds.  *See, e.g.*, Adv. D.I. 57 ¶¶ 10–17.

### C.    The Show Cause Hearing

Raveendran chose not to attend, testify, or otherwise show cause why he should not be held in contempt.  While he did not participate in the hearing personally, his counsel presented oral argument on the issues of service and the Court's personal jurisdiction over Raveendran.  *See, e.g.*, June 30, 2025 Hr'g Tr. 52:21–56:4.  They also defended Raveendran's discovery compliance.  *See, e.g., id.* 48:8 ("He has complied with the order.").

At the conclusion of argument and admission of exhibits, the Court noted, "as a threshold matter" that Raveendran's failure to appear at the hearing did not comply with the OSC.  June 30,

2025 Hr'g Tr. 81:4–8. Citing the "lengthy body of case law within the Third Circuit," the Court found that (i) a valid Court order existed, (ii) Raveendran "certainly" had knowledge of the order, and (iii) Raveendran "has disobeyed that order." *Id.* 81:15–23. His last-minute, superficial efforts to provide discovery did not constitute compliance; instead, they were a "fig leaf" intended to create the appearance of compliance in the two days leading up to the Show Cause Hearing. *Id.* 83:22–84:2. Thus, the Court held Raveendran in contempt. *Id.* 81:9–12.

As to the issue of service, the Court concluded that "the record reflects a sufficient basis for finding that service has indeed properly occurred here." *Id.* 83:8–9. As to personal jurisdiction, the Court noted that "the issue has been raised and teed up by the parties" and based on the evidence before the Court, it had "personal jurisdiction in order to enter the relief that's being requested today." *Id.* 82:17–21, 83:5–6.

On July 7, 2025, the Court formally entered its contempt order. Adv. D.I. 66 (the "Contempt Order"). The Court directed Raveendran to comply with discovery and, among other things, remit to the Clerk of Court $10,000 per day until his contempt has been purged and pay Plaintiffs' fees and expenses incurred in prosecuting the Contempt Motion. *Id.* ¶¶ 2, 4–5. The Court also directed that "Raveendran is ordered to immediately comply with the Orders." *Id.* ¶ 3.

D.    **Raveendran's Ongoing Discovery Non-Compliance**

Raveendran has made no effort to purge his contempt over the last 42 days, despite the accumulation of hundreds of thousands of dollars in sanctions. Nor has he provided any meaningful indication of his intent or willingness to comply with his discovery obligations, despite the Debtor's repeated requests for an update.

Specifically, on July 3, 2025, the Debtor asked Raveendran (through counsel): "does Mr.

Raveendran intend to purge his contempt?" Finestone Decl. Ex. 4.[5] No response. Exactly one week later, during a Rule 26(f) call, Raveendran's counsel dodged the question again. He said: "I will provide you with an update as soon as I have it." Within hours, the Debtor asked once more "whether Byju Raveendran intends to purge his contempt." *Id.* Ex. 5. When Raveendran's counsel finally answered nearly two weeks later, that response too was vacuous: "We will provide you with an update when we have an answer to whether and how Mr. Raveendran will be purging his contempt." *Id.* Ex. 6 at 1. As its excuse, counsel cited Raveendran's renewed challenge to jurisdiction, *see id.* at 1-4, an issue that had already been briefed, argued, and resolved. Contempt Order ¶ 1 ("This Court has personal jurisdiction over Byju Raveendran[.]"). Another two weeks went by without any update, at which point, on Wednesday, August 6, 2025, the Debtor asked for a *fourth* time: "does your client plan on purging his contempt and complying with this Court's orders?" *Id.* Ex. 7 at 2. The Debtor requested an answer by end of week, but no answer came.

Rather than engage, Raveendran continues to delay. He has been rearguing decided procedural questions, all in a transparent effort to find another excuse for his non-compliance. On July 14-15, 2025, Raveendran moved to have this Court reconsider its Contempt Order, arguing the issues of service for a third time and personal jurisdiction for a second. Adv. D.I. 69–70. Then, on July 25-26, 2025, Raveendran filed a motion to dismiss that was over two months late (as his response deadline was May 9, 2025, *see* Fed. R. Bankr. P. 7012(a)(1)). Adv. D.I. 77. In addition, while refusing to provide discovery, Raveendran filed a self-serving declaration, as noted, so that he can attempt to obtain a judgment in his favor under Rule 12(b)(2) and 12(b)(5)-(6). Adv. D.I. 79. In total, Raveendran has spent more time fighting about discovery than complying.

---

[5]   *See Declaration of Benjamin I. Finestone in Support of Plaintiffs' Motion Pursuant to Federal Rule of Bankruptcy Procedure 7037 and Federal Rule of Civil Procedure 37(b)(2)(A)(vi) for Default Against Defendant Byju Raveendran* (the "Finestone Declaration"), filed contemporaneously herewith.

## JURISDICTION AND VENUE

This Court has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b).  Venue is proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409.  The predicates for the relief requested in this Motion are Bankruptcy Rule 7037, Rule 37(b)(2)(A)(vi), and Section 105(a) of the Bankruptcy Code.

## RELIEF REQUESTED

By this Motion, Plaintiffs request that the Court enter an order, substantially in the form attached hereto as Exhibit A, for default judgment and an award of damages against Raveendran on all five claims asserted against him in the Complaint—Counts I-II and IV-VI.

## ARGUMENT

I.    **The Federal Rules And Third Circuit Precedent Contemplate Default As A Sanction For Discovery Violations.**

Federal Rule 37(b) provides that, "[i]f a party … fails to obey an order to provide or permit discovery, … the court where the action is pending may issue further just orders," including "rendering a default judgment against the disobedient party." Fed. R. Civ. P. 37(b)(2)(A)(vi).  "[T]he decision to impose sanctions is generally entrusted to the discretion of the district court." *Clientron Corp. v. Devon IT, Inc.*, 894 F.3d 568, 580 (3d Cir. 2018) (internal quotations and citation omitted); *see also Harris v. City of Phila.*, 47 F.3d 1311, 1330 (3d Cir. 1995) (court's discretion to impose discovery sanctions is "broad").

