**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re:<br><br>BYJU'S ALPHA, INC.,<br><br>　　Debtor | Chapter 11<br>Case No. 24-10140 (BLS) |
| BYJU'S ALPHA, INC.,<br>　　　　Plaintiff,<br><br>　　v.<br><br>BYJU RAVEENDRAN, DIVYA<br>GOKULNATH, and ANITA KISHORE,<br>　　　　Defendants. | Adv. Pro. No. 25-50526 (BLS)<br><br>Re: Adv. D.I.  192, 194, 197, 198,<br>200, 201, 202 |

<u>**MEMORANDUM ORDER DENYING DEFENDANT BYJU RAVEENDRAN'S
MOTIONS TO STRIKE, TO FILE A REPLY, AND FOR DISCOVERY**</u>[1]

Before the Court are the following Motions filed by Defendant Byju

Raveendran:

(1) Motion to Strike the Declarations of Pohl and Chapman (Adv Docket No. 192) (the "First Motion to Strike");

(2) Motion to Strike as Inadmissible Hearsay Newly Identified Documents Cited in Plaintiffs' Damages Brief and for Leave to File a Reply to the Plaintiffs' Damages Brief and Sur-Reply to the Plaintiffs' Motion to Quash (Adv. Docket No. 194) (the "Second Motion to Strike"); and

(3) Motion for a Rule 26(f) Conference and to Revise Order Granting Motion to Quash (Adv. Docket No. 197) (the "Motion for Discovery").

---

[1] This Memorandum Opinion constitutes the Court's findings of fact and conclusions of law under Rule 52 of the Federal Rules of Civil Procedure, made applicable to this proceeding by Rule 7052 of the Federal Rules of Bankruptcy Procedure.  This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 157 and § 1334.

The Plaintiffs have filed an Omnibus Objection to the First Motion to Strike and the Second Motion to Strike (Adv. Docket No. 198) and an Objection to the Motion for Discovery (Adv. Docket No. 201).  Defendant Raveendran filed Reply Briefs to the Plaintiffs' Objections (Adv. Docket Nos. 200 and 202).

After refusing to participate meaningfully in this adversary for months, now, after entry of a default, Mr. Raveendran is filing various motions demanding extensive discovery and seeking to strike documents that were part of the Plaintiffs' sanctions motion and brief on damages.  The Court has reviewed the Motions and related responses and, for the reasons set forth below, will deny all of the Motions.

BACKGROUND

The Plaintiffs filed this adversary proceeding as part of the Debtor's ongoing efforts in the Chapter 11 case to unravel a series of fraudulent transfers that stripped the Debtor of its assets (including the $533 million Alpha Funds and the proceeds thereof) by placing those assets beyond the reach of the Debtor and its creditors and concealing their whereabouts.[2]  The Debtor commenced this adversary proceeding against Defendants Byju Raveendran, Divya Gokulnath and Anita Kishore on April 9, 2025, asserting claims for breach of fiduciary duties, aiding and abetting breach of fiduciary duties, accounting, conversion and civil conspiracy.

---

[2] *See Byju's Alpha, Inc. v. Camshaft Cap. Fund L.P. (In re Byju's Alpha, Inc.)*, Adv. Pro. No. 24-50013, Docket No. 383 (Bankr. D. Del. Feb. 27, 2025) (Memorandum Opinion granting the Debtor's motion for partial summary judgment).  Since the filing of this adversary proceeding in April 2025, as well as other adversary proceedings, the Plaintiffs have reported a measure of progress in tracing the proceeds of the fraudulent transfers, but this does not justify the Defendant's lack of meaningful participation when this adversary commenced.

On November 20, 2025, this Court issued an Opinion granting the Plaintiffs' Motion for Default against Byju Raveendran for his failure to comply with the Court's expedited discovery orders in this adversary proceeding.[3]  That Opinion included an award of damages.  Shortly thereafter, Byju Raveendran filed his Motion to Correct Opinion Pursuant to Federal Rule of Civil Procedure 60(a) noting that, at a hearing on September 9, 2025, the parties had agreed to defer the damages portion of the Motion for Default to a later date to be determined.[4]  As a result, the Court issued an Amended Opinion Granting Plaintiffs' Motion for Default, which thus excluded an award of damages, and entered a Scheduling Order[5] requiring the parties to submit simultaneous briefing (with proposed forms of judgment order) on the issue of damages. The parties submitted their briefs on January 21, 2026.[6]

Since the Court issued the Scheduling Order for briefing on damages, Mr. Raveendran has filed five separate motions[7] seeking discovery from the Plaintiffs or seeking to strike declarations or documents relied upon by the Plaintiffs for the damage calculations.  Mr. Raveendran argues that this adversary proceeding has been bifurcated into a separate "damages phase" which should begin with full discovery and include an evidentiary hearing on causation and entitlement to remedies.  Mr. Raveendran argues that the Plaintiffs have the burden of proof on

---

[3] Adv. Docket No. 143.