Thus, "a default may be rendered against a party for not complying with a discovery order." *Montana v. Cnty. of Cape May Bd. of Freeholders*, 2013 WL 11233748, at *7 (D.N.J. Sept. 20, 2013) (citing *Hoxworth v. Blinder, Robinson & Co., Inc.*, 980 F.2d 912, 918–19 (3d Cir. 1992), *abrogated on other grounds by Morgan v. Sundance, Inc.*, 596 U.S. 411 (2022)).  The Third Circuit has explicitly recognized that material sanctions, up to default judgment, are even

9

appropriate when there is "no contumacious behavior," unlike here. *Poulis v. State Farm Fire & Cas. Co.*, 747 F.2d 863, 870 (3d Cir. 1984). In *Poulis*, the Third Circuit identified six factors for courts in this Circuit to consider in dismissing claims: (i) the extent of the party's personal responsibility; (ii) the prejudice to the adversary caused by the failure to meet scheduling orders and respond to discovery; (iii) a history of dilatoriness; (iv) whether the conduct of the party or the attorney was willful or in bad faith; (v) the effectiveness of sanctions other than dismissal, which entails an analysis of alternatives; and (vi) the meritoriousness of the claim or defense. *Id.* at 868. No single factor is dispositive, and the Court "need not find all *Poulis* factors weigh in favor" of default judgment. *Huertas v. City of Phila.*, 2005 WL 226149, at *6.

Indeed, only two of six factors were satisfied in *Poulis*, as the plaintiff there solely failed to answer interrogatories and filed its pretrial statement late, but unlike here, had *not* engaged in "contumacious behavior." *Poulis*, 747 F.2d at 868–70. Yet, the Third Circuit affirmed dismissal of the claims there. *Id.* Consistent with the low threshold set by the Third Circuit in *Poulis*, it is not uncommon for courts in this Circuit to apply the *Poulis* factors to enter default judgment as a sanction for a party's failure to comply with discovery orders and related obligations.[6]

---

[6]    *See, e.g., Baldinger v. Ferri*, 541 F. App'x 219, 220 (3d Cir. 2013) (*per curiam*) (affirming district court's entry of default judgment where defendant "did not fully comply with his discovery obligations"); *Jackson Hewitt, Inc. v. Barns Enterps., Inc.*, 535 F. App'x 108, 111–12 (3d Cir. 2013) (*per curiam*) (affirming entry of default judgment based on defendants' failure to comply with scheduling order); *Comdyne I, Inc. v. Corbin*, 908 F.2d 1142, 1149 (3d Cir. 1990) (affirming default judgment where defendants "continued to remain intransigent in their defiance of [the court's] orders"); *SEC v. Schrichte*, 2024 WL 5494393, at *1 n.1 (E.D. Pa. Feb. 6, 2024) ("[T]his Court considered each of the so-called *Poulis* factors … and determined that these factors weighed in favor of entry of default against Defendant Schrichte."); *FKS Akkad Cap. GP, LLC v. JohnFK Med. Co.*, 2022 WL 2666002, at *2 (D. Del. July 11, 2022) (finding entry of default "warranted" where "Defendants have failed to respond to Plaintiffs' discovery request" and "Defendants' failure to engage … has inhibited the progress of this case"); *Jordan v. Murin*, 2020 WL 357824, at *4 (W.D. Pa. June 1, 2020) (recommending entry of default where defendant's "noncompliance [with discovery orders] has materially delayed this proceeding and [plaintiff's] ability to advance his claim"); *Hrobuchak v. Nationwide Prop. & Cas. Ins. Co.*, 2004 WL 3335235, at *4 (M.D. Pa. July 20, 2004) (finding default "particularly suitable" where defendant failed "to cooperate in discovery with the plaintiff," "to follow court orders," and "to appear at the hearing"); *In re Feldman*, 608 B.R. 438 (Bankr. E.D. Pa. Sept. 25, 2019) (finding default appropriate because, "given the Defendant's history of flouting court orders, there is no indication that a lesser sanction will have an impact"); *In re Victor Int'l, Inc.*,

Here, all six *Poulis* factors are met—the Court should enter a default against Raveendran, whose contempt for this Court's discovery orders is flagrant and prejudicial to Plaintiffs.

## II.    Raveendran's Blatant Contempt Of This Court's Discovery Orders Satisfies All Six *Poulis* Factors.

All six *Poulis* factors are met here, providing a far more compelling record for default judgment than in *Poulis* itself: *first*, Raveendran, both while acting *pro se* and while represented by counsel, refuses to participate in Court-ordered discovery; *second*, there has been material prejudice to Plaintiffs, whose reasons for seeking expedited discovery have not dissipated, and in fact have only been underscored; *third*, Raveendran has displayed a remarkable level of dilatory behavior in these cases; *fourth*, Raveendran's actions have undoubtedly been taken in bad faith; *fifth*, Raveendran has shown that the Court's sanctions—which include monetary sanctions (none of which have been paid)—are insufficient to coerce him to purge his contempt; and *sixth*, the Court has already found Raveendran's cohorts liable on the same and similar claims relating to the exact same transactions.  If ever a case warranted a default sanction, this is it.

### A.    Factor #1:  Raveendran's Responsibility For His Discovery Violations

The first *Poulis* factor, which requires the Court to "consider the extent to which the party itself is responsible for the misconduct," as opposed to its counsel, *Bortex Indus. Co. v. Fiber Optic Designs, Inc.*, 296 F.R.D. 373, 384 (E.D. Pa. 2013), favors default.  Raveendran cannot hide behind counsel, particularly when he failed to comply with any of his Court-ordered discovery deadlines while representing himself *pro se*.  Indeed, there is no basis to suggest that anyone but Raveendran is responsible for his contempt of the Court's orders.  To the contrary, as the Court found, the record here "certainly establishes that Mr. Raveendran had knowledge" of the Discovery Order,

---

278 B.R. 67, 76 (Bankr. D.N.J. 2002) (describing court's decision to enter default based on defendant's "personal responsibility for the contumacious conduct," "bad faith," and "history of foot-dragging, stonewalling and [refusal] to comply with this Court's Orders").

and that "Mr. Raveendran has disobeyed that order."  June 30, 2025 Hr'g Tr. 81:20–23.

To be sure, "[t]his is not the sympathetic situation of an innocent client suffering the sanction of dismissal due to dilatory counsel whom it hired to represent it."  *Adams v. Trs. of N.J. Brewery Employees' Pension Tr. Fund*, 29 F.3d 863, 873 (3d Cir. 1994).  There can be no doubt that Raveendran, who was once listed on Forbes's World Billionaires List, is a sophisticated (albeit, unscrupulous) party.  He cannot blame his noncompliance with Court orders on reliance on counsel or naivete.  Furthermore, Raveendran has chosen not to pay the sanctions he owes to the Clerk of Court under the Contempt Order.  This failure to pay further "reflects a personal decision to defy court Orders."  *Northstar Fin. Cos. v. Nocerino*, 2013 WL 6061349, at *7 (E.D. Pa. Nov. 18, 2013).  This first factor weighs strongly in favor of default judgment.