[4] Adv. Docket No. 144.

[5] Adv. Docket No. 164.

[6] Adv. Docket Nos. 182, 183.

[7] Adv. Docket Nos. 168, 176, 192, 194, and 197.  The Court has denied the Mr. Raveendran's motions filed at docket numbers 168 and 176.  The remaining three are the subject of this Memorandum Order.

the issue of damages, and that their refusal to engage in discovery in this new phase is inherently unfair and prejudicial to him.

In response, the Plaintiffs assert that Mr. Raveendran's position ignores the procedural context of this litigation and results in a remarkable turn of events in which: "(1) [Mr. Raveendran] would be free to withhold all relevant discovery from Plaintiffs after having all but acknowledged that his prior sworn discovery answers were materially incomplete and false, (2) Plaintiffs would be barred from presenting the (undisputed in their authenticity) evidence they possess in spite of Raveendran's obstruction, and (3) Mr. Raveendran would be free to demand one-sided discovery from Plaintiffs in exchange for nothing at all."[8]  Thus, the Plaintiffs argue that Mr. Raveendran's motions are intended only to delay and cause further substantial prejudice to them.

<u>DISCUSSION</u>

The Plaintiffs sought a default judgment in this adversary proceeding under Fed.R.Civ.P. 37(b)(2)(A)(vi) as a sanction against Defendant Raveendran for his failure to comply with the Court's discovery orders.  As directed by Third Circuit's decision in *Poulis v. State Farm Fire and Casualty Company*,[9] this Court carefully examined six factors to consider whether imposing a default judgment as a discovery sanction was warranted in this proceeding and determined that all six factors were met.[10]

---

[8] Plaintiff's Omnibus Objection (Adv. Docket No. 198), at 2.
[9] *Poulis v. State Farm Fire and Cas. Co.*, 747 F.2d 863, 868 (3d Cir. 1984) (the "*Poulis* Factors").
[10] Adv. Docket No. 167.

"While a default judgment constitutes an admission of liability, the quantum of damages remains to be established by proof unless the amount is liquidated or susceptible of mathematical computation."[11]  A court "has considerable latitude in determining the amount of damages."[12]  The court may conduct a hearing, but is not required to do so "as long as it ensure[s] that there [is] a basis for the damages specified in the default judgment."[13] The Plaintiffs argue that the quantum of damages is straightforward in this case and may be easily ascertainable from and inextricably linked with the Complaint's allegations that pertain to liability, which the Court has accepted as true as a consequence of Mr. Raveendran's default.[14]  The Complaint alleges that, at Mr. Raveendran's direction, Riju Ravindran breached his fiduciary duties to the Debtor by transferring $533 million to a sham hedge fund (Camshaft Capital Fund, L.P.) which deprived the Debtor of $533 million.[15]  Then, Mr. Raveendran participated in the Debtor's unauthorized transfer of the Camshaft LP Interest, valued by Camshaft Fund's fund administrator at $540,647,109.29, for $0 in return.[16]

---

[11] *Belmonte v. Spitzer*, 2010 WL 2195651, *1 (D. N.J. May 27, 2010) (quoting *Flaks v. Koegel*, 504 F.2d 702, 707 (2d Cir. 1974)).

[12] *Id.*

[13] *Id.* (quoting *Transatlantic Marine Claims Agency, Inc. v. Ace Shipping Corp.*, 109 F.3d 105, 111 (2d Cir. 1997)).

[14] *Rainey v. Diamond State Port Corp.*, 354 F. App'x 722, 724 (3d Cir. Dec. 7, 2009) ("Defaults are treated as admissions of the facts alleged, but a plaintiff may still be required to prove that he or she is entitled to the damages sought.")

[15] Compl. ¶¶ 2, 11, 39-44.

[16] Compl. ¶¶ 2, 11, 61, 65, 106.