## B.    Factor #2:  Prejudice To Plaintiffs From Raveendran's Discovery Violations

Under the second factor, "[c]ourts look for evidence of extra costs, repeated delays, and the need to file additional motions in response to the abusive behavior of the responsible party."  *Huertas*, 2005 WL 226149, at *3.  Courts also consider "conduct that hinders a party's ability to conduct discovery, develop the factual record, and reach a speedy and fair resolution to the litigation."  *Northstar*, 2013 WL 6061349, at *7 (cleaned-up).  "Irremediable harm" is not required.  *U.S. ex rel. Constr. Hardware, Inc. v. Patterson*, 2014 WL 2611178, at *4 (E.D. Pa. June 10, 2014) (cleaned-up).

Plaintiffs have suffered significant, tangible prejudice from Raveendran's discovery violations.  The Debtor sought *expedited* discovery from Raveendran for a reason—as the Debtor's former CEO and founder and managing director of T&L, he undoubtedly has material knowledge and documents concerning the Alpha Funds, likely including where the money is today.  Adv. D.I. 7 ¶¶ 24–26.  The Court in fact found that cause existed for expedited discovery.  May 7, 2025 Hr'g Tr. 41:16–43:12.  Nearly three months later, Raveendran still refuses to provide discovery.  He

12

has, however, successfully frustrated the purpose of seeking *expedited* discovery.

Unlike the Alpha Funds' location, what *is* known is that Plaintiffs already have "expended significant time and money filing … motions in response to Defendants' noncompliance, and preparing for and attending multiple hearings to obtain information that is clearly discoverable." *Northstar*, 2013 WL 6061349, at *7; *see also Hoffman v. Palace Ent.*, 621 F. App'x 112, 115 (3d Cir. 2015) (finding prejudice where moving party "drafted numerous letters and motions to obtain discovery"); *Curtis T. Bedwell & Sons, Inc. v. Int'l Fid. Ins. Co.*, 843 F.2d 683, 693 (3d Cir. 1988) (affirming district court's finding that "discovery abuses 'severely prejudiced' the appellees by depriving them of important information and by forcing appellees to expend costs in obtaining court orders to force [compliance] with discovery requests"). Here, there have been five discovery hearings, and plenty more motion practice. *See* Adv. D.I. 7, 9, 14, 29, 45–46, 53, 57–58, 62, 69–70, 81–82. In connection with just one of those motions, namely, Plaintiffs' prosecution of the Contempt Motion, the Debtor and GLAS submitted bills of costs totaling more than $500,000 combined, and those costs only continue to mount. Adv. D.I. 84–85.

The second *Poulis* factor often "weighs strongly" in favor of default judgment, and does so here. *Patterson*, 2014 WL 2611178, at *5; *see also Northstar*, 2013 WL 6061349, at *7 ("Evidence of prejudice to an adversary bears substantial weight in support of a dismissal or default judgment.") (cleaned-up).

### C.    Factor #3:  Raveendran's History Of Dilatory Conduct

"Extensive or repeated delay or delinquency constitutes a history of dilatoriness, such as consistent non-response to interrogatories, or consistent tardiness in complying with court orders." *Adams*, 29 F.3d at 874. That describes Raveendran's conduct throughout this litigation to a "T." The Court summed it up best: "[T]he failure to perform basic discovery responses and participation in litigation across several of these cases has been breathtaking. I have seen a lot, but I have not

seen strategic and patterned failure to provide meaningful, substantive responses to very basic and cogent questions that have gone on for more than a year." June 30, 2025 Hr'g Tr. 84:9–15; *see also id.* 84:8–9 (observing a "consistent effort to delay and obfuscate"). Raveendran has known about the Debtor's discovery requests for four months, missed his original and extended deadlines despite promises to comply, and ignored the Court's Contempt Order for the last six weeks. This third factor too weighs in favor of default.

### D.      Factor #4:  Raveendran's Willful And Bad Faith Conduct

Undoubtedly, Raveendran's conduct has been willful and in bad faith, where he has repeatedly flouted the Court's discovery Orders and selectively participated in this litigation.

Of course, Raveendran has already been held in contempt for his failure to comply with the Discovery Order and the subsequent Extension Order. His interrogatory responses and document productions were not only untimely, but were found by the Court to be "evasive and incomplete." June 30, 2025 Hr'g Tr. 83:19. In addition, Raveendran failed to comply with the Court's OSC, which required him to appear in person unless excused for "good cause." *See id.* 80:6–22, 81:4–8  Though Raveendran attempted to demonstrate "good cause," *see* Adv. D.I. 55, the Court was "not satisfied with the sufficiency of [his] explanation." June 30, 2025 Hr'g Tr. 80:23–24. It is "hard to classify" the "repeated flouting of court rules as anything" other than bad faith conduct. *U.S. v. Brace*, 1 F.4th 137, 144 (3d Cir. 2021).

Raveendran's selective participation in this litigation underscores his willfulness and bad faith. *See Northstar*, 2013 WL 6061349, at *7 (a party's conduct is willful or in bad faith when it involves "intentional or self-serving behavior"). Raveendran has no problem filing declarations and seeking favorable rulings when it may help his legal defense, but flatly refuses to engage in discovery when doing so could undermine his one-sided, self-serving assertions. The fourth *Poulis* factor weighs heavily in favor of default.

To be sure, Raveendran clinging to his service and jurisdiction objections does not change his complete lack of any legitimate explanation for his conduct.  In fact, those defenses underscore Raveendran's contemptuous refusal to accept the consequences of the Court's orders.  ***First***, the Court's Contempt Order is unstayed and binding upon Raveendran; he is obligated to comply.  *See U.S. v. Moser*, 168 F.R.D. 171, 174 (M.D. Pa. 1996), *aff'd*, 111 F.3d 128 (3d Cir. 1997) (entering default judgment against defendants for failing to comply with discovery orders, notwithstanding "their view that they [were] not subject to the jurisdiction of this Court").  ***Second***, the Court afforded Raveendran extensive due process.  His defenses were fully briefed and argued.  ***Third***, as laid out in Plaintiffs' extensive briefing on these issues, *see, e.g.*, Adv. D.I. 7, 14, 45, 57, 81, 93, Raveendran's procedural defenses are red herrings that suffer from numerous legal and factual flaws.  *Fourth*, for weeks, Raveendran repeatedly promised compliance with the Court's orders notwithstanding his procedural objections, effectively confirming *post hoc* that those promises were hollow.  *See* Factual Background §§ A–C.  ***Finally***, even if the Court were to find a *possibly* justifiable basis for Raveendran to disobey its orders (it should not), Raveendran's bad faith is "merely one factor to consider" when imposing default judgment.  *Hogan v. Raymond Corp.*, 536 F. App'x 207, 211–12 (3d Cir. 2013).  In sum, Raveendran's defenses neither negate his bad faith conduct nor warrant any sanction less than default judgment.