A court must ensure that there is a basis for the damage amount awarded.[17] To do so, some courts have relied upon detailed affidavits and documentary evidence, supplemented by the judge's personal knowledge of the record.[18]  Here, the Plaintiffs rely, in part, upon the following evidence of damages:

- For damages on Count I (aiding and abetting breach of fiduciary duty): Declaration of Timothy Pohl, attaching (among other things) the Debtor's bank statements showing six wire transfers that total $533 million (attached as Exhibit B to the Default Motion);

- For damages on Counts II (breach of fiduciary duties), V (conversion), and VI (civil conspiracy): Declaration of Benjamin Finestone filed in support of the Default Motion (Adv. Docket No. 98), Ex. 8 – statement issued to Inspilearn on investment details for the period from December 31, 2022 to March 31, 2023.[19]

However, Defendant Raveendran now demands discovery on the issue of damages, moves to strike declarations, and seeks to challenge documents, "new arguments" and "new concessions" he claims are found throughout the Plaintiffs' damages brief.  As noted previously, a defendant cannot "credibly argue that the

---

[17] *Ilyich Mariupol  Iron and Steel Works v. Argus Develop. Inc.*, 2013 WL 1222699, *1 (D. Del. Mar. 26, 2013) (quoting *Fustok v. Conticommodity Servs., Inc.*, 873 F.2d 38, 40 (2d Cir. 1989)).  *See also Amresco Fin. I L.P. v. Storti*, 2000 WL 284203, *2 (E.D. Pa. Mar. 13, 2000) (The Court noted that the amount of damages for a default judgment was "liquidated or capable of ascertainment from definite figures contained in the documentary evidence and detailed affidavits submitted by Plaintiff.")

[18] *Fustok v. Conticommodity Servs., Inc.*, 873 F.2d 38, 40 (2d Cir. 1989).  The Court's personal knowledge here also includes familiarity with the related Camshaft Adversary (Adv. Proceeding No. 24-50013),  including the February 27, 2025 summary judgment opinion entered in that case.

[19] The Plaintiffs point out that Mr. Raveendran did not contest the validity or admissibility of Ex. 8 of the Finestone Declaration, in which Camshaft's fund administrator values the Camshaft LP Interest at $540,647,109.29.   Omnibus Obj. (Adv. Docket No. 198) at 6, n. 4.  The Declaration of J. Michael McNutt, Adv. Docket No. 184, filed in support of Mr. Raveendran's damages brief, confirms that the Camshaft LP Interest was worth in excess of $500 million when it was converted.  ¶¶ 67, 69.

assessment of damages was not based on more accurate data, given that its wrongdoing rendered such data unavailable."[20]

First, Mr. Raveendran seeks to strike the Pohl Declaration as hearsay.[21] The Plaintiffs, however, assert that Pohl Declaration attaches the Debtor's uncontroverted bank records, which are not hearsay, but are admissible under Federal Rules of Evidence 803(6) (business records exception) and 807 (residual exception). The Court agrees that the residual exception is particularly applicable here. Federal Rule of Evidence 807 provides:

(a)     In General. Under the following conditions, a hearsay statement is not excluded by the rule against hearsay even if the statement is not admissible under a hearing exception in Rule 803 or 804:
    (1)     The statement is supported by sufficient guarantees of trustworthiness—after considering the totality of the circumstances under which it was made and evidence, if any, corroborating the statement;
    (2)     It is more probative on the point for which it is offered than any other evidence that the proponent can obtain through reasonable efforts.
(b)     Notice. The statement is admissible only if the proponent gives an adverse party reasonable notice of the intent to offer the statement — including its substance and the declarant's name, so that the party has a fair opportunity to meet it. The notice must be provided in writing before the trial or hearing or in any form during the trial or hearing if the court, for good cause, excuses a lack of earlier notice.

---

[20] Letter Ruling (Adv. Docket No. 173) (quoting *Dobin v. Taiwan Mach. Trade Ctr. Corp. (In re Victor Int'l, Inc.)*, 97 F. App'x 365, 370 (3d Cir. 2004) (deciding that the defendant who refused to provide discovery was "in no real position to challenge the bankruptcy court's reasonable estimate of damages" in a default judgment).

[21] Mr. Raveendran also moved to strike the Declaration of Oliver Chapman filed in Adv. Pro. Case No. 25-50822. However, the Plaintiffs contend that their damage assessment does not rely upon the Chapman Declaration, which was not available when the Plaintiffs' theory on damages was established in August 2025. *See* Omnibus Objection (Adv. Docket No. 198) at 3, n. 3. The Court notes that the Chapman Declaration is cited in the Plaintiff's Damages Brief (Adv. Docket No. 182) in a section entitled "Byju Raveendran's Falsehoods" and a subsection arguing against the need for an evidentiary hearing entitled "An Evidentiary Hearing Would Only Bolster Plaintiffs' Position Regarding the Appropriate Damages Award." The Chapman Declaration is not the basis of the Plaintiffs' proposed damage calculations and will not be stricken.