### E.      Factor #5:  Failure Of Existing Sanctions To Spur Compliance

While a "district court must consider alternative sanctions before" default judgment. *Hildebrand v. Allegheny Cnty.*, 923 F.3d 128, 136 (3d Cir. 2019), that is just what the Court has done.  Since July 1, 2025, Raveendran has accumulated nearly a half-a-million dollars in fines owed to the Court.  With Plaintiffs' requested fees and expenses included, *see* Adv. D.I. 84–85, his accumulated sanctions approach $1 million.  The Court "[held] out hope" those fines would compel Raveendran's compliance.  June 30, 2025 Hr'g Tr. 85:21–24.  They have not.

Unfortunately, it is hardly surprising that monetary sanctions have proven insufficient to persuade Raveendran to participate in court-ordered discovery given his residence abroad. Much like his brother,[7] Raveendran lives abroad and has no apparent intention of appearing in the United States or ever satisfying his financial penalties. *See* Adv. D.I. 55 ¶ 3 (June 26, 2025 Declaration of Byju Raveendran) (declining to appear at Show Cause Hearing, despite Court order, because he is "busy"); Adv. D.I. 79 ¶¶ 2–8 (July 25, 2025 Declaration of Byju Raveendran) (detailing his purported lack of connections to the United States). He is using his foreign residence to blatantly ignore the Court's authority over him.

Moreover, Raveendran's misbehavior has "persisted for numerous months," and there is "no reason to expect a change in [] conduct moving forward" from the imposition of further sanctions short of default judgment. *Garcia v. S&F Logistics*, 2022 WL 14228982, at *5 (E.D. Pa. Oct. 24, 2022); *see also Mindek v. Rigatti*, 964 F.2d 1369, 1370 (3d Cir. 1992) (dismissal of a complaint is an "entirely appropriate" sanction "where the district court judge has properly determined that no other sanction would adequately ensure future compliance"); *Northstar*, 2013 WL 6061349, at *8 (finding default judgment "the only appropriate means of redressing Defendants' willful disregard" where the court had already issued three orders regarding "production of the same materials" and "imposed two monetary sanctions, one of which Defendant refuses to honor"). The fifth factor warrants default sanction.

### F.    Factor #6:  Merits Of Plaintiffs' Claims Against Raveendran

In determining whether a plaintiff's claims are "meritorious" in the context of a *Poulis* analysis, courts "do not purport to use summary judgment standards." *Dobin v. Taiwan Machinery Trade Center Corp. (In re Victor Intern., Inc.)*, 97 F. Appx. 365, 368 (3d Cir. 2004). A claim "will

---

[7]    Riju Ravindran has been in contempt of court since May of 2024, and he is now indebted to the Court for over $3.5 million. *See* Camshaft Adversary, Adv. D.I. 204, 313. That has done nothing to compel Riju's compliance.

be deemed meritorious when the allegations of the pleadings, if established at trial, would support recovery by plaintiff." *Adams*, 29 F.3d at 876.

Of course, Plaintiffs have already obtained judgments against Raveendran's co-conspirators for the same and similar claims relating to the same underlying transactions (*i.e.*, the Debtor's transfer of the Alpha Funds to Camshaft Fund in mid-2022, and subsequent transfer of the Camshaft LP Interest to Inspilearn in March 2023). *See* Camshaft Adversary, Adv. D.I. 388 (Judgment Order) ¶¶ 2–3. Furthermore, Riju has been found liable for breaching his fiduciary duties to the Debtor, which claim underlies the aiding and abetting breach of fiduciary duty claim the Plaintiffs now assert against Raveendran. *Id.* ¶ 4. T&L and Riju have both been held liable on an identical conversion claim arising from Raveendran's and his cohorts' unlawful exercise of control over the Debtor's Camshaft LP Interest. *Id.* ¶ 6.

Plaintiffs' documentary and testimonial evidence clearly implicate Raveendran as a primary player in these unlawful transfers. For example, it is undisputed that Raveendran executed the Transfer Agreement on behalf of the Debtor, effectuating the Second Fraudulent Transfer. *See* Adv. D.I. 58 at 12. Further, Riju, while the Debtor's sole director, "didn't even one time make a decision for [himself] over BYJU's Alpha"—"[i]t was always with the parent company." Compl. ¶¶ 23, 41. The parent company was governed by, primarily, Byju Raveendran.

Even setting all of that aside, Raveendran's "persistent refusal to produce the documents requested places the meritoriousness of [his] defenses in serious doubt." *Northstar*, 2013 WL 6061349, at *8. In fact, courts have granted dismissal or default where a party's delays "prevent[ed] the District Court from being able to decide whether the claims are meritorious." *In re Asbestos Prods. Liab. Litig. (No. VI)*, 718 F.3d 236, 248 (3d Cir. 2013). Raveendran should not be rewarded for any information vacuum that has resulted from his and his co-conspirators' years'-

long scheme to deprive the Plaintiffs of information to which they are entitled.

Like all of the others, the sixth *Poulis* factor warrants default.

## III.   Raveendran's Discovery Violations Are Specifically Related To Plaintiffs' Claims Against Him.

Raveendran's discovery violations are "specifically related" to the claims for which he should be found in default.  *Clientron*, 894 F.3d at 581 (a "specific nexus must exist between the sanctions imposed and the underlying discovery violations") (cleaned-up).  The Debtor's discovery requests were focused on locating and understanding what happened to the Alpha Funds and its proceeds and establishing Raveendran's breach of fiduciary duties and theft, and further establishing that he has no credibility whatsoever.  In particular, the Debtor sought:

- Documents and information concerning Raveendran's positions and roles at the Debtor. RFP No. 6; Interrogatory No. 1.