The Plaintiffs gave Mr. Raveendran notice of their reliance on the Pohl Declaration with the attached bank statements as required by Rule 807(b) by attaching them to the Plaintiffs' Default Motion. The trustworthiness of the bank statements is not seriously in dispute since the Declaration of J. Michael McNutt, filed by Mr. Raveendran, relies in part on the same bank statements.[22] The Plaintiffs were denied the opportunity to obtain evidence to corroborate the bank records when Mr. Raveendran failed to participate in discovery. Under Evidence Rule 807, the Pohl Declaration will not be stricken as hearsay because the Declaration is highly material, trustworthy, and the only documentary evidence before the Court concerning the activity of the Debtor's accounts due, at least in part, to Mr. Raveendran's refusal to meaningfully comply with the Plaintiffs' discovery requests.[23]

Mr. Raveendran also argues that the Pohl Declaration was withdrawn at the September 9, 2025 hearing, but a review of the transcript does not support this claim. The Plaintiffs did not introduce the Pohl Declaration into evidence at the

---

[22] Declaration of J. Michael McNutt, Adv. Docket No. 184. Mr. McNutt's declaration does not dispute the movement of the Alpha Funds as described by the Pohl Declaration but argues that later transfers support the argument that the transfers were justified. However, Mr. Raveendran's liability for the transfers has been established by the entry of the default sanction.

[23] *See In re New Jersey Mobile Dental Practice, P.A.*, 2012 WL 3018052, *8 (Bankr. D.N.J. July 24, 2012) *aff'd sub nom. Gvildys v. Beukas*, 2012 WL 5472121 (D.N.J. Nov. 9, 2012). *See also In re McCaffrey*, 2023 WL 5612742, *2 n.3 (Bankr. N.D.N.Y. Aug. 30, 2023) ("Courts have long recognized that bank statements may be admitted under the residual exception to hearsay because 'bank documents, like other business records, provide circumstantial guarantees of trustworthiness because the banks and their customers rely on their accuracy in the course of their business.'" (quoting *United States v. Pelullo*, 964 F.2d 193, 202 (3d Cir. 1992)).

non-evidentiary oral argument, but this does not prevent the court from relying on it.[24]  The Pohl Declaration will not be stricken.

Mr. Raveendran's next arguments for requiring discovery seek to reopen liability issues, rather than explore the Plaintiffs' quantification of damages.  He argues that discovery is needed to permit him to reply to various "concessions" made in the Plaintiffs' Damages Brief, including:

(i)     that the Plaintiffs' recovery should come from guarantors and the security under the Credit Agreement, rather than the Defendant;

(ii)    that the Plaintiffs' "evidence" of relief under Count I[25] rests on the erroneous assumption that Think and Learn Private Limited ("TLPL") had only three board members, when there were six;

(iii)   that the Plaintiffs must off-set the OCI Settlement Amount;

(iv)    that the Alpha Funds were legitimately invested TLPL;

(v)     that Tim Pohl was the sole officer of the Debtor at that time the transfers were made;

(vi)    Counts V and VI[26] must fail because Plaintiffs concede the Alpha Funds were transferred to TLPL.

Mr. Raveendran also argues that he must respond to new claims asserted against him in the Plaintiff's Damages Brief based upon these alleged "concessions."

The Court finds that Mr. Raveendran's arguments for discovery on these new issues or so-called "concessions" are groundless.  The Complaint has not changed.

---

[24] *See Piramal Pharma Ltd. v. Blad Therapeutics, Inc.*, 2024 WL 3291666, *3 (D. Del. May 7, 2024) (citing to requests for payment attached to the complaint as basis for determining damages); *Lee v. Hanok 18, LLC*, 2021 WL 4398695, *6 (D.N.J. Sept. 27, 2021) (considering the plaintiffs' declarations, attorney's declaration and attached spreadsheets in making default judgment damages calculation).

[25] Count I of the Complaint asserts a claim for aiding and abetting the breach of fiduciary duties.

[26] Counts V and VI of the Complaint asserts claims for conversion and civil conspiracy.

There is no basis to reconsider Mr. Raveendran's liability for the claims in the Complaint. Whether the Plaintiffs — in particular, GLAS and the Lenders -— may also seek remedies against guarantors of the $1.2 billion borrowed under the Credit Agreement is irrelevant to the damage claims before the Court.[27] Whether there were three or six directors at TLPL does not affect the damages calculation. The fact that Tim Pohl was the only *legitimate* officer of the Debtor when the Defendant and Riju Ravindran transferred the Debtor's assets has been known since the filing of the Complaint and changes nothing.[28] Whether some part of the wrongfully transferred Alpha Funds later were traced to a related corporate entity is not a defense to the claims in this adversary. The arguments conflate the damages owed to GLAS/Lenders under the Credit Agreement on the defaulted loans with the Debtor's own, separate injuries suffered on account of Mr. Raveendran's wrongful conduct.[29]

---

[27] As recognized previously, Mr. Raveendran may seek relief under Fed.R.Civ.P. 60(b), made applicable hereto by Fed.R.Bankr.P. 9024, to the extent a judgment has been satisfied, released or discharged. *See* Letter Ruling, Adv. Docket No. 187.