- Documents and information concerning the transfers and current ownership of the Alpha Funds and the limited partnership interest in Camshaft that the Debtor received on account of those funds (*i.e.*, the Camshaft LP Interest) including (likely untruthful) statements made by the BYJU's organization to shareholders and the public.  RFP Nos. 1-2; Interrogatory Nos. 2-4, 6-8.

- Documents and information testing Raveendran's claim in his October 9, 2024 declaration that the Alpha Funds had been fully offset by an English supply outsourcing company called OCI Limited.  RFP No. 3; Interrogatory No. 5.

- Raveendran's documents and communications concerning the Court's March 2024 order compelling Riju to "determine the location, amount, and composition of the Alpha Funds." RFP No. 4.

- The Debtor's books and records.  RFP No. 5.

This discovery is all central to the claims asserted against Raveendran:  aiding and abetting Riju's breach of fiduciary duty (Count I); breach of his own fiduciary duty (Count II); accounting (Count IV); conversion of the Camshaft LP Interest (Count V); and civil conspiracy (Count VI). *See Clientron*, 894 F.3d at 580 (quoting *Ins. Corp. of Ir., Ltd. v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 707 (1982)) ("[T]he unproduced discovery must be sufficiently 'material to

the administration of due process' to support a presumption that the failure to produce constituted an admission by the offending party that its asserted claim or defense lacked merit.").

IV.    **This Court Should Enter An Award Of Damages.**

There is no reason for further delay.  Under Rule 55(b)(2), courts may award damages along with a default judgment without holding a separate evidentiary hearing if the plaintiffs submitted documentary evidence supports the award of damages.  Fed. R. Civ. P. 55(b)(2) (courts "may"—not shall—"conduct hearings … [to] determine the amount of damages"); *see Boards of Trs. of Operating Eng'rs Loc. 825 Welfare Fund v. Robert Silagy Landscaping Inc.*, 2006 WL 3308578, at *4 (D.N.J. Nov. 13, 2006) (entering default judgment and awarding damages where "Plaintiffs have submitted documentary evidence substantiating this [damages] figure," as permitted by Rule 55(b)(2)); *Amresco Financial I LP v. Storti*, 2000 WL 284203, at *2 (E.D. Pa. Mar. 13, 2000) (foregoing an evidentiary hearing because "the amount claimed is liquidated or capable of ascertainment from definite figures contained in the documentary evidence and detailed affidavits submitted by Plaintiff"); *Transportes Aereos De Angola v. Jet Traders Inv. Corp.*, 624 F. Supp. 264, 266 (D. Del. 1985) (awarding damages without evidentiary hearing where Plaintiffs submitted documentary evidence that was an "adequate substitute for live testimony").

Here, Plaintiffs' documentary evidence alone supports an award of damages.  Damages for both a breach of fiduciary duties and aiding and abetting such breach is the injury to the corporation caused by such fiduciary's breach.[8]  The "measure of damages for conversion is the converted property's fair market value at the time of the conversion."  *Gulf Aviation Services Group WLL v.*

---

[8]    Compensatory damages are the "traditional measure of damages" for a breach of fiduciary duties under Delaware law.  *Strassburger v. Earley*, 752 A.2d 557, 579 (Del. Ch. 2000). Compensatory damages "are determined at the time *of* the transaction," *id.* (emphasis in original); and are measured by the harm caused to the company by the director's or officer's breach of fiduciary duties.  *Nagy v. Bistricer*, 770 A.2d 43, 48 n.2 (Del. Ch. 2000).  The same measure applies to damages for aiding and abetting such breaches.  *In re Signature Apparel Grp. LLC*, 577 B.R. 54, 109–10 (Bankr. S.D.N.Y. 2017) (applying Delaware law).

*Wilmington Trust Co.*, 2023 WL 9118772, at *14 (Del. Super. 2023)  Finally, the measure of damages for civil conspiracy is the "harm caused by the tortious act committed in furtherance of the conspiracy." *Empire Fin. Servs., Inc. v. Bank of N.Y. (Del.)*, 900 A.2d 92, 97 (Del. 2006); *see also Kuhn Const. Co. v. Ocean & Coastal Consultants, Inc.*, 723 F. Supp. 2d 676, 689 (D. Del. 2010) ("Conspirators are liable on a joint and several basis and, as such, plaintiff can obtain complete relief without joining all possible co-conspirators.").

Here, with respect to Count I (aiding and abetting), the Debtor alleges that Raveendran substantially assisted his brother's fiduciary breach in mid-2022, when Riju executed the first fraudulent transfer by causing the Debtor to transfer $533 million in cash to Camshaft Capital Fund, LP ("Camshaft Fund") (the "First Fraudulent Transfer").  Compl. ¶ 98.  As set forth in the declaration of the Debtor's governor Timothy Pohl (attached as Exhibit B), the Debtor's bank statements memorialize six wire transfers in that amount:  $318 million transferred from April 27-28, 2022 and $215 million from July 12-13, 2022.  Pohl Decl. ¶ 8.  Further, based on his review of the Debtor's books and records, the First Fraudulent Transfer left the Debtor with just $131,542,108.16 in its checking and investment accounts.  *Id.*  Pohl is unaware of the Debtor receiving any ultimate benefit from the First Fraudulent Transfer, unsurprising given the Debtor's status as a financing vehicle. *Id.* ¶ 10-11.

Counts II (breach of fiduciary duties), V (conversion), and VI (civil conspiracy), all arise from Raveendran's transfer of the Debtor's Camshaft LP Interest in March 2023 for no consideration whatsoever (the "Second Fraudulent Transfer").  Compl. ¶¶ 104, 128, 131. Camshaft Fund, through its fund administrator, valued the Camshaft LP Interest at $540,647,109.29 as of the March 31, 2023 transfer date.  *See* Finestone Decl. Ex. 8.  Riju, as the Debtor's former director, admitted that this Interest was worth $539,790,047.44 at the beginning

of that month.  Camshaft Adversary, Adv. D.I. 179 (the "Ravindran SAC Answer") ¶ 104.  As this Court previously recognized in Camshaft Adversary, "the valuation of the Camshaft LP Interest at $540,647,109.2[9] was derived directly from documents prepared on behalf of [Riju] Ravindran's co-movant (Camshaft)."  *Id.*, Adv. D.I. 483 at 6 n.11 (explaining that the valuation was "described in detail" and citing Plaintiffs' summary judgment papers[9]); *see also id.*, Adv. D.I. 383 (granting summary judgment, finding "[t]he Debtor received no consideration for this [second] transfer, which was valued at that time at $540,647,109.29").  All this evidence provides a sufficient basis for the Court to enter damages in the amount of $540,647,109.29.[10]

Finally, given Raveendran's refusal to produce discovery relevant to Plaintiffs' damages, *see* Argument § III, *supra*, he should not be allowed to contest Plaintiffs' damages calculations in any event.  *See In re Victor Intern.* 97 F. App'x 370-71 (affirming bankruptcy court's "reasonable estimate of damages" in default judgment, noting that defendant "is in no real position to challenge the Bankruptcy Court's reasonable estimate of damages" given its history of misconduct); *cf.* Camshaft Adversary, Adv. D.I. 329 § 1 (as a sanction for his discovery non-compliance, Riju "may be precluded from disputing any issue of fact" on summary judgment); *id.*, Adv. D.I. 483 at 7 ("even assuming [Riju] could support a different damages calculation, the Court need not, and should not, consider [Riju's] argument given his ongoing refusal to produce damages-related discovery").

---

[9]    *See* Finestone Decl. Ex. 8 (Apex Statement for Period Ended Mar. 31, 2023); *Declaration of Benjamin I. Finestone in Support of Debtor's and GLAS Trust Company LLC's Motion for Partial Summary Judgment on Counts I, II, IV, VIII, and X of the Second Amended Complaint*, Camshaft Adversary Adv. D.I. 277 (the "Finestone SJ Decl.") Ex. 20 (Camshaft's Second Am. Interrog. Answers) at 5, Answer to Interrog. No. 2 (valuing the Camshaft LP Interest as of March 1, 2023); Ravindran SAC Answer ¶ 104 (same); Finestone SJ Decl. Ex. 7 (Jun. 27, 2024 Morton Dep. Tr.) 83:13-84:18; 135:14-21 (value of the LP interest in Q1 2023, which Deloitte signed off on, was recorded in Camshaft's books and records at approximately $538.9 million).

[10]   Plaintiffs also seek pre- and post-judgment interest for the reasons extensively briefed in the Camshaft Adversary and also consistent with both the Court's *Judgment Order* and its *Memorandum Order Denying Motion to Reconsider and Amend Judgment.  See, e.g.*, Camshaft Adversary, Adv. D.I. 384, 388, 402, 483.

## <u>CONCLUSION</u>

Ultimately, history is repeating itself.  In the related Epic involuntary cases, this Court entered default judgment based on discovery noncompliance that spanned *less* time than here, observing "repeated and regular requests for discovery," which "ha[d] not been responded to throughout these proceedings."  Sept. 10, 2024 Hr'g Tr. 29:25–30:2, *In re Epic! Creations, Inc.*, Case No. 24-11161 (Bankr. D. Del.).  Nothing short of default "would fairly permit the petitioning creditors [there] to prosecute their cases." *Id.* 30:14–16.  The same is true once again.  Plaintiffs cannot fully litigate their claims blindfolded, against an adversary willfully refusing to cooperate with discovery and acting in bad faith.  As Raveendran's rejection of the Court's Contempt Order has shown, "there are no alternative sanctions the court could effectively impose" to change his behavior.  *Thorpe v. Wilmington Hous. Auth.*, 262 F.R.D. 421, 424 (D. Del. 2009).  Default judgment is the only appropriate remedy remaining.

WHEREFORE, Plaintiffs respectfully request that the Court enter default judgment and an award of damages against Raveendran, substantially in the form attached hereto as <u>Exhibit A</u>.

Dated: Wilmington, Delaware
      August 11, 2025

**YOUNG CONAWAY STARGATT & TAYLOR, LLP**

/s/ *Kenneth J. Enos*
Robert S. Brady (Del. No. 2847)
Kenneth J. Enos (Del. No. 4544)
Jared W. Kochenash (Del. No. 6557)
Timothy R. Powell (Del. No. 6894)
1000 North King Street
Wilmington, Delaware 19801
Telephone: (302) 571-6600
Facsimile: (302) 571-1253
rbrady@ycst.com
kenos@ycst.com
jkochenash@ycst.com
tpowell@ycst.com

**QUINN EMANUEL URQUHART & SULLIVAN, LLP**
Benjamin Finestone (admitted pro hac vice)
Kate Scherling (admitted pro hac vice)
Jianjian Ye (admitted pro hac vice)
Jordan Nakdimon (admitted pro hac vice)
295 Fifth Ave.
New York, New York 10016
Tel.: (212) 849 7000
benjaminfinestone@quinnemanuel.com
katescherling@quinnemanuel.com
jianjianye@quinnemanuel.com
jordannakdimon@quinnemanuel.com

*Counsel for Debtor, BYJU's Alpha, Inc.*

Dated: August 11, 2025
Wilmington, Delaware

/s/ *Peter J. Keane*
**PACHULSKI STANG ZIEHL & JONES LLP**
Laura Davis Jones (DE Bar No. 2436)
Peter J. Keane (DE Bar No. 5503)
919 North Market Street, 17th Floor
P.O. Box 8705
Wilmington, Delaware 19801
Telephone:      (302) 652-4100
Email:           ljones@pszjlaw.com
                    pkeane@pszjlaw.com

**REED SMITH LLP**
David A. Pisciotta (admitted *pro hac vice*)
Nicholas B. Vislocky (admitted *pro hac vice*)
599 Lexington Avenue, 22nd Floor
New York, New York 10022
Telephone:      (212) 521-5400
Facsimile:      (212) 521-5450
Email:           dpisciotta@reedsmith.com
                    nvislocky@reedsmith.com

**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
Patrick J. Nash Jr., P.C. (admitted *pro hac vice*)
Richard U.S. Howell, P.C. (admitted *pro hac vice*)
Ravi Subramanian Shankar (admitted *pro hac vice*)
333 West Wolf Point Plaza
Chicago, Illinois 60654
Telephone:      (312) 862-2000
Facsimile:      (312) 862-2200
Email:           patrick.nash@kirkland.com
                    rhowell@kirkland.com
                    ravi.shankar@kirkland.com

-and-

Brian Schartz, P.C. (admitted *pro hac vice*)
601 Lexington Avenue
New York, New York 10022
Telephone:      (212) 446-4800
Facsimile:      (212) 446-4900
Email:           brian.schartz@kirkland.com

*Counsel to GLAS Trust Company LLC*

# EXHIBIT A

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | ) |
| | ) |
| BYJU'S ALPHA, INC.,[1] | ) Chapter 11 |
| | ) |
| Debtor. | ) Case No. 24-10140 (BLS) |
| | ) |
| | ) |
| BYJU'S ALPHA, INC., | ) Adv. Pro. Case No. 25-50526 (BLS) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| BYJU RAVEENDRAN, DIVYA GOKULNATH, | ) |
| and ANITA KISHORE, | ) |
| | ) |
| Defendants. | ) |
| | ) |

## <u>JUDGMENT ORDER</u>

Upon consideration of *Plaintiffs' Motion Pursuant to Federal Rule of Bankruptcy
Procedure 7037 and Federal Rule of Civil Procedure 37(b)(2)(A)(vi) for Default Against
Defendant Byju Raveendran* [Adv. D.I. [●]] (the "<u>Motion for Default Judgment</u>") filed by the
Debtor-Plaintiff BYJU's Alpha, Inc. (the "<u>Debtor</u>") and Intervenor-Plaintiff GLAS Trust
Company LLC ("<u>GLAS</u>," and together with the Debtor, "<u>Plaintiffs</u>"); and the Court having found
that it has subject matter jurisdiction to consider and determine the Motion for Default in
accordance with 28 U.S.C. § 1334 and the *Amended Standing Order of Reference* from the United
States District Court for the District of Delaware, dated February 29, 2023; and this being a core
proceeding pursuant to 28 U.S.C. § 157(b)(2); and the Court having found that it has the power to
enter a final order consistent with Article III of the United States Constitution; and venue being

---

[1] The Debtor in this chapter 11 case, along with the last four digits of the Debtor's federal tax identification number,
is: BYJU's Alpha, Inc. (4260). The location of the Debtor's service address for purposes of this Chapter 11 Case
is: 1007 N. Market Street Ste. G20 452, Wilmington, Delaware 19801.

proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409; and the Court having reviewed Plaintiffs' Motion for Default Judgment and the declaration and other exhibits thereto; and the Court having considered all responses thereto; and the Court having held a hearing on [●], 2025 (the "<u>Hearing</u>"); and this Court having found that due and sufficient notice was given under the circumstances; and after due deliberation and sufficient cause appearing therefore;

**IT IS HEREBY ORDERED AND ADJUDGED THAT:**

1.      Plaintiffs' Motion for Default Judgment pursuant to Federal Rule of Civil Procedure ("<u>Rule</u>") 37, as incorporated by reference by Federal Rule of Bankruptcy Procedure 7037, is GRANTED.

2.      Judgment is hereby entered in favor of Plaintiffs against Defendant Byju Raveendran ("<u>Raveendran</u>") as to Count I of the *Complaint* [Adv. D.I. 1 (redacted); Adv. D.I. 2 (sealed)] (the "<u>Complaint</u>") on a default basis as a discovery sanction pursuant to Rule 37(b)(2)(vi). Raveendran aided and abetted Riju Ravindran's breach of fiduciary duties to the Debtor by authorizing the First Fraudulent Transfer (as defined in the Motion for Default Judgment). Accordingly, Raveendran is liable to Plaintiffs in an amount of $533,000,000.00, plus (a) pre-judgment interest at a rate of (i) 5.5% (compounded quarterly) as to $318,000,000.00 beginning as of April 28, 2022 through the date hereof and (ii) 6.75% (compounded quarterly) as to $215,000,000.00 beginning as of July 13, 2022 through the date hereof for a total including accrued pre-judgment interest of $[●].

3.      Judgment is hereby entered in favor of Plaintiffs against Raveendran as to Count II of the Complaint on a default basis as a discovery sanction pursuant to Rule 37(b)(2)(vi). Raveendran breached his fiduciary duties to the Debtor by authorizing the Second Fraudulent Transfer (as defined in the Motion for Default Judgment).  Accordingly, Raveendran is liable to

Plaintiffs for damages in an amount of $540,647,109.20, plus (a) plus pre-judgment interest at a rate of 10.00% (compounded quarterly) beginning as of March 31, 2023 through the date hereof for a total including accrued pre-judgment interest of $[●].

4.      Judgment is hereby entered in favor of Plaintiffs against Raveendran as to Count IV of the Complaint on a default basis as a discovery sanction pursuant to Rule 37(b)(2)(vi). Raveendran is ordered to render a full and accurate accounting of the Alpha Funds and any proceeds thereof, including but not limited to the Camshaft LP Interest (as defined in the Complaint), including each and every subsequent transfer and any proceeds thereof.

5.      Judgment is hereby entered in favor of Plaintiffs against Raveendran as to Count V of the Complaint on a default basis as a discovery sanction pursuant to Rule 37(b)(2)(vi). Raveendran is liable for the conversion of the Camshaft LP Interest.  Accordingly, Raveendran is liable to Plaintiffs for damages in an amount of $540,647,109.20, plus (a) pre-judgment interest at a rate of 10.00% (compounded quarterly) beginning as of March 31, 2023 through the date hereof for a total including accrued pre-judgment interest of $[●].

6.      Judgment is hereby entered in favor of Plaintiffs against Raveendran as to Count VI of the Complaint on a default basis as a discovery sanction pursuant to Rule 37(b)(2)(vi). Raveendran is liable for engaging in a civil conspiracy to defeat the Debtor's ownership of the Alpha Funds and the proceeds thereof, including the Camshaft LP Interest.  Accordingly, Raveendran is liable to Plaintiffs for the damages associated in an amount of $540,647,109.20, plus (a) pre-judgment interest at a rate of 10.0% (compounded quarterly) beginning as of March 31, 2023 through the date hereof for a total including accrued pre-judgment interest of $[●].

7.      The terms and conditions of this Judgment Order shall be immediately effective and enforceable upon its entry, notwithstanding any provision in the Bankruptcy Rules or the Local

Rules to the contrary, and Plaintiffs may, in their discretion and without further delay, take any action and perform any act authorized under this Judgment Order.

8.     This Court shall have exclusive jurisdiction to interpret and enforce the terms of this Judgment Order.

# EXHIBIT B

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | |
| | ) | |
| BYJU'S ALPHA, INC.,[1] | ) | Chapter 11 |
| | ) | |
| Debtor. | ) | Case No. 24-10140 (BLS) |
| | ) | |
| | ) | |
| BYJU'S ALPHA, INC., | ) | Adv. Pro. Case No. 25-50526 (BLS) |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| BYJU RAVEENDRAN, DIVYA GOKULNATH, | ) | |
| and ANITA KISHORE, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## <u>DECLARATION OF TIMOTHY R. POHL</u>

I, Timothy R. Pohl, hereby declare as follows:

1.      I submit this declaration (the "<u>Declaration</u>") in support of BYU's Alpha, Inc.'s (the "<u>Debtor</u>") and GLAS Trust Company LLC's ("<u>GLAS</u>") *Motion Pursuant to Federal Rule of Bankruptcy Procedure 7037 and Federal Rule of Civil Procedure 37(b)(2)(A)(vii) for Default Against Defendant Byju Raveendran* (the "<u>Motion</u>")[2] in this adversary proceeding.  Except as otherwise indicated, all facts in this Declaration are based upon my personal knowledge, my discussions with the Debtor's advisors and stakeholders (including certain of the Lenders and GLAS's advisors), my review of relevant documents and information concerning the Debtor's affairs and restructuring initiatives, including the decisions and rulings of the Delaware Court of

---

[1]      The Debtor in this chapter 11 case, along with the last four digits of the Debtor's federal tax identification number, is:  BYJU's Alpha, Inc. (4260).  The location of the Debtor's service address for purposes of this Chapter 11 Case is:  1007 N. Market Street Ste. G20 452, Wilmington, Delaware 19801.

[2]      Capitalized terms not defined in this Declaration have the meanings given to them in the Motion.

Chancery as well as this Court, or my experience, knowledge, and familiarity with the Debtor.  I am over the age of 18 and, if called upon to testify, I would testify competently to the facts set forth in this Declaration.

### Professional Experience and Background

2.      For over three decades, I have worked for, with, and opposite distressed companies in in-court and out-of-court restructurings, as a lawyer, investment banker, financial advisor, and director.  I graduated from the University of Chicago Law School in 1991, and joined the law firm of Jones Day as an associate in the firm's Business Restructuring and Reorganization practice. From 1999 to 2008, I was an attorney at Skadden, Arps, Slate, Meagher & Flom LLP, where I became a partner and eventually the Co-Head of its Corporate Restructuring Group.

3.      In 2009, following the onset of the 2008 financial crisis, I joined the Restructuring and Capital Solutions Group at Lazard, where I was a Managing Director until I retired in 2019. At Lazard, I continued to represent clients in restructuring matters as an investment banker and financial advisor.  I served as an expert witness in a variety of cases, testifying on corporate governance and valuation.

4.      After retiring from Lazard, I founded TRP Advisors, LLC, through which I have provided strategic advice to many companies, financial institutions, and private equity firms with respect to distressed situations, troubled portfolio companies, and acquisition opportunities over the last approximately 5 years.  I also have served as an independent director for more than 20 other companies in a variety of industries and for which I led internal investigations in several situations and testified in court.

### Credit Agreement Defaults and the Lenders' Exercise of Remedies

5.      As I testified in my Declaration in support of the Debtor's chapter 11 petition (D.I. 3) (the "First Day Declaration") ¶ 2, the Debtor is a Delaware corporation and former indirect

2

subsidiary of Think & Learn Private Ltd. ("T&L").  On November 24, 2021, the Debtor borrowed $1.2 billion in term loans (the "Term Loans") in accordance with various loan documents, including a Credit and Guaranty Agreement (the "Credit Agreement") and collateral and security agreements (collectively, the "Loan Documents").  As I testified in paragraphs 36 through 41 of my First Day Declaration, within months, the Debtor and the other Loan Parties defaulted on their covenants under the Credit Agreement.

6.      I understand that, on March 3, 2023, GLAS, at the Lenders' direction, gave formal notice of Events of Default and accelerated the Term Loans, demanding immediate repayment.  At the same time. GLAS took control of 100% of the Debtor's stock, which had been pledged as collateral under the Loan Documents.

7.      As the new sole shareholder of the Debtor, GLAS, through an Action by Written Consent of the Sole Stockholder, removed all existing directors and appointed me as the Debtor's sole director, and amended the Debtor's Bylaws to provide that the board and any officer designated by the board would control the Debtor's accounts.  In my capacity as the Debtor's sole director, consistent with GLAS's directions, I executed a Written Consent of the Board to immediately remove all existing officers and appoint myself to serve as the Debtor's CEO and Secretary.[3]

**The Debtor's Bank Accounts and The Transfer of the Alpha Funds**

8.      At the time of my appointment on March 3, 2023, I was unaware that the Debtor had transferred away $533 million (the "Alpha Funds").  Through litigation discovery and the investigative efforts of my counsel I identified five bank accounts in the Debtor's name.[4]  Based

---

[3]      The Delaware Court of Chancery subsequently declared that the enforcement steps on March 3, 2023 were valid and effective as to the removal of Mr. Ravindran as the Debtor's preexisting director and officer.  The Court of Chancery also declared that I was properly put in place as the sole director and sole officer of the Debtor.

[4]      **Exhibits 1 to 5** are true and correct copies of the Debtor's five sets of checking and investment account statements.

3

on my review of the Debtor's five sets of bank statements, I determined that, through six transfers from two of the Debtor's accounts in April and July 2022, the Debtor had transferred the Alpha Funds to a hedge fund located in Miami, Florida called Camshaft Capital Fund, LP ("Camshaft Fund").  Specifically, (i) between April 27-28, 2022, the Debtors made three wire transfers in the aggregate amount of $318,000,000.00 to Camshaft Fund, and (ii) between July 12-13, 2022, the Debtor made an additional three wire transfers in the aggregate amount of $215,000,000.00 to Camshaft Fund.  After the Debtor made these transfers to Camshaft Fund, the Debtor had $131,542,108.16 remaining in its checking and investment accounts as of end of day on July 13, 2022.

9.     I understand that, 28 days after my appointment, on March 31, 2023, Byju Raveendran and Riju Ravindran caused the Debtor to transfer the Camshaft LP Interest to Inspilearn LLC.  Neither was acting with my permission.  The Debtor had $493,905.47 remaining it its checking accounts (and nothing in its investment accounts) as of end of day on March 31, 2023.

10.    The Debtor's former management and representatives never told me about the transfers to Camshaft Fund or Inspilearn, or what consideration, if any, the Debtor had received from Camshaft Fund or Inspilearn in exchange for such transfers.

11.    The Debtor's historical bank accounts that I have found disclose no evidence of the Debtor having received any return accruing from its enormous purported investment in Camshaft Fund or any financial consideration received from Inspilearn or any other entity in exchange for the March 31, 2023 transfer of the Camshaft LP Interest.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing statements are true and correct.

Executed on: August 11, 2025

/s/

Timothy R. Pohl
Director, CEO, and Secretary
BYJU's Alpha, Inc.

# EXHIBITS 1-5 FILED UNDER SEAL