[28] In the Opinion dated December 8, 2025 denying Mr. Raveendran's Motion to Dismiss the Complaint (Adv. D.I. 165), this Court determined that Mr. Raveendran served in the officer role of CEO to the Debtor and was subject to service of process under the Delaware Consent Statute. Former directors and officers may remain liable when they continue to hold themselves out, or otherwise act, as a corporate fiduciary. *See Seiden v. Kaneko*, 2015 WL 7289338, *8 (Del. Ch. Nov. 3, 2015) (The Court determined that the complaint alleged sufficient facts to assert a claim that a former director's fiduciary relationship survived post-resignation when, among other things, the director continued to "loot" the company's bank accounts, remained as a signatory on the bank accounts, and represented himself as CEO on those bank accounts). *See also Neurvana Med., LLC v. Balt USA, LLC*, 2020 WL 949917, *10 (Del. Ch. Feb. 27, 2020) (quoting *BelCom, Inc. v. Robb*, 1998 WL 229527, *3 (Del. Ch. Apr 28, 1998)) ("A former director, of course, breaches his fiduciary duty if he engages in transactions that had their inception before termination of the fiduciary relationship or were founded on information acquired during the fiduciary relationship.")

[29] As the Plaintiffs note: "[I]f the transfer of the Alpha Funds to [TLPL] was truly lawful and intended to leave the Debtor no worse off, then there was no reason for Raveendran and his cohorts to have designed a convoluted series of transfers through at least six intermediaries, including a sham hedge fund, with more than $70 million in leakage (the difference between $533 million and the approximately $460 million that purportedly ended up in [TLPL]). Nor can Raveendran

Finally, Mr. Raveendran's request to schedule a Fed.R.Civ.P. 26(f) discovery conference is also denied.  For the reasons set forth above, Mr. Raveendran has not provided any basis to permit discovery regarding the amount of damages.

The Court also concludes that the issues and arguments raised in the Defendant's Motions effectively serve as a Reply to the Plaintiffs' damages brief.  No further briefing is necessary.  The Scheduling Order for briefing on damages provided: "Following receipt of those submissions, the Court will determine whether argument on the dispute will be of assistance or whether the matter can be decided on the papers."[30]  Federal Rule of Civil Procedure 55(b)(2) grants the Court discretion to determine whether an evidentiary hearing is necessary to determine the appropriate amount of damages for a default judgment.[31]  As discussed above, the Defendant has not asserted valid reasons for allowing discovery on the issue of damages or the need for an evidentiary hearing. The Court has determined that an evidentiary hearing on damages would not be helpful or appropriate in this matter. The Court will decide the damage issue on the papers.

---

reconcile [this] latest defense with [TLPL's] false financial statements and his repeated falsehoods and misrepresentations under oath, all of which hid the movement of the Alpha Funds."  Pl.'s Reply in Support of Motion to Quash, Adv. Docket No. 191, ¶ 12.

[30] *Id.*

[31] Fed.R.Civ.P. 55(b)(2), made applicable hereto by Fed.R.Bankr.P. 7055, provides in relevant part: "The court *may* conduct hearings … when, to enter or effectuate judgment, it needs to … determine the amount of damages."  *See also QuantumSoft, Inc. v. Satellite Moving Devices Grp B.V.*, 2024 WL 2883622, *1 n.1 (D. Del. May 29, 2024) (Court was "satisfied that the briefing and supporting declarations submitted by [the movant] in support of its motion for entry of default judgment, in addition to the uncontroverted factual allegations in the Complaint, obviate[d] the need for an evidentiary hearing in [that] case.").

AND NOW, upon consideration of the First Motion to Strike, Second Motion to Strike, and the Discovery Motion filed by Mr. Raveendran, and the objections and replies thereto, and for the reasons stated above, it is hereby ORDERED that the First Motion to Strike, Second Motion to Strike, and the Discovery Motion are DENIED.

FOR THE COURT:

BRENDAN LINEHAN SHANNON
UNITED STATES BANKRUPTCY JUDGE

Dated: March 19, 2